**AKIN GUMP STRAUSS HAUER & FELD LLP**
GREGORY W. KNOPP (SBN 237615)
MARK R. CURIEL (SBN 222749)
JONATHAN P. SLOWIK (SBN 287635)
gknopp@akingump.com
mcuriel@akingump.com
jpslowik@akingump.com
2029 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone:  310-229-1000
Facsimile:   310-229-1001

Attorneys for Defendant Starbucks Corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS TROESTER, on behalf of himself, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STARBUCKS CORPORATION, a Washington corporation; and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 2:12-cv-07677-GAF-PJW<br><br>**DEFENDANT STARBUCKS CORPORATION'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**<br><br>Date:      February 10, 2014<br>Time:     9:30 a.m.<br>Crtrm:    740<br><br>[Separate Statement of Undisputed Facts, Compendium of Evidence and Proposed Order filed Concurrently]<br><br>Judge:     Hon. Gary A. Feess<br><br>Date Action Filed: August 6, 2012 |

**TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 10, 2014, at 9:30 a.m., in Courtroom 740 of the above-entitled Court, located at 255 East Temple Street, Los Angeles, California 90012, defendant Starbucks Corporation ("Starbucks") will and does hereby move for summary judgment or, in the alternative, for partial summary judgment, as to plaintiff Douglas Troester's claims in the Complaint, on the issues identified below.

This Motion will be made pursuant to Federal Rule of Civil Procedure 56 on the ground that there is no triable issue of material fact as to any of the causes of action alleged in Plaintiff's Complaint and that Starbucks is entitled to summary judgment as a matter of law as to each of the following issues:

1) Plaintiff's first cause of action for failure to pay minimum and overtime wages, based on alleged "off-the-clock" work fails as a matter of law because any unpaid time was *de minimis*.

2) Plaintiff's first cause of action for failure to pay minimum and overtime wages, based on alleged "off-the-clock" work fails as a matter of law because Plaintiff cannot prove that Starbucks suffered or permitted him to work "off-the-clock" (waiting for rides, bringing in patio furniture, and retrieving jackets tasks).

3) Plaintiff's first cause of action for failure to pay minimum and overtime wages, based on alleged "off-the-clock" work fails as a matter of law because the tasks for which Plaintiff claims he is owed payment are not compensable (waiting for rides, bringing in patio furniture, and retrieving jackets tasks).

4) Plaintiff's second cause of action for failure to provide accurate written wage statements fails as a matter of law because the statute of limitations has run.

5) Plaintiff's second cause of action for failure to provide accurate written wage statements fails as a matter of law because it is derivative of his underlying "off-the-clock" claim, which fails as a matter of law.

1    6)    Plaintiff's third cause of action for failure to timely pay all final wages fails

2 as a matter of law because it is derivative of his underlying "off-the-clock" claim, which

3 fails as a matter of law.

4    7)    Plaintiff's third cause of action for failure to timely pay all final wages fails

5 as a matter of law because a good faith dispute exists as to whether Plaintiff is owed any

6 additional wages, and thus, Starbucks alleged failure to pay the claimed wages was not

7 willful.

8    8)    Plaintiff's fourth cause of action for unfair competition fails as a matter of

9 law because it is derivative of his underlying Labor Code claims, which fail as a matter

10 of law.

11    9)    Plaintiff's claim for injunctive relief fails as a matter of law because, as a

12 former employee, Plaintiff lacks standing to seek an injunction.

13    This motion is made following the conference of counsel pursuant to Local Rule

14 7-3, which took place on December 19.

15

16 Dated:  December 30, 2013          AKIN GUMP STRAUSS HAUER & FELD LLP

17                                    Gregory W. Knopp
                                      Mark R. Curiel
                                      Jonathan P. Slowik
18

19                                    By_____/s/ Gregory W. Knopp_____

20                                         Gregory W. Knopp
                                           Attorneys for Defendant
                                           Starbucks Corporation
21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

Page

I.    INTRODUCTION ...........................................................................................................1

II.   BACKGROUND ............................................................................................................2

    A.   Troester Works For Starbucks In A California Store. ...............................................2

    B.   Starbucks Pays Troester For All The Working Time He Recorded. ..........................2

    C.   Troester Allegedly Works "Off-The-Clock" On "Closing Shifts."...........................2

    D.   Troester Makes No Effort To Seek Payment. ...........................................................4

    E.   Troester Files This Lawsuit.......................................................................................5

III.  LEGAL STANDARD ....................................................................................................5

IV.   ARGUMENT ..................................................................................................................5

    A.   Troester's Claims For Unpaid Wages Fail As A Matter Of Law...............................5

        1.   Any Unpaid Time Was De Minimis.................................................................6

        2.   Most Tasks Performed After Leaving The Store Are Not Compensable.....9

            a)   Some Of The Tasks At Issue Are Not Compensable "Work." .......10

            b)   Troester Cannot Prove A Claim For Unpaid Wages Based On Alleged Work Of Which Starbucks Was Not Aware......................11

    B.   Troester's Claim For Deficient Pay Stubs Fails As A Matter Of Law. .................13

        1.   The Wage Statements Accurately Listed Troester's Wages. .....................13

        2.   This Claim Is Time-Barred. .....................................................................14

    C.   Troester's Claim For Late Final Wages Fails As A Matter Of Law. ......................14

        1.   Starbucks Timely Paid All Wages Due Upon Termination.......................14

        2.   Starbucks Did Not "Willfully" Fail To Pay Final Wages..........................15

    D.   Troester's Claim For Unfair Competition Fails As A Matter Of Law....................17

    E.   Troester's Claim For Injunctive Relief Fails As A Matter Of Law. .......................17

V.    CONCLUSION..............................................................................................................18

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Abbe v. City of San Diego,*
No. 05-1629 DMS, 2007 WL 4146696 (S.D. Cal. Nov. 9, 2007)............... 6, 7, 9

*Alonzo v. Maximus, Inc.,*
832 F. Supp. 2d 1122 (C.D. Cal. 2011) ........................................................ 10, 16

*Alvarado v. Costco Wholesale Corporation*
No. 06-04015, 2008 WL 2477393, at *3-4 (N.D. Cal. June 18, 2008) ....... 7, 8, 9

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)................................................................................................5

*Anderson v. Mt. Clemens Pottery Co.,*
328 U.S. 680 (1946)......................................................................................... 1, 6

*Bartholomew v. City of Burlington, Kan.,*
5 F. Supp. 2d 1161 (D. Kan. 1998).......................................................................8

*Busk v. Integrity Staffing Solutions, Inc.,*
713 F.3d 525 (9th Cir. 2013) ........................................................................... 7, 9

*Campbell v. Pricewaterhouse Coopers, LLP,*
602 F. Supp. 2d 1163 (E.D. Cal. 2009), *rev'd in part on other grounds*, 642
F.3d 820 (9th Cir. 2011) ...................................................................................... 16

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986)................................................................................................5

*Cervantez v. Celestica Corp.,*
618 F. Supp. 2d 1208 (C.D. Cal. 2009) ......................................................... 6, 7, 9

*Clark v. City of Lakewood,*
259 F.3d 996 (9th Cir. 2001) ......................................................................... 17, 18

*Dukes v. Wal-Mart, Inc.,*
509 F.3d 1168 (9th Cir. 2007) ............................................................................. 18

*Elliot v. Spherion Pac. Work, LLC,*
572 F. Supp. 2d 1169 (C.D. Cal. 2008) ............................................................. 14

*Farris v. County of Riverside,*
    667 F. Supp. 2d 1151 (C.D. Cal. 2009) ........................................ 6, 8, 9

*First Nat. Ins. Co. v. F.D.I.C.,*
    977 F. Supp. 1051 (S.D. Cal. 1997)..................................................9

*Forrester v. Roth's I.G.A. Foodliner, Inc.,*
    646 F.2d 413 (9th Cir. 1981) ................................................ 12, 13

*Fortyune v. Am. Multi-Cinema, Inc.,*
    364 F.3d 1075 (9th Cir. 2004) ...................................................... 17

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
    528 U.S. 167 (2000).................................................................. 17

*Gillings v. Time Warner Cable LLC*
    No. 12-5565, 2012 WL 1656937, at *1 (C.D. Cal. Mar. 26, 2012) ........... 6, 8, 9

*Glenn K. Jackson Inc. v. Roe,*
    273 F.3d 1192 (9th Cir. 2001) ...................................................... 17

*Huynh v. Chase Manhattan Bank,*
    465 F.3d 992 (9th Cir. 2006) ....................................................... 17

*IBP, Inc. v. Alvarez,*
    126 S. Ct. 514 (2005).......................................................... 1, 3, 6

*Koike v. Starbucks Corp.,*
    No. 06-3215, 2008 WL 7796650 (N.D. Cal. June 20, 2008) ........................... 11

*Lindow v. United States,*
    738 F.2d 1057 (9th Cir. 1984) ..................................................... 6, 8

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986)....................................................................5

*Milligan v. Am. Airlines, Inc.,*
    327 F. App'x 694 (9th Cir. 2009) ..................................................... 18

*Newton v. City of Henderson,*
    47 F.3d 746 (5th Cir. 1995) ........................................................ 12

*Plaisted v. Dress Barn, Inc.,*
    No. 12-01679, 2013 WL 300913 (C.D. Cal. Jan. 25, 2013).............................. 12

*Porch v. Masterfoods, USA, Inc.,*
  685 F. Supp. 2d 1058 (C.D. Cal. 2008) ........................................ 10, 11

*Reber v. AIMCO/Bethesda Holdings, Inc.,*
  No. 07-0607, 2008 WL 4384147 (C.D. Cal. Aug. 25, 2008) ........................... 16

*Rutti v. Lojack Corp.,*
  596 F.3d 1046 (9th Cir. 2010) ........................................................ 6, 9

*Waine-Golston v. Time Warner Entm't–Advance/New House P'ship,*
  No. 11-1057, 2013 WL 1285535 (S.D. Cal. Mar. 27, 2013)............... 7, 9, 14, 15

*Walsh v. Nev. Dept. of Human Res.,*
  471 F.3d 1033 (9th Cir. 2006) ........................................................ 18

*White v. Starbucks Corp.,*
  497 F. Supp. 2d 1080 (N.D. Cal. 2007)........................... 11, 12, 13, 17

*Worman v. MetLife Group, Inc.,*
  No. CIV. S-06-2870, 2008 WL 223721 (E.D. Cal. Jan. 28, 2008) ................... 16

**STATE CASES**

*Amaral v. Cintas Corp. No. 2,*
  163 Cal. App. 4th 1157 (2008) ..................................................... 15, 16

*Barnhill v. Robert Saunders & Co.,*
  125 Cal. App. 3d 1 (1981) .......................................................... 15

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,*
  20 Cal. 4th 163 (1999) ............................................................. 17

*Choate v. Celite Corp.*
  215 Cal. App. 4th 1460 (2013) ..................................................... 15, 16

*Morillion v. Royal Packing Co.,*
  22 Cal. 4th 575 (2000) .......................................................... 10, 11

*Overton v. Walt Disney Co.,*
  136 Cal. App. 4th 263 (2006) ....................................................... 10

*State Farm Fire & Cas. Co. v. Super. Ct. (Allegro),*
  45 Cal. App. 4th 1093 (1996) ....................................................... 17

DEFENDANT STARBUCKS CORPORATION'S MOTION FOR SUMMARY JUDGMENT

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200 .................................................................... 17

Cal. Civ. Proc. Code § 340 .......................................................................... 14

Cal. Code Regs., Title 8, § 11050(2)(K) ...................................................... 10

Cal. Code Regs., Title 8, § 13520(a) ............................................................ 15

Cal. Lab. Code § 201(a) ............................................................................... 14

Cal. Lab. Code § 203 .............................................................................. 15, 16

Cal. Labor Code § 226 ................................................................................. 14

**RULES**

Fed. R. Civ. P. 56(a) ..................................................................................... 5

# I.    INTRODUCTION

Douglas Troester claims that Starbucks, his former employer, violated the California Labor Code by failing to pay him for the fleeting moments he allegedly spent in and around the store after he clocked out at the conclusion of certain shifts. He claims, for example, that Starbucks neglected to pay him for the time he spent walking out of the store after activating the security alarm, for the time he spent turning the lock on the store's front door, and for the time he spent occasionally re-opening the door so that a co-worker could retrieve a coat. But given Troester's admissions at deposition, all of his claims—both for the allegedly unpaid wages and for various derivative violations of the Labor Code—fail as a matter of law.

Troester's claims for unpaid wages fail for several reasons. First, the "work" he alleges was *de minimis*, in that it generally lasted only a few minutes (at most) and was difficult to record, given that it primarily occurred *after* Troester clocked out for the day. In these circumstances, "a few seconds or minutes of work beyond the scheduled working hours . . . may be disregarded." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946), abrogated by statute on other grounds as stated in *IBP, Inc. v. Alvarez*, 126 S. Ct. 514, 519 (2005). Second, some of the tasks Troester identifies—such as staying outside the store while a co-worker awaited a ride home—are not compensable "work" at all, because he performed them on his own time and entirely of his own volition. Third, other alleged "work" is not compensable because Troester cannot prove, as he must, that Starbucks knew about it. He admits, for example, that he never recorded his "work" in the log that the store provided for this very purpose, never informed his manager of any unpaid work, and never took any steps to seek payment. For each of these reasons, Troester could not prove his claims for unpaid wages. They should be dismissed.

Troester's remaining claims—for failure to provide accurate wage statements, failure to timely pay final wages, unfair competition, and injunctive relief—are derivative of the claims for unpaid work and thus fail for all the same reasons. As

1  explained below, these derivative claims fail for a variety of additional reasons as well.
2  They should be rejected, therefore, regardless of whether Troester's claims for unpaid
3  work can survive summary judgment.

4  **II.    BACKGROUND**

5      **A.    Troester Works For Starbucks In A California Store.**

6      Troester worked in a Starbucks store in California from February 2008 until
7  January 2011.  UF No. 1.  He initially worked as a "barista," an entry-level coffee-
8  server, and became a "shift supervisor" in June 2008.  UF No. 2.

9      **B.    Starbucks Pays Troester For All The Working Time He Recorded.**

10      While employed by Starbucks, Troester understood that the Company's policy
11  was "time worked equals time paid," UF No. 3, and that Starbucks strictly prohibited
12  "off-the-clock" work.  UF No. 4.  He also understood that one of his job responsibilities
13  was to accurately record his work time using the point-of-sale ("POS") system so that
14  Starbucks could pay him for all his time worked.  UF No. 5.  Troester admits that
15  Starbucks always paid him for all the time he recorded in the POS system.  UF No. 6.

16      Troester further understood that, in the event that he performed any work while
17  not "on-the-clock," he was responsible for recording his time in a book called the
18  "punch communication log," so that Starbucks could ensure payment for that time.  UF
19  No. 7.  Troester used the log, for example, to capture time spent running errands for the
20  store before clocking in, assisting a customer in the store lobby while not clocked in,
21  and talking to the store manager about "official business" while not clocked in.  UF
22  No. 8.  He admits that Starbucks always paid him for the time he recorded in the log.
23  UF No. 9.

24      **C.    Troester Allegedly Works "Off-The-Clock" On "Closing Shifts."**

25      Troester does not claim that he is entitled to any additional compensation for
26  work performed as a barista.  He contends, however, that he worked off-the-clock on
27  certain shifts while he was a shift supervisor.  UF No. 10.  Specifically, he claims that he
28  performed unpaid work during shifts at the end of the business day—"closing" shifts—

1  but not when he worked shifts in the morning or the afternoon. UF No. 11 ("Q: The
2  claims you assert in this lawsuit are based on alleged unpaid time worked exclusively on
3  closing shifts, correct? A: That's correct."). Even on closing shifts, Troester
4  acknowledges that Starbucks paid him for all the work he performed while the store was
5  open to customers and right up until the very end of his shift. UF No. 12.

6  According to Troester, at the very end of a closing shift, he was responsible for
7  using the store computer to transmit sales data to Starbucks headquarters, a process
8  called the "close store procedure." UF No. 13. This procedure consisted of selecting
9  "close store" with the computer's mouse or keyboard, entering a password, and then
10 pressing the "Y" key. UF No. 14. Immediately after running the procedure, Troester set
11 the store alarm by typing a numeric code on the alarm panel located near the computer.
12 UF No. 15.

13 Troester contends that, starting around the summer of 2009, the computer system
14 required that he clock out before initiating the close store procedure. UF No. 16. He
15 claims that this procedure typically lasted "one minute to two minutes" before he
16 activated the alarm. UF No. 17.

17          Q:     So your testimony is that you activated the alarm one to
18                 two minutes after you clocked out?

19          A:     The majority of the time, yes.

20 *Id.* A comparison of the store's alarm records to Troester's time records confirms that,
21 on average, Troester activated the alarm within one minute of clocking out, and that he
22 did so within two minutes on more than 90 percent of his shifts. UF Nos. 19-20; *see*
23 *also* UF No. 21 (Troester testified that he has no reason to doubt the accuracy of the
24 time and alarm records).

25 The alarm system required that the employees leave the store within 60 seconds
26 of setting the alarm. UF No. 22. So, after activating the alarm, Troester exited the store
27 and locked the front door. UF No. 23. He estimates that it took 30 seconds to leave the
28 store (UF No. 24) and as little as 15 seconds to lock the door (UF No. 25). Troester

1  claims that he then walked his co-workers to their cars, which took 35-45 seconds.  UF

2  No. 27.  He contends that he should be paid for all this time.  UF No. 28.

3       Troester further claims that, on rare occasions, he performed additional tasks after

4  clocking out and exiting the store.  First, every "couple of months," he brought the

5  store's patio furniture inside the store after he and the other employees forgot to do so

6  while still on-the-clock.  UF No. 29.  Second, every "couple of months," he opened the

7  door so that another employee could retrieve a coat that he or she had left behind.  UF

8  No. 30.  Third, two or three times a month, he stayed outside the store with a co-worker

9  who was waiting for a ride.  UF No. 31.

10      Troester does not claim that he ever performed any other unpaid work.  UF

11  No. 32 ("Q: I want to make sure today's record is complete.  So besides everything

12  you've testified to already, do you claim that you performed any other work for which

13  Starbucks didn't pay you on closing shifts?  A: No.")).

14      **D.    Troester Makes No Effort To Seek Payment.**

15      While employed by Starbucks, Troester believed that he was entitled to be paid

16  for the off-the-clock work he alleges.  UF No. 37.  But he never made any effort to seek

17  payment.  UF No. 38.  For example, he never used the punch communication log to

18  document any work he allegedly performed after clocking out at the end of a closing

19  shift.  UF No. 39.  Nor did he raise any concerns with his supervisor (the store

20  manager), the store manager's boss (the district manager), or Starbucks human

21  resources department ("partner resources"), although he knew he could raise workplace

22  concerns with any of them.  UF No. 42.  Nor did he call the Company's telephone

23  "hotline," which he knew was available for "virtually any kind of HR function dealing

24  with *if you didn't get pay* . . . or anything of that."  UF No. 43 (emphasis added).

25  Notably, Troester called the helpline "many times" for other reasons—including to

26  complain about his pay when he worked in a Nevada store—and Starbucks always

27  addressed his concerns to his satisfaction.  UF Nos. 44-46.

28

1      **E.    Troester Files This Lawsuit.**

2      Troester filed this lawsuit in August 2012, on behalf of a putative class of

3   Starbucks non-managerial employees in California who performed a "store closing

4   procedure" at the end of a workday.  Compl. ¶ 12.  He claims that Starbucks violated the

5   California Labor Code by failing to pay minimum and overtime wages for alleged off-

6   the-clock work.  *Id.* ¶¶ 20-43.  He also claims that, as a result of failing to pay for this

7   time, Starbucks provided inaccurate wage statements (*id.* ¶¶ 44-51), neglected to pay all

8   wages due upon termination (*id.* ¶¶ 52-62), and violated California's Unfair Competition

9   Law (*id.* ¶¶ 63-69).  He also seeks injunctive relief.  *Id.* p. 14.

10  **III.   LEGAL STANDARD**

11     Summary judgment is proper when "the movant shows that there is no genuine

12  dispute as to any material fact and . . . is entitled to judgment as a matter of law."  Fed.

13  R. Civ. P. 56(a).  Where, as here, the opponent bears the burden of proof on the claim at

14  issue and "fails to make a showing sufficient to establish the existence of an element

15  essential to that party's case," summary judgment is warranted.  *Celotex Corp. v.*

16  *Catrett*, 477 U.S. 317, 322 (1986).  Moreover, the opponent may not defeat summary

17  judgment by "simply show[ing] that there is some metaphysical doubt as to the material

18  facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586

19  (1986).  Rather, he must put forth "affirmative evidence" that shows "that there is a

20  genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256-57 (1986).

21  **IV.   ARGUMENT**

22     **A.    Troester's Claims For Unpaid Wages Fail As A Matter Of Law.**

23     Every task for which Troester now seeks compensation either was *de minimis*, did

24  not qualify as compensable "work," or was entirely unknown to Starbucks.  For each of

25  these reasons, Troester is not entitled to any additional pay for his alleged off-the-clock

26  work and, therefore, his Labor Code claims fail as a matter of law.

27

28

1          1.     Any Unpaid Time Was *De Minimis*.

2          The "*de minimis* doctrine" is a defense to wage claims asserted under the

3  California Labor Code. *See, e.g., Cervantez v. Celestica Corp.*, 618 F. Supp. 2d 1208,

4  1218-19 (C.D. Cal. 2009); DLSE Enforcement Policies & Interpretations Manual

5  § 46.6.4. Under this doctrine, alleged working time need not be paid if it is trivially

6  small: "[A] few seconds or minutes of work beyond the scheduled working hours . . .

7  may be disregarded." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946),

8  abrogated by statute on other grounds as stated in *IBP, Inc. v. Alvarez*, 126 S. Ct. 514,

9  519 (2005).

10          To determine whether work time is *de minimis*, courts consider: "(1) the practical

11  administrative difficulty of recording the additional time; (2) the aggregate amount of

12  compensable time; and (3) the regularity of the additional work." *Lindow v. United*

13  *States*, 738 F.2d 1057, 1063 (9th Cir. 1984); *see also Rutti v. Lojack Corp.*, 596 F.3d

14  1046, 1057-58 (9th Cir. 2010). Applying these standards, numerous courts have held

15  that daily periods of approximately 10 minutes are *de minimis*. *Lindow*, 738 F.2d at

16  1062 (collecting cases); *see also Farris v. County of Riverside*, 667 F. Supp. 2d 1151,

17  1166 (C.D. Cal. 2009); *Abbe v. City of San Diego*, No. 05cv1629 DMS (JMA), 2007

18  WL 4146696, at *7 (S.D. Cal. Nov. 9, 2007) ("Here, it is undisputed that donning and

19  doffing protective gear . . . takes less than 10 minutes. . . . Therefore, time spent donning

20  and doffing safety gear is *de minimis* and non-compensable as a matter of law.").

21          *Gillings v. Time Warner Cable LLC* is instructive. There, the employer used the

22  popular Kronos software to record its employees' work time. *See* No. CV 10-5565-

23  AG(RNBx), 2012 WL 1656937, at *1 (C.D. Cal. Mar. 26, 2012). To clock in, an

24  employee needed to "boot up" a computer, enter a network password to log on, and then

25  log in to a program that started the Kronos clock. *Id.* While this process took up to six

26  minutes per day, the Court rejected the plaintiff's claim for unpaid wages, finding this

27  time to be *de minimis* because it was sufficiently brief and it would be "arduous" to

28  monitor and record it. *Id.* at *4. The Court explained that "[m]any employers" use

1 | computer-based time clocks that require employees to run programs to clock in or out,
2 | and these systems "achieve[] an effective balance between the employers' dual concerns
3 | of accurate pay and administrative efficiency." *Id.* at *5; *accord Waine-Golston v. Time*
4 | *Warner Entm't–Advance/New House P'ship*, No. 11cv1057-GPB(RRB), 2013 WL
5 | 1285535, at *6 (S.D. Cal. Mar. 27, 2013) (holding on summary judgment that time spent
6 | booting up computer and logging in to time clock program was *de minimis*).

7 |      Likewise, the court in *Alvarado v. Costco Wholesale Corporation* held on
8 | summary judgment that the plaintiff was not entitled to compensation for time spent
9 | waiting for security checks at the end of closing shifts, because this time was *de*
10 | *minimis*. No. C 06-04015 JSW, 2008 WL 2477393, at *3-4 (N.D. Cal. June 18, 2008).
11 | Noting that many courts have found as much as 10 minutes per day to be *de minimis*,
12 | the court held that the "several minutes" the plaintiff often had to wait to be let out of
13 | the building should be disregarded. *Id. See also Busk v. Integrity Staffing Solutions,*
14 | *Inc.*, 713 F.3d 525, 532 (9th Cir. 2013) (five minutes daily spent passing through
15 | security clearance on way to lunch break was *de minimis*); *Cervantez*, 618 F. Supp. 2d at
16 | 1217 (time spent waiting in security line to leave workplace was *de minimis*).

17 |      The time at issue here is equally *de minimis*. On average, Troester activated the
18 | alarm approximately one minute after he clocked out. UF No. 19. Moreover, he did so
19 | within two minutes on 90 percent of the shifts and within five minutes on every shift.
20 | UF Nos. 20, 52. Once he set the alarm, Troester needed to exit the store within one
21 | minute to avoid triggering the alarm. UF No. 22. Indeed, he testified that it took 30
22 | seconds to walk out of the store. UF No. 24. He then locked the door (15 seconds to "a
23 | couple minutes") and walked his co-workers to their cars (35 to 45 seconds). UF Nos.
24 | 23, 25-27. On rare occasions—once every "couple of months"—Troester spent a few
25 | minutes letting co-workers back inside the store or bringing in patio furniture that he
26 | forgot to retrieve before clocking out. UF No. 29-30. Even assuming that all of this
27 | time otherwise would be compensable "work," it generally totaled less than four
28 | minutes and nearly always less than 10—well within the *de minimis* range. Thus, the

1  amount of time at issue unquestionably favors a finding that the alleged work was *de*

2  *minimis*.  *See Farris*, 667 F. Supp. 2d at 1165 ("10 minutes is the standard threshold for

3  determining whether something is *de minimis*").[1]

4      The "administrative difficulty of recording the additional time" also favors

5  applying the *de minimis* defense.  This factor weighs in favor of the defense when the

6  employer's time-keeping system is not configured to capture the alleged off-the-clock

7  work.  *See Alvarado*, 2008 WL 2477393, at *3-4 (holding that time employees spent

8  submitting to bag checks upon leaving store was *de minimis*, rejecting plaintiff's

9  argument that employer should endeavor to record that time by "repositioning the time

10  clock close by the exit door"); *Gillings*, 2012 WL 1656937, at *5 (holding that time

11  spent booting up computer to log into time clock software was *de minimis*, and

12  employer was not required to capture this time by installing a time clock at front door).

13      Here, Starbucks could not feasibly capture the time Troester alleges.  According

14  to Troester, once he initiated the close store procedure, the POS registers automatically

15  rebooted and employees could no longer use them to clock out.  UF No. 16.  Under this

16  theory, the close store procedure—which lasted one minute on average—necessarily

17  occurred after clocking out.  Nor could the work Troester allegedly performed after

18  completing the close store procedure feasibly be captured.  It was not practicable to set

19  the alarm prior to clocking out, because the alarm became activated within one minute,

20  so it would be triggered if the employees did not immediately exit the store.  UF No. 22.

21  Nor could the Company capture the seconds Troester spent walking to the door, since he

22  had already clocked out and activated the alarm by then.  Nor could Starbucks record

23  the brief moments that Troester allegedly "worked" after leaving the store—locking the

24

25      [1] The only task that Troester claims lasted more than a minute or two is remaining outside the

26  store while a co-worker waited for a ride home.  This time is *de minimis* as well, because it rarely
occurred (Troester alleges two or three times per month) and was difficult to record (Troester had

27  already left the store for the day).  *See Lindow*, 738 F.2d at 1063-64 (irregular work of greater than 10
minutes was *de minimis*); *accord Bartholomew v. City of Burlington, Kan.*, 5 F. Supp. 2d 1161, 1170

28  (D. Kan. 1998).  But regardless, as shown below, remaining outside the store is not compensable
"work" because, for example, Troester *chose* to do so, with no prompting by Starbucks whatsoever.

1  door, walking co-workers to their cars, letting co-workers back in the store, etc.—

2  because he had already clocked out and left the Company's premises.  In short, none of

3  the time Troester identifies could feasibly be recorded.

4      Where, as here, the first two factors are satisfied, courts routinely apply the *de*

5  *minimis* defense, even when the plaintiff alleges uncompensated time every day.  In

6  *Busk*, for example, the Ninth Circuit recently held that the time employees spent

7  "passing through the security clearance on the way to lunch" was *de minimis*, even

8  though they apparently did so on a daily basis.  713 F.3d at 532; *see also Farris*, 667 F.

9  Supp. 2d at 1165-66 (explaining that "the daily time involved in an activity is the chief

10 concern in determining whether it is de minimis" and holding that 10 minutes of daily

11 unpaid time was not compensable); *accord Rutti*, 596 F.3d at 1057-58; *Abbe*, 2007 WL

12 4146696, at *7; *Gillings*, 2012 WL 1656937, at *4; *Waine-Golston*, 2013 WL 1285535,

13 at *6; *Alvarado*, 2008 WL 2477393, at *3-4; *Cervantez*, 618 F. Supp. 2d at 1217.  The

14 same result is warranted here, especially because the circumstances about which

15 Troester complains occurred only on closing shifts, not on every shift.  UF No. 11.

16          2.    Most Tasks Performed After Leaving The Store Are Not

17                Compensable.

18      Irrespective of the *de minimis* defense, Troester may not recover wages for most

19 of the tasks he allegedly performed after leaving the store upon the end of his shift.  His

20 testimony shows without question that he performed those tasks of his own volition,

21 without any instruction from Starbucks, or performed them without Starbucks

22 knowledge.  As a matter of law, Troester may not recover wages for tasks performed on

23 his own time, or without Starbucks knowledge.[2]

24

25

26

27          [2] The court may grant summary adjudication as to parts of a claim or individual issues, even if
   doing so will not resolve the entire cause of action.  *See First Nat. Ins. Co. v. F.D.I.C.*, 977 F. Supp.

28 1051, 1055 (S.D. Cal. 1997).

a)   Some Of The Tasks At Issue Are Not Compensable "Work."

Troester bears the burden of proving that his alleged off-the-clock work is compensable. *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 578 (2000); Cal. Code Regs., tit. 8, § 11050(2)(K). Specifically, he must show that he was subject to Starbucks control at the time. *See id.* If Troester was not subject to Starbucks control, but rather *chose* to engage in certain activities on his own time, those activities are not compensable. *See, e.g., Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122, 1129 (C.D. Cal. 2011) (time spent in office before shift not compensable under California law where employer suggested, but did not require, that employees arrive early); *Porch v. Masterfoods, USA, Inc.*, 685 F. Supp. 2d 1058, 1071-72 (C.D. Cal. 2008) (meal time not compensable under California law where employer encouraged, but did not require, employees to eat on employer's premises); *Overton v. Walt Disney Co.*, 136 Cal. App. 4th 263, 271 (2006) (time spent commuting to site in employer's bus not compensable under California law because employer did not require that employees take bus).

This principle precludes Troester from proving his claims based on some of the tasks he allegedly performed after exiting the store. First, he seeks pay for time spent allowing co-workers to reenter the store to retrieve coats, but he has no evidence that anyone from Starbucks ever required him to do so. UF No. 30 (Troester let people back inside at the request of co-workers, not managers). Second, he seeks pay for time spent outside the store with co-workers who were waiting for rides, but he cannot recall any Starbucks manager ever instructing or even asking him to do so. UF No. 33. Indeed, his managers testify that they never asked Troester or anyone else to wait with co-workers for their rides. UF No. 34. Rather, Troester chose to engage in this activity based on a personal sense of responsibility for his co-workers. *See* UF No. 35 (he thought that, as "a large strong male," he should help his "young female" co-workers); UF No. 36 (Troester arbitrarily chose to walk partners without cars "to the end of the parking lot").

1    In short, while Troester's efforts may have been generous, Starbucks did not

2  mandate that he make them.  Rather, as Troester concedes, he elected to perform these

3  tasks of his own volition, while off-the-clock and outside of the store.  Simply put, he

4  was free to use this time for his own purposes.  These tasks, therefore, are not

5  compensable.  *See, e.g., Porch*, 685 F. Supp. 2d at 1073 (where plaintiff sought pay for

6  time spent on employer's premises during meal breaks, court granted summary

7  judgment for employer because plaintiff lacked any evidence that employer "fired or

8  otherwise disciplined" employees who left premises).

9               b)    Troester Cannot Prove A Claim For Unpaid Wages Based On
10                    Alleged Work Of Which Starbucks Was Not Aware.

11    Troester complains that he occasionally performed tasks after exiting the store for

12  which he is entitled to payment—namely, retrieving patio furniture, waiting with co-

13  workers for their rides, and letting co-workers back inside to retrieve coats.  But a

14  plaintiff who alleges that he performed unpaid work must prove that his employer

15  "suffered or permitted" that work, *i.e.*, that the employer had actual or constructive

16  knowledge that he performed work for which he was not paid.  *See White v. Starbucks

17  Corp.*, 497 F. Supp. 2d 1080, 1083 (N.D. Cal. 2007); *Morillion*, 22 Cal. 4th at 585.

18  Troester cannot do so.

19    The *White* decision is on point.  In that case, the plaintiff, a Starbucks store

20  manager, alleged that he had worked off-the-clock without pay.  497 F. Supp. 2d at

21  1082.  But he admitted at deposition that he never told anyone at Starbucks about his

22  alleged unpaid time and instead submitted time records that he believed to be

23  inaccurate.  *Id.* at 1082-83.  In light of this fact, the court concluded that "[i]mputing

24  constructive knowledge would be particularly inappropriate[.]"  *Id.* at 1085.  The court

25  granted summary judgment to Starbucks because "no reasonable jury could conclude

26  that Starbucks knew about White's alleged unpaid time."  *Id.*; *see also Koike v.

27  Starbucks Corp.*, No. C 06-3215 VRW, 2008 WL 7796650, at *4-6 (N.D. Cal. June 20,

28

1  2008) (summary judgment for Starbucks on off-the-clock claim where Starbucks had no

2  knowledge of plaintiff's uncompensated time, because plaintiff failed to record it).

3       The Ninth Circuit's decision in *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d

4  413 (9th Cir. 1981), confirms that a plaintiff may not conceal alleged off-the-clock work

5  and then prove a claim.  In *Forrester*, an FLSA decision applying the same knowledge

6  standard as applies here, the Ninth Circuit affirmed summary judgment in favor of the

7  employer because the employee had failed to show a material factual dispute regarding

8  the employer's knowledge. *Id.* at 414.  The employee testified that he knew he was

9  supposed to record his work time and was paid for all the time he reported.  He also

10 testified that he did not inform his employer that he was working unpaid hours and

11 "deliberately omitted the inclusion of those hours from his time sheet even though he

12 admittedly knew that he would have been paid for those hours." *Id.*  The Ninth Circuit

13 held that an off-the-clock claim cannot proceed "where an employer has no knowledge

14 that an employee is engaging in [uncompensated] work and that employee fails to notify

15 the employer or deliberately prevents the employer from acquiring knowledge of the . . .

16 work." *Id.*; *see also Newton v. City of Henderson*, 47 F.3d 746, 749-50 (5th Cir. 1995)

17 (holding that employer did not have constructive knowledge of unpaid work where

18 employee ignored employer's procedures for recording time worked and reported

19 incorrect hours on his time sheets); *Plaisted v. Dress Barn, Inc.*, No. 2:12-CV-01679-

20 ODW, 2013 WL 300913, at *4-5 (C.D. Cal. Jan. 25, 2013) (granting summary judgment

21 for employer where plaintiff made no effort to record alleged off-the-clock work).

22       This authority precludes Troester's claim based on the post-shift tasks mentioned

23 above.  As in *White*, to survive summary judgment, Troester must present evidence that

24 Starbucks "knew about his alleged unpaid time."  497 F. Supp. 2d at 1085.  Troester's

25 testimony precludes any such showing.  Troester knew he was required to record all his

26 time so that Starbucks could pay him properly, including by using the punch

27 communication log to document time not captured by the POS system.  UF Nos. 5, 7.

28 In fact, Troester used the log on other occasions to record work he performed while not

clocked in (UF No. 8), and Starbucks always paid him for that time (UF No. 9).  Yet Troester did not use the log to record the time he allegedly spent bringing in patio furniture, letting partners back in the store, or waiting with partners for their rides.  (UF No. 39).[3]  Nor did he make any effort to inform the Company or seek payment, despite knowing that Starbucks policy encouraged him to address such issues with his store manager, the district manager, the partner resources department, or the helpline.  UF Nos. 42-43.

By failing to record his time in violation of Company policy, and by failing to alert the Company to any alleged underpayment, Troester ensured that Starbucks had no knowledge of the work he allegedly performed after clocking out.  Moreover, like the plaintiff in *Forrester*, he submitted time records that he apparently believed were inaccurate, thus preventing Starbucks from ensuring proper payment.  Because Starbucks had no actual or constructive knowledge of this alleged off-the-clock work, Troester cannot prove, as he must, that Starbucks "suffered or permitted" it.  Accordingly, his claims based on alleged retrieving patio furniture, waiting with co-workers for their rides, and letting co-workers back inside to retrieve coats fail as a matter of law.  *See Forrester*, 646 F.2d at 414; *White*, 497 F. Supp. 2d at 1083.

## B.    Troester's Claim For Deficient Pay Stubs Fails As A Matter Of Law.

### 1.    The Wage Statements Accurately Listed Troester's Wages.

Troester claims that his wage statements were inaccurate solely because they did not reflect the wages he seeks for his alleged off-the-clock work.  *See* Compl. ¶ 47 (Starbucks "failed to provide Plaintiff with accurate written wage statements . . . as a result of not recording all of this hours worked and not paying him earned minimum and overtime wages."); UF No. 47 ("Q: My understanding of your claim is that the pay

---

[3] Troester testified that he did not use the log on these occasions because it was only for "missed" punches, not for recording time spent on tasks after clocking out or for correcting a punch.  Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 157:24-158:25).  This explanation cannot survive scrutiny.  Troester used the log multiple times to record time spent on tasks performed while not on the clock, such as picking up product for the store.  UF No. 40.  He also used the log several times to correct wrong time punches.  UF No. 41.

statements are inaccurate because they didn't reflect the pay you earned, but never received?  A: I think that's a fair statement.  Q: I got it right?  A: Yes.").  As shown above, Troester is not entitled to any additional wages for any alleged off-the-clock work.  Therefore, his wage statements properly listed the wages he earned.  His wage statement claim fails as a result.  *See Waine-Golston*, 2013 WL 1285535, at *12 ("Since the Court grants Defendant's motion for summary judgment concerning the logging in and off claim, the Court must also grant Defendant's motion for summary judgment on the [derivative] inaccurate wage statement claim.").

### 2. This Claim Is Time-Barred.

Claims seeking penalties for inaccurate wage statements under California Labor Code section 226 are subject to a one-year statute of limitations.  Cal. Civ. Proc. Code § 340; *Elliot v. Spherion Pac. Work, LLC*, 572 F. Supp. 2d 1169, 1179 (C.D. Cal. 2008).  Troester received his final wage statement on January 6, 2011 (UF No. 48), so that is the last day on which this claim could have accrued.  *See Elliot*, 572 F. Supp. 2d at 1179 (wage statement claim accrues on date wage statement is provided).  Yet Troester did not file his complaint until August 6, 2012, more than 18 months later.  UF No. 49.  Accordingly, his wage statement claim is untimely and must be dismissed for this reason as well.  *See Elliot*, 572 F. Supp. 2d at 1179 (dismissing section 226 claim where only alleged inaccurate pay statements were issued more than year before filing complaint).

### C. Troester's Claim For Late Final Wages Fails As A Matter Of Law.

### 1. Starbucks Timely Paid All Wages Due Upon Termination.

An employee whose employment is involuntarily terminated is entitled to his final wages at the time of termination.  Cal. Lab. Code § 201(a).  Troester admits that, at the meeting during which Starbucks terminated his employment, the Company gave him a check for all his final wages, except those allegedly owed for his off-the-clock work.  UF No. 50; *see also* Compl. ¶ 58 (Starbucks "discharged Plaintiff and failed to immediately pay him all of his earned and unpaid wages . . . as a result of [its] failure[] to pay him minimum and overtime wages").  Because, as shown above, Troester is not

1   entitled to additional pay for his alleged off-the-clock work, Starbucks timely paid him
2   all wages due. Therefore, this claim fails as a matter of law. *See Waine-Golston*, 2013
3   WL 1285535, at *12 (granting summary judgment for employer on claim for waiting
4   time penalties because underlying claim for off-the-clock work failed as a matter of
5   law).

6               2.    Starbucks Did Not "Willfully" Fail To Pay Final Wages.

7        Regardless of whether Starbucks owed Troester additional pay at the time of his
8   discharge, he is not entitled to section 203 penalties because he cannot prove, as he
9   must, that Starbucks "willfully" failed to pay those final wages. *See* Cal. Lab. Code
10  § 203; *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1203 (2008) (employee
11  bears burden of proving willfulness). Willfulness requires an intentional failure to pay
12  wages due—even proof of "gross negligence or recklessness" does not suffice. *Amaral*,
13  163 Cal. App. 4th at 1203.

14       A failure to timely pay final wages is not willful when there is "a good faith
15  dispute that any wages are due." Cal Code Regs., tit 8, § 13520(a). A good faith dispute
16  exists "when an employer presents a defense, based in law or fact which, if successful,
17  would preclude any recover[y] on the part of the employee. The fact that a defense is
18  ultimately unsuccessful will not preclude a finding that a good faith dispute did exist."
19  *Id.* Thus, so long as an employer can present a reasonable, good faith defense—
20  regardless of its ultimate success—recovery under section 203 is precluded. *See, e.g.,*
21  *Barnhill v. Robert Saunders & Co.*, 125 Cal. App. 3d 1, 7-9 (1981) (no penalties because
22  employer's argument that wages due could be off-set against employee's debt to
23  employer created good faith dispute, even though court rejected the off-set defense).

24       *Choate v. Celite Corp.* 215 Cal. App. 4th 1460 (2013), where former employees
25  sued for unpaid vacation wages, is instructive. The employer argued that the employees
26  waived their right to the vacation wages in a collective bargaining agreement, because
27  the employer's longstanding practice was not to pay those wages, and the union had
28  never objected. *Id.* at 1464. The appellate court rejected this defense and upheld an

1   award of the unpaid wages. *Id.* at 1468.  However, it reversed the trial court's award of

2   waiting time penalties, holding that the employer had presented a good faith defense of

3   waiver, thus precluding a finding of willfulness.  *Id. See also Alonzo*, 832 F. Supp. 2d at

4   1133 (no willfulness because "[t]hough Defendant's arguments did not ultimately carry

5   the day under the law as found by this Court," they "were not unreasonable[] and were

6   not presented in bad faith"); *Campbell v. Pricewaterhouse Coopers, LLP*, 602 F. Supp.

7   2d 1163, 1185 (E.D. Cal. 2009) (section 203 penalties not warranted because

8   "[employer's] defense demonstrates the existence of . . . a good faith dispute."), *rev'd in*

9   *part on other grounds*, 642 F.3d 820 (9th Cir. 2011); *Amaral*, 163 Cal. App. 4th at 1203-

10  04 (employer's reasonable defense to wage claim precluded section 203 penalties).

11          Similarly here, Starbucks has presented several reasonable defenses to Troester's

12  wage claims, including that the alleged unpaid time was *de minimis*, that the tasks at

13  issue were not compensable work, and that Starbucks had no knowledge of the alleged

14  unpaid time.  Each of these defenses is supported by ample case law and Troester's own

15  testimony.  And, if successful, these defenses will preclude any recovery.  At a

16  minimum, therefore, a good faith dispute exists regarding whether any wages are due,

17  thus precluding a finding of willfulness.  For this reason, Troester's claim for section

18  203 penalties must be dismissed, regardless of whether his underlying wage claims

19  survive summary judgment.  *See Reber v. AIMCO/Bethesda Holdings, Inc.*, No. SA

20  CV07-0607, 2008 WL 4384147, at *9 (C.D. Cal. Aug. 25, 2008) (granting summary

21  judgment for defendant on section 203 claim because good faith dispute existed

22  regarding alleged entitlement to overtime pay, even though court denied summary

23  judgment as to the underlying overtime claim); *Worman v. MetLife Group, Inc.*, No.

24  CIV. S-06-2870, 2008 WL 223721, at *6 (E.D. Cal. Jan. 28, 2008) (granting summary

25  judgment for defendant on section 203 claim where "plaintiff has adduced no evidence"

26  that defendant withheld wages "for any reason beyond a good faith dispute about the

27  amount of compensation that was due").

28

DEFENDANT STARBUCKS CORPORATION'S MOTION FOR SUMMARY JUDGMENT

**D.     Troester's Claim For Unfair Competition Fails As A Matter Of Law.**

Troester claims that Starbucks violated the Unfair Competition Law ("UCL"), which prohibits business practices that are "unlawful, unfair or fraudulent." Cal. Bus. & Prof. Code § 17200. In effect, the UCL "borrows" another statute, such that an unlawful practice claim is viable only if the plaintiff can prove a violation of the underlying statute. *See State Farm Fire & Cas. Co. v. Super. Ct. (Allegro)*, 45 Cal. App. 4th 1093, 1103 (1996), *abrogated on other grounds by Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163 (1999).

Troester's UCL claim is based on his claim that Starbucks violated the California Labor Code by failing to pay for work performed off-the-clock. *See* UF No. 51 (Compl. ¶ 65) ("Through their alleged violations of the Labor Code and the Wage Order, [Starbucks] ha[s] engaged in . . . unfair competition under Business and Professions Code §§ 17200, *et seq.*"). Because the Labor Code claim fails as a matter of law, so too does the derivative UCL claim. *See White*, 497 F. Supp. 2d at 1090; *see also Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1203 (9th Cir. 2001) (affirming summary judgment in favor of defendant on UCL claim because UCL "does not give a plaintiff license to 'plead around' the absolute bars to relief contained in other possible causes of action by recasting those causes of action as ones for unfair competition") (quoting *Cel-Tech*, 20 Cal. 4th at 182).

**E.     Troester's Claim For Injunctive Relief Fails As A Matter Of Law.**

A plaintiff must have standing with respect to each remedy he seeks. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). Further, a named plaintiff must have standing in his own right, even if he seeks to represent a class that includes individuals who do have standing. *See, e.g., Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1002 n.7 (9th Cir. 2006); *Clark v. City of Lakewood*, 259 F.3d 996, 1007 (9th Cir. 2001).

Standing to seek injunctive relief requires, among other things, that the plaintiff demonstrate a "real and immediate threat of repeated injury." *Fortyune v. Am. Multi-*

1  *Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004); *see also Clark*, 259 F.3d at 1007. A

2  plaintiff who is no longer threatened by the conduct he wants enjoined has no standing

3  to obtain injunctive relief. *See id.* Thus, the Ninth Circuit consistently holds that *former*

4  employees, for whom employment practices pose "no real or immediate threat," lack

5  standing to seek injunctive relief to remedy alleged wage and hour violations. *See, e.g.,*

6  *Milligan v. Am. Airlines, Inc.*, 327 F. App'x 694, 696 (9th Cir. 2009) (former employee

7  lacks standing to seek injunctive relief because she "cannot show that she faces a 'real

8  or immediate threat of irreparable injury' by [employer's] employment practices")

9  (quoting *Clark*, 259 F.3d at 1007); *accord Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1189

10  (9th Cir. 2007); *Walsh v. Nev. Dept. of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006).

11  These principles preclude Troester's claim for injunctive relief. Because Troester

12  no longer works for Starbucks (UF No. 1), the conduct he wants enjoined poses no

13  conceivable threat to him. As a matter of law, therefore, he lacks standing to seek an

14  injunction, so his claim for injunctive relief must be dismissed.

15  **V.   CONCLUSION**

16  For all the foregoing reasons, Starbucks respectfully requests that its motion for

17  summary judgment be granted.

18

19  Dated:  December 30, 2013            AKIN GUMP STRAUSS HAUER & FELD LLP
20                                       Gregory W. Knopp
                                         Mark R. Curiel
21                                       Jonathan P. Slowik

22                                       By_____*/s/ Gregory W. Knopp*_____
23                                                Gregory W. Knopp
                                                  Attorneys for Defendant
24                                                Starbucks Corporation

25

26

27

28

DEFENDANT STARBUCKS CORPORATION'S MOTION FOR SUMMARY JUDGMENT

1

## PROOF OF SERVICE

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

4

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is:  2029 Century Park East, Suite 2400, Los Angeles, California 90067.  On December 30, 2013, I served the foregoing document(s) described as:

5

6

**DEFENDANT STARBUCKS CORPORATION'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

7

on the interested party(ies) below, using the following means:

8

9

**All parties identified for Notice of Electronic Filing generated by the Court's CM/ECF system under the referenced case caption and number**

10

11

12

13

☒ BY ELECTRONIC MAIL OR ELECTRONIC TRANSMISSION.  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent to the respective e-mail address(es) of the party(ies) as stated above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

14

☒ (FEDERAL)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

15

Executed on December 30, 2013 at Los Angeles, California.

16

17

18

19

Carmen M. Ayala
_____
[Print Name of Person Executing Proof]

_____
[Signature]

20

21

22

23

24

25

26

27

28