**AKIN GUMP STRAUSS HAUER & FELD LLP**
GREGORY W. KNOPP (SBN 237615)
MARK R. CURIEL (SBN 222749)
JONATHAN P. SLOWIK (SBN 287635)
gknopp@akingump.com
mcuriel@akingump.com
jpslowik@akingump.com
2029 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone:   310-229-1000
Facsimile:   310-229-1001

Attorneys for Defendant Starbucks Corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS TROESTER, on behalf of himself, and all others similarly situated,<br><br>               Plaintiffs,<br><br>     v.<br><br>STARBUCKS CORPORATION, a Washington corporation; and DOES 1-50, inclusive,<br><br>               Defendants. | Case No. 2:12-cv-07677-GAF-PJW<br><br>**DEFENDANT STARBUCKS CORPORATION'S SEPARATE STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**<br><br>[Notice of Motion and Motion, Compendium of Evidence, and Proposed Order filed Concurrently]<br><br>Date:    February 10, 2014<br>Time:    9:30 a.m.<br>Crtrm:   740 |

DEFENDANT STARBUCKS CORPORATION'S SEPARATE STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

105778707

## SEPARATE STATEMENT OF UNDISPUTED FACTS

| ¶ No. | Undisputed Fact | Evidence Supporting Undisputed Fact |
|---|---|---|
| 1. | Plaintiff Douglas Troester worked in a Starbucks store on Hollywood Way in California from February 2008 until January 2011. | Declaration of Gregory W. Knopp ("Knopp Decl.") ¶ 2, Ex. A (Deposition Transcript of Douglas Troester dated March 6, 2013 ("Troester Tr.") at 16:14-20, 52:5-24). |
| 2. | Troester initially worked as a "barista," an entry-level coffee-server, and became a "shift supervisor" in June 2008. | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 52:5-7, 52:25-53:4). |
| 3. | While employed by Starbucks, Troester understood that the Company's policy was "time worked equals time paid." | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 100:16-101:2). |
| 4. | While employed by Starbucks, Troester understood that Starbucks strictly prohibited "off-the-clock" work. | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 100:3-15). |
| 5. | While employed by Starbucks, Troester understood that one of his job responsibilities was to accurately record his work time using the point-of-sale ("POS") system so that Starbucks could pay him for all his time worked. | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 86:9-19). |
| 6. | Troester admits that Starbucks always paid him for all the time he recorded in the POS system. | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 86:23-87:4). |

105778707

| ¶ No. | Undisputed Fact | Evidence Supporting Undisputed Fact |
|---|---|---|
| 7. | Troester understood that, in the event that he performed any work while not "on-the-clock," he was responsible for recording his time in a book called the "punch communication log," so that Starbucks could ensure payment for that time. | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 87:12-25). |
| 8. | Troester used the punch communication log to capture time he spent on tasks such as running errands for the store before clocking in, assisting a customer in the store lobby while not clocked in, and talking to the store manager about "official business" while not clocked in. | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 89:9-95:12).  *See also* Cerna Decl. ¶ 6, Ex. C; *id.* ¶ 8, Ex. E. |
| 9. | Troester admits that Starbucks always paid him for the time he recorded in the punch communication log. | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 88:20-25). |
| 10. | Troester contends that he worked off-the-clock on certain shifts when he was a shift supervisor. | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 121:11-122:4, 131:2-13, 153:24-154:3). |

2

| ¶ No. | Undisputed Fact | Evidence Supporting Undisputed Fact |
|---|---|---|
| 11. | Troester claims that he performed unpaid work during shifts at the end of the business day—"closing" shifts—but not when he worked shifts in the morning or the afternoon. | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 106:17-24, 108:25-109:3) ("Q: The claims you assert in this lawsuit are based on alleged unpaid time worked exclusively on closing shifts, correct? A: That's correct."). |
| 12. | Even on closing shifts, Troester acknowledges that Starbucks paid him for all the work he performed while the store was open to customers and right up until the very end of his shift. | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 109:4-7, 141:8-11). |
| 13. | According to Troester, at the very end of a closing shift, he was responsible for using the store computer to transmit sales data to Starbucks headquarters, a process called the "close store procedure." | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 131:2-13). |
| 14. | The close store procedure consisted of selecting "close store" with the computer's mouse or keyboard, entering a password, and then pressing the "Y" key. | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 131:14-132:20). |
| 15. | Immediately after running the close store procedure, Troester set the store alarm by typing a numeric code on the alarm panel located near the computer. | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 122:5-19). |

DEFENDANT STARBUCKS CORPORATION'S SEPARATE STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

105778707

| ¶ No. | Undisputed Fact | Evidence Supporting Undisputed Fact |
|---|---|---|
| 16. | Troester contends that, starting around the summer of 2009, the computer system required that he clock out before initiating the close store procedure because the POS registers automatically rebooted. | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 167:23-169:2, 172:18-22). |
| 17. | Troester claims that the store close procedure typically lasted "one minute to two minutes" before he activated the alarm. | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 183:9-11) ("Q: So your testimony is that you activated the alarm one to two minutes after you clocked out?  A: The majority of the time, yes."). |
| 18. | Troester was assigned "User #6" on the store's alarm system. | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 124:7-9). |
| 19. | A comparison of the store's alarm records to Troester's time records confirms that, on average, Troester activated the alarm within one minute of clocking out. | Declaration of Jonathan Slowik ("Slowik Decl.") ¶ 4; Rutt Decl. ¶ 3, Ex. G; Declaration of Joshua Long ("Long Decl.") ¶ 4, Ex. I. |
| 20. | A comparison of the store's alarm records to Troester's time records shows that Troester activated the alarm within two minutes of clocking out on more than 90 percent of his shifts. | Slowik Decl. ¶ 4; Rutt Decl. ¶ 3, Ex. G; Long Decl. ¶ 4, Ex. I. |
| 21. | Troester testified that he has no reason to doubt the accuracy of his time punch records and the store's alarm records. | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 177:18-182:22). |

105778707

| ¶ No. | Undisputed Fact | Evidence Supporting Undisputed Fact |
|---|---|---|
| 22. | The store's alarm system required that the employees leave the store within 60 seconds of setting the alarm. | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 123:3-5). |
| 23. | After activating the alarm, Troester exited and locked the front door. | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 148:7-13, 151:19-152:6). |
| 24. | Troester estimates that it took 30 seconds to walk out of the store after activating the alarm. | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 150:14-20). |
| 25. | Troester estimates that it took 15 seconds to "a couple minutes" to lock the door. | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 152:7-19). |
| 26. | Troester claims that after locking the door, he walked his co-workers to their cars. | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 148:7-13, 152:20-153:23). |
| 27. | Troester claims that walking his co-workers to their cars took 35-45 seconds. | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 153:13-23). |
| 28. | Troester contends that he should be paid for all the time he spent running the close store procedure, setting the alarm, walking out of the store, locking the door, and walking co-workers to their cars. | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 157:8-14). |

5

| ¶ No. | Undisputed Fact | Evidence Supporting Undisputed Fact |
|---|---|---|
| 29. | Troester claims that every "couple of months," after clocking out and exiting the store, he brought the store's patio furniture inside the store after he and the other employees forgot to do so while still on-the-clock. | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 157:8-14). |
| 30. | Troester claims that every "couple of months," after clocking out and exiting the store, he opened the door so that another employee could retrieve a coat that he or she had left behind. | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 149:15-22, 159:1-7) ("Occasionally, the partner [coworker] would say, 'Oh, I forgot a coat or jacket or personal piece of property. Can we go back inside and – and retrieve that, please?'"). |
| 31. | Troester claims that two or three times a month, after clocking out and exiting the store, he stayed outside the store with a co-worker who was waiting for a ride. | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 148:7-13, 148:14-149:2, 159:19-25). |
| 32. | Besides the time he spent running the store close procedure, setting the alarm, walking out of the store, locking the door, walking employees to their cars, bringing in patio furniture, letting employees inside to retrieve coats, and waiting with co-workers for rides, Troester does not claim that he ever performed any other unpaid work. | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 177:4-9) ("Q: I want to make sure today's record is complete. So besides everything you've testified to already, do you claim that you performed any other work for which Starbucks didn't pay you on closing shifts? A: No."). |

DEFENDANT STARBUCKS CORPORATION'S SEPARATE STATEMENT OF UNDISPUTED FACTS AND
CONCLUSIONS OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

105778707

---

| ¶ No. | Undisputed Fact | Evidence Supporting Undisputed Fact |
|---|---|---|
| 33. | Troester cannot recall any Starbucks manager ever instructing or asking him to wait with co-workers outside the store for their rides. | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 155:21-156:3). |
| 34. | Troester's managers never asked him to wait with co-workers outside the store for their rides. | Declaration of Cecelia Cerna ("Cerna Decl.") ¶ 4; Declaration of Michelle Westby ("Westby Decl.") ¶ 6. |
| 35. | Troester believed that as "a large strong male," he should help his "young female" co-workers. | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 154:12-17). |
| 36. | When Troester's co-workers walked home after the closing shift, Troester chose to walk them "to the end of the parking lot." | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 156:12-21). |
| 37. | While employed by Starbucks, Troester believed that he was entitled to be paid for the off-the-clock work he alleges. | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 36:14-37:5). |
| 38. | Troester never made any effort to seek payment for the off-the-clock work he alleges while employed by Starbucks. | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 167:15-22, 175:3-7, 187:3-15). |
| 39. | Troester never used the punch communication log to document any work he allegedly performed after clocking out at the end of a closing shift. | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 157:24-158:5, 167:15-22). |

DEFENDANT STARBUCKS CORPORATION'S SEPARATE STATEMENT OF UNDISPUTED FACTS AND
CONCLUSIONS OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

105778707

| ¶ No. | Undisputed Fact | Evidence Supporting Undisputed Fact |
|---|---|---|
| 40. | Troester used the punch communication log multiple times to record time spent on tasks performed after clocking out, such as picking up product for the store. | Cerna Decl. ¶ 6, Ex. C; *id.* ¶ 8, Ex. E. |
| 41. | Troester used the punch communication log multiple times to correct wrong time punches. | Cerna Decl. ¶ 5, Ex. B; *id.* ¶ 7, Ex. D; Westby Decl. ¶ 7, Ex. F. |
| 42. | Troester did not raise any concerns with his supervisor (the store manager), the store manager's boss (the district manager), or Starbucks human resources department ("partner resources") about the off-the-clock work he alleges. | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 83:9-84:9); Cerna Decl. ¶¶ 3-4; Westby Decl. ¶¶ 4-5. |
| 43. | Troester never called Starbucks telephone "hotline," which he knew was available for "virtually any kind of HR function dealing with if you didn't get pay . . . or anything of that," to report the off-the-clock work he alleges. | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 84:20-85:4). |
| 44. | Troester called the helpline "many times" for reasons unrelated to the off-the-clock work he alleges. | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 85:5-7). |

8

105778707

| ¶ No. | Undisputed Fact | Evidence Supporting Undisputed Fact |
|---|---|---|
| 45. | Troester called the helpline to complain about his pay when he worked in a Nevada store. | Declaration of Jana Rutt ("Rutt Decl.") ¶ 5, Ex. H. |
| 46. | Every time Troester called the helpline, Starbucks addressed his concerns to his satisfaction. | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 85:8-10). |
| 47. | Troester claims that his wage statements were inaccurate solely because they did not reflect the wages he seeks for his alleged off-the-clock work. | Complaint, Dkt. No. 1-1 ("Compl.") ¶ 47 (Starbucks "failed to provide Plaintiff with accurate written wage statements . . . as a result of not recording all of this hours worked and not paying him earned minimum and overtime wages."); Knopp Decl. ¶ 2, Ex. A (Troester Tr. 193:6-11) ("Q: My understanding of your claim is that the pay statements are inaccurate because they didn't reflect the pay you earned, but never received?  A: I think that's a fair statement.  Q: I got it right?  A: Yes."). |
| 48. | Troester received his final wage statement on January 6, 2011. | Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 72:4-12). |
| 49. | Troester did not file his complaint until August 6, 2012. | Compl., Dkt. No. 1-1. |
| 50. | At the meeting during which Starbucks terminated Troester's employment, the Company gave him a check for all his final wages, except those allegedly owed for his off-the-clock work. | Knopp Decl. ¶ 2, Ex. A (Troester Tr. 71:21-72:12). |

DEFENDANT STARBUCKS CORPORATION'S SEPARATE STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

105778707

| ¶ No. | Undisputed Fact | Evidence Supporting Undisputed Fact |
|---|---|---|
| 51. | Troester's Unfair Competition Law claim is based on his claim that Starbucks violated the California Labor Code by failing to pay for work performed off-the-clock. | Compl. ¶ 65 ("Through their alleged violations of the Labor Code and the Wage Order, [Starbucks] ha[s] engaged in . . . unfair competition under Business and Professions Code §§ 17200, *et seq.*"). |
| 52. | A comparison of the store's alarm records to Troester's time records confirms that, on average, Troester activated the alarm within five minutes of clocking out on every shift. | Declaration of Jonathan Slowik ("Slowik Decl.") ¶ 4; Rutt Decl. ¶ 3, Ex. G; Long Decl. ¶ 4, Ex. I. |

## CONCLUSIONS OF LAW

1.      Troester's claim that Starbucks violated the California Labor Code by failing to pay Troester for all time worked fails as a matter of law because the amount of alleged unpaid time is trivial and Starbucks could not feasibly capture the time at issue; thus, the alleged unpaid time is *de minimis*. *Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir. 1984); *Cervantez v. Celestica Corp.*, 618 F. Supp. 2d 1208, 1218-19 (C.D. Cal. 2009); DLSE Enforcement Policies & Interpretations Manual § 46.6.4. *See, e.g., Gillings v. Time Warner Cable LLC*, No. CV 10-5565-AG(RNBx), 2012 WL 1656937, at *4 (C.D. Cal. Mar. 26, 2012) (time spent booting up computer *de minimis*); *Waine-Golston v. Time Warner Entm't Advance/New House P'ship*, No. 11cv1057-GPB(RRB), 2013 WL 1285535, at *6 (S.D. Cal. Mar. 27, 2013) (same).

2.      Troester's claim that Starbucks violated the California Labor Code by failing to pay Troester for all time worked fails as a matter of law to the extent it is based on time spent allowing co-workers to reenter the store to retrieve coats or waiting outside the store with co-workers for their rides, because Troester chose to engage in

10

DEFENDANT STARBUCKS CORPORATION'S SEPARATE STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

105778707

these activities on his own time, without any prompting from Starbucks.  Hence, the was not subject to Starbucks control at the time he engaged in these activities.  *See Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 578 (2000); Cal. Code Regs. tit. 8, § 11050(2)(K).  *See also, e.g., Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122, 1129 (C.D. Cal. 2011) (time spent in office before shift not compensable under California law where employer suggested, but did not require, that employees arrive early); *Porch v. Masterfoods, USA, Inc.*, 685 F. Supp. 2d 1058, 1071-72 (C.D. Cal. 2008) (meal time not compensable under California law where employer encouraged, but did not require, employees to eat on employer's premises); *Overton v. Walt Disney Co.*, 136 Cal. App. 4th 263, 271 (2006) (time spent commuting to site in employer's bus not compensable under California law because employer did not require that employees take bus).

3.     Troester's claim that Starbucks violated the California Labor Code by failing to pay Troester for all time worked fails as a matter of law to the extent it is based on time spent off-the-clock retrieving patio furniture, waiting with co-workers for their rides, and letting co-workers back inside to retrieve coats, because Starbucks had no actual or constructive knowledge about this time.  Thus, it did not "suffer or permit" that work.  *See White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1083 (N.D. Cal. 2007) (plaintiff's off-the-clock claim failed because he chose not to use Starbucks procedures for reporting time worked while off-the-clock); *Koike v. Starbucks Corp.*, No. C 06-3215 VRW, 2008 WL 7796650, at *4-6 (N.D. Cal. June 20, 2008) (same); *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981) (summary judgment for employer on off-the-clock claim where plaintiff failed to record the time allegedly worked).

4.     Troester's claim that Starbucks violated the California Labor Code by failing to provide accurate wage statements fails as a matter of law because it is derivative of his derivative of his off-the-clock claim.  *See Waine-Golston*, 2013 WL 1285535, at *12 ("Since the Court grants Defendant's motion for summary judgment

11

DEFENDANT STARBUCKS CORPORATION'S SEPARATE STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

105778707

1  concerning the logging in and off claim, the Court must also grant Defendant's motion

2  for summary judgment on the [derivative] inaccurate wage statement claim.").

3      5.      Troester's claim that Starbucks violated the California Labor Code by

4  failing to provide accurate wage statements fails as a matter of law because it is barred

5  by the statute of limitations.  Cal. Civ. Proc. Code § 340; *see Elliot v. Spherion Pac.*

6  *Work, LLC*, 572 F. Supp. 2d 1169, 1179 (C.D. Cal. 2008) (dismissing wage statement

7  claim where only alleged inaccurate pay statements were issued more than year before

8  filing complaint).

9      6.      Troester's claim that Starbucks violated the California Labor Code by

10  willfully failing to timely pay all final wages fails as a matter of law because it is

11  derivative of his off-the-clock claim.  *See Waine-Golston*, 2013 WL 1285535, at *12

12  (granting summary judgment for employer on claim for waiting time penalties because

13  underlying claim for off-the-clock work failed as a matter of law).

14      7.      Troester's claim that Starbucks violated the California Labor Code by

15  willfully failing to timely pay all final wages fails as a matter of law because Starbucks

16  has presented several good faith defenses to his claim for unpaid wages.  Therefore, any

17  failure to timely pay final wages was not willful, because a good faith dispute exists

18  regarding whether any additional wages were due.  *Amaral v. Cintas Corp. No. 2*, 163

19  Cal. App. 4th 1157, 1203 (2008) (plaintiff must prove that failure to timely pay final

20  wages was willful); Cal Code Regs. tit 8, § 13520(a) (failure to timely pay final wages

21  is not willful when there is "a good faith dispute that any wages are due"); *Choate v.*

22  *Celite Corp.* 215 Cal. App. 4th 1460, 1468 (2013) (employer's reasonable defense to

23  unpaid wages claim creates good faith dispute and precludes finding of willfulness, even

24  if defense is ultimately rejected).

25      8.      Troester's claim under the Unfair Competition Law fails as a matter of law

26  because the underlying alleged violations on which he bases this claim fail as a matter

27  of law.  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 183 (1999);

28

DEFENDANT STARBUCKS CORPORATION'S SEPARATE STATEMENT OF UNDISPUTED FACTS AND
CONCLUSIONS OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

105778707

1  *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1203 (9th Cir. 2001) (affirming summary

2  judgment in favor of defendant on UCL claim because UCL "does not give a plaintiff

3  license to 'plead around' the absolute bars to relief contained in other possible causes of

4  action by recasting those causes of action as ones for unfair competition") (quoting *Cel-*

5  *Tech*, 20 Cal. 4th at 182).

6       9.    Troester's claim for injunctive relief fails as a matter of law because as a

7  former employee, Troester lacks standing to seek an injunction.  *See, e.g., Milligan v.*

8  *Am. Airlines, Inc.*, 327 F. App'x 694, 696 (9th Cir. 2009) (former employee lacks

9  standing to seek injunctive relief because she "cannot show that she faces a 'real or

10  immediate threat of irreparable injury' by [employer's] employment practices")

11  (quoting *Clark*, 259 F.3d at 1007); *accord Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168,

12  1189 (9th Cir. 2007); *Walsh v. Nev. Dept. of Human Res.*, 471 F.3d 1033, 1037 (9th Cir.

13  2006).

14

15  Dated:  December 30, 2013          AKIN GUMP STRAUSS HAUER & FELD LLP
                                    Gregory W. Knopp

16                                      Mark R. Curiel
                                    Jonathan P. Slowik

17

18                                By_____*/s/ Gregory W. Knopp*_____

19                                      Gregory W. Knopp
                                    Attorneys for Defendant

20                                      Starbucks Corporation

21

22

23

24

25

26

27

28

DEFENDANT STARBUCKS CORPORATION'S SEPARATE STATEMENT OF UNDISPUTED FACTS AND
CONCLUSIONS OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

105778707

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 2029 Century Park East, Suite 2400, Los Angeles, California 90067. On December 30, 2013, I served the foregoing document(s) described as:

**DEFENDANT STARBUCKS CORPORATION'S SEPARATE STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

on the interested party(ies) below, using the following means:

**All parties identified for Notice of Electronic Filing generated by the Court's CM/ECF system under the referenced case caption and number**

☒ BY ELECTRONIC MAIL OR ELECTRONIC TRANSMISSION. Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent to the respective e-mail address(es) of the party(ies) as stated above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒ (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on December 30, 2013 at Los Angeles, California.

Carmen M. Ayala
[Print Name of Person Executing Proof]

[Signature]

105778707