1  **AKIN GUMP STRAUSS HAUER & FELD LLP**
2  GREGORY W. KNOPP (SBN 237615)
   MARK R. CURIEL (SBN 222749)
3  JONATHAN P. SLOWIK (SBN 287635)
   gknopp@akingump.com
4  mcuriel@akingump.com
   jpslowik@akingump.com
5  2029 Century Park East, Suite 2400
   Los Angeles, CA 90067
6  Telephone:  310-229-1000
   Facsimile:  310-229-1001

7  Attorneys for Defendant Starbucks Corporation

8

9

10              UNITED STATES DISTRICT COURT

11            CENTRAL DISTRICT OF CALIFORNIA

12

13  DOUGLAS TROESTER, on behalf of      Case No. 2:12-cv-07677-GAF-PJW
    himself, and all others similarly
14  situated,                          **DEFENDANT STARBUCKS**
                                       **CORPORATION'S REPLY IN**
15                Plaintiffs,          **SUPPORT OF MOTION FOR**
                                       **SUMMARY JUDGMENT OR, IN**
16        v.                           **THE ALTERNATIVE, SUMMARY**
                                       **ADJUDICATION**
17  STARBUCKS CORPORATION, a
    Washington corporation; and DOES 1- [Reply Separate Statement,
18  50, inclusive,                     Evidentiary Objections, Responses to
                                       Plaintiff's Evidentiary Objections, and
19                Defendants.          Supplemental Declaration of Jonathan
                                       P. Slowik filed concurrently]
20
                                       Date:    March 10, 2014
21                                     Time:    9:30 a.m.
                                       Crtrm:   740
22
                                       Judge:      Hon. Gary A. Feess
23
                                       Date Action Filed: August 6, 2012
24

25

26

27

28

# **TABLE OF CONTENTS**

Page

I.   INTRODUCTION ................................................................................1

II.  ARGUMENT .....................................................................................2

    A.   Troester's Claims For Unpaid Wages Fail As A Matter Of Law. ..........2

        1.   Any Unpaid Time Was De Minimis. ..........................................2

            a)   This Defense Applies To California Law Claims. .............3

            b)   Troester Concedes That Any Alleged "Work" Time Following The Store Close Process Was De Minimis......4

            c)   The Time Spent On The Store Close Process Was De Minimis. ...............................................................................6

        2.   Most Of The Tasks Troester Allegedly Performed After Leaving The Store Are Not Compensable In Any Event. ........ 10

            a)   Letting Co-Workers Back In The Store And Waiting With Co-Workers For Rides Is Not Compensable "Work." ....................................................................... 10

            b)   Troester Is Not Entitled To Pay For Tasks Unknown To Starbucks.........................................................................11

    B.   Troester's Wage Statement Claim Fails As A Matter Of Law. ........... 12

    C.   Troester's Late Final Pay Claim Fails As A Matter Of Law. ............. 12

    D.   Troester's Unfair Competition Claim Fails As A Matter Of Law. ..... 14

III. CONCLUSION.................................................................................. 14

i

DEFENDANT STARBUCKS CORPORATION'S REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Abbe v. City of San Diego,*
  No. 05cv1629 DMS (JMA), 2007 WL 4146696 (S.D. Cal. Nov. 9, 2007)..........6

*Alonzo v. Maximus, Inc.,*
  832 F. Supp. 2d 1122 (C.D. Cal. 2011) ............................................... 13

*Alvarado v. Costco Wholesale Corp.,*
  No. 06-04015, 2008 WL 2477393 (N.D. Cal. June 18, 2008) ............................3

*Busk v. Integrity Staffing Solutions, Inc.,*
  713 F.3d 525 (9th Cir. 2013) ...................................................... 4, 6, 7

*Cervantez v. Celestica Corp.,*
  618 F. Supp. 2d 1208 (C.D. Cal. 2009) ........................................ 3, 4, 7

*Espinoza v. County of Fresno,*
  290 F.R.D. 494 (E.D. Cal. 2013) .................................................. 4, 7

*Farris v. County of Riverside,*
  667 F. Supp. 2d 1151 (C.D. Cal. 2009) .............................................6

*First Nat'l Ins. Co. v. F.D.I.C.,*
  977 F. Supp. 1051 (S.D. Cal. 1997)................................................ 5, 12

*Gillings v. Time Warner Cable LLC,*
  No. CV 10-5565-AG(RNBx), 2012 WL 1656937
  (C.D. Cal. Mar. 26, 2012) ........................................................ passim

*Green v. Lawrence Serv. Co.,*
  No. LA CV12-06155 JAK (VBKx), 2013 WL 3907506,
  (C.D. Cal. July 23, 2013). ........................................................ 3, 4, 7

*Koike v. Starbucks Corp.,*
  No. 06-3215, 2008 WL 7796650 (N.D. Cal. June 20, 2008) ..................... 11, 12

*Lindow v. United States,*
  738 F.2d 1057 (9th Cir. 1984) .................................................... 4, 6, 9

ii

DEFENDANT STARBUCKS CORPORATION'S REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

*Matthews v. Xerox Corp.,*
    319 F. Supp. 2d 1166 (S.D. Cal. 2004).................................................8

*Reich v. Monfort, Inc.,*
    144 F.3d 1329 (10th Cir. 1998) ....................................................7

*Rojas v. Marko Zaninovich, Inc.,*
    No. 1:09-CV-00705 AWI JLT, 2012 WL 439398 (E.D. Cal. Feb. 9, 2012)........3

*Rutti v. Lojack Corp.,*
    596 F.3d 1046 (9th Cir. 2010) ....................................................3

*Sandifer v. U.S. Steel Corp*
    134 S. Ct. 870 (2014) ............................................................9

*Silva v. U.S. Bancorp,*
    No. 5:10-cv-01854-JHN-PJWx, 2011 WL 7096576 (C.D. Cal. Oct. 6, 2011) ....5

*Sundstrom v. McDonnell Douglas Corp.,*
    816 F. Supp. 577 (N.D. Cal. 1992) ...............................................9

*Waine-Golston v. Time Warner Entm't-Advance/New House P'ship,*
    No. 11cv1057-GPH(RRB), 2013 WL 1285535
    (S.D. Cal. Mar. 27, 2013)................................................ 3, 7, 8, 9

*White v. Starbucks Corp.,*
    497 F. Supp. 2d 1080 (N.D. Cal. 2007) ...................................... 11, 12

*Worman v. MetLife Grp., Inc.*
    No. CIV. S-06-2870, 2008 WL 223721 (E.D. Cal. Jan. 28, 2008) .................. 13

**STATE CASES**

*Amaral v. Cintas Corp. No. 2,*
    163 Cal. App. 4th 1157 (2008) ................................................. 13

*Gonzalez v. Downtown LA Motors, LP,*
    215 Cal. App. 4th 36 (2013) ................................................... 13

*Morillion v. Royal Packing Co*
    22 Cal. 4th 575 (2000) ..........................................................4

*Overton v. Walt Disney Co.,*
    136 Cal. App. 4th 263 (2006) .................................................. 11

iii

**FEDERAL STATUTES**

29 U.S.C. § 203(o) ....................................................................................9

29 U.S.C. § 206(a)(1) (1952) ...................................................................7

**STATE STATUTES**

California Labor Code § 201.................................................................. 12

**REGULATIONS**

Cal. Code Regs., Title 8, § 13520(a)...................................................... 13

**OTHER AUTHORITIES**

DLSE Enforcement Policies & Interpretations Manual § 47.2.1 .............................3

DLSE Op. Letter 1988.05.16 ...................................................................3

DLSE Op. Letter 1994.02.03-3 .................................................................3

U.S. Dep't of Labor, History of Federal Minimum Wage Rates, *available at*
http://www.dol.gov/whd/minwage/chart.htm. ........................................7

DEFENDANT STARBUCKS CORPORATION'S REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

## I.   **INTRODUCTION**

Douglas Troester's opposition makes clear that his claims are much narrower in scope than they originally appeared. Specifically, they are based entirely on his contention that Starbucks failed to pay for the brief moments—one minute on average— that he spent running a computer program (the "store close procedure") on closing shifts just before setting the alarm and exiting the store.

While Troester identified other allegedly unpaid "work" at deposition, he effectively abandoned his claims based on any other tasks. Starbucks proved that these other tasks are not compensable because Troester performed them on his own time and of his own volition (e.g., staying outside the store while a co-worker awaited a ride home), because Starbucks had no knowledge of them (e.g., opening the store so co-workers could retrieve coats and never seeking payment for this time), or because they were *de minimis* (e.g., walking out of the store, locking the door, and spending roughly 35 seconds accompanying a co-worker to his car). Troester offered no response to any of these arguments and, therefore, concedes them.

Moreover, while Troester continues to press his claim based on the time spent performing the store close procedure, this theory, too, is narrower than he originally claimed. Thus, he now limits it to the period "[f]rom Summer 2009 until October 2010," when his store's "computer system required that Troester clock out before initiating the close store procedure." Opp. at 2. Troester concedes that his store adopted a new computer system in October 2010, which "no longer required employees to clock out before initiating the store close procedure." *Id.* at 3.

But even when so limited, Troester's claim based on the store close procedure still fails, because the time at issue clearly was *de minimis*. Troester concedes that this task was extremely brief, lasting no more than a minute or two. He also effectively concedes that Starbucks time-keeping system could not feasibly capture these moments, arguing that the system "*required*" that he clock out first. Courts consistently hold that the *de minimis* defense bars wage claims in like circumstances.

1

DEFENDANT STARBUCKS CORPORATION'S REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

1   Troester lacks any convincing argument in response. He contends that the *de*
2   *minimis* doctrine does not apply to California law claims, ignoring substantial authority
3   to the contrary while supplying no support of his own. He exaggerates the amount of
4   time at issue without actually disputing Starbucks facts. He contradicts himself by
5   arguing that Starbucks had the ability to record this time, while holding firm to his claim
6   that the system in *his* store could not do so. And he tries to distract from his own
7   damning circumstances by arguing about the distinct experiences of *other* employees
8   from *different* stores. None of these arguments is factually or legally supportable. They
9   simply cannot change the conclusion that the brief moments spent running the store
10  close process were *de minimis* as a matter of law. As a result, Troester's wage claims—
11  and the derivative claims based thereon—must be dismissed in their entirety.[1]

12  Finally, two of Troester's derivative claims—for failure to provide accurate pay
13  statements and failure to timely pay final wages—should be dismissed regardless of the
14  disposition of the underlying wage claims. Thus, Troester complains that his paystubs
15  were inaccurate, but he did not file suit in time to recover statutory penalties. His claim
16  for penalties based on late payment of final wages fares no better, because those
17  penalties are not available when an employer asserts a "good faith defense" that no
18  wages are due. Starbucks certainly has done so here. Therefore, even if Troester's
19  wage claims could survive summary judgment, these derivative claims still would fail as
20  a matter of law.

21  ## II.   ARGUMENT

22  ### A.   Troester's Claims For Unpaid Wages Fail As A Matter Of Law.

23  #### 1.   Any Unpaid Time Was *De Minimis*.

24  Troester argues that the *de minimis* doctrine does not apply to claims under the
25  California Labor Code and that, even if it did, the time he spent running the store close
26  computer program does not qualify. He is wrong on both points. Further, he does not

27

28  _____

[1] Troester acknowledges that his claim for injunctive relief must be dismissed. Opp. at 2 n.1.

2

1  dispute, and therefore concedes, that the *de minimis* defense bars his claims based on

2  any other alleged "work."

3                          a)      This Defense Applies To California Law Claims.

4         Troester principally contends that the *de minimis* doctrine is a creature of federal

5  law and therefore does not apply to his state law claims. Opp. at 10-13. This position is

6  unsupportable. Courts routinely apply the *de minimis* defense to California law claims.

7  *See Cervantez v. Celestica Corp.*, 618 F. Supp. 2d 1208, 1217 (C.D. Cal. 2009)

8  (rejecting argument that "the *de minimis* [doctrine] relates only to the FLSA, not

9  California law"); *see also Rutti v. Lojack Corp.*, 596 F.3d 1046, 1057-58 (9th Cir. 2010);

10  *Waine-Golston v. Time Warner Entm't-Advance/New House P'ship*, No. 11cv1057-

11  GPH(RRB), 2013 WL 1285535, at *6 (S.D. Cal. Mar. 27, 2013); *Green v. Lawrence

12  Serv. Co.*, No. LA CV12-06155 JAK (VBKx), 2013 WL 3907506, at *7 (C.D. Cal.

13  July 23, 2013); *Gillings v. Time Warner Cable LLC*, No. CV 10-5565-AG(RNBx), 2012

14  WL 1656937, at *4-5 (C.D. Cal. Mar. 26, 2012); *Rojas v. Marko Zaninovich, Inc.*, No.

15  1:09-CV-00705 AWI JLT, 2012 WL 439398, at *21-22 (E.D. Cal. Feb. 9, 2012);

16  *Alvarado v. Costco Wholesale Corp.*, No. 06-04015, 2008 WL 2477393 at *4 (N.D. Cal.

17  June 18, 2008). And, as Troester notes, even the state agency charged with enforcing

18  the Labor Code recognizes the vitality of the *de minimis* doctrine under California law.

19  *See* DLSE Enforcement Policies & Interpretations Manual § 47.2.1, *available at*

20  http://www.dir.ca.gov/dlse/dlsemanual/dlse_enfcmanual.pdf; DLSE Op. Letter

21  1988.05.16 at 2; DLSE Op. Letter 1994.02.03-3 at 4.

22         Troester offers no authority to the contrary. He cites *Rutti*, but that case applied

23  the doctrine equally to the plaintiff's California and FLSA claims in granting summary

24  judgment in favor of the employer. 596 F.3d at 1057-58. Moreover, without saying so,

25  Troester cites only the *dissent*, which did not even discuss the *de minimis* defense at all,

26  but rather opines that time spent commuting to job sites is not compensable under

27  California law. *See id.* at 1065 (Callahan, J., dissenting).

28

DEFENDANT STARBUCKS CORPORATION'S REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

1    Troester's reliance on *Morillion v. Royal Packing Co.* is equally misplaced.  That

2    case merely interprets the definition of "hours worked" under California law, without

3    considering what employers must do about insignificant periods of time that are difficult

4    to record.  *See Morillion*, 22 Cal. 4th 575, 581-88 (2000); *see also Lindow v. United*

5    *States*, 738 F.2d 1057, 1062 (9th Cir. 1984) (*de minimis* doctrine applies to "otherwise

6    compensable time").  Courts that evaluate the *de minimis* defense have no trouble

7    making this distinction.  *See Cervantez*, 618 F. Supp. 2d at 1218-19 (discussing

8    *Morillion* and entertaining *de minimis* defense to Labor Code claims); *Green*, 2013 WL

9    3907506, at *7 (same, granting summary judgment to employer).

10    Troester's argument that "advances in modern technology" have vitiated the *de*

11    *minimis* defense also flies in the face of recent case law.  In the present day, courts do

12    not hesitate to grant summary judgment for employers who properly invoke the defense.

13    *See, e.g., Busk v. Integrity Staffing Solutions, Inc.*, 713 F.3d 525, 532-33 (9th Cir. 2013);

14    *Espinoza v. County of Fresno*, 290 F.R.D. 494, 506-07 (E.D. Cal. 2013).  Troester's

15    distinction between "quintessential punch clock[s]" and today's "sophisticated time-

16    keeping systems" is of no help, because the *de minimis* doctrine is particularly

17    applicable where a timekeeping system requires a few brief steps before clocking in or

18    after clocking out.  As long as the time is minimal, these timekeeping systems

19    "achieve[] an effective balance between the employers' dual concerns of accurate pay

20    and administrative efficiency."  *Gillings*, 2012 WL 1656937, at *5 (six minutes spent

21    logging onto computer to access timekeeping software *de minimis*).

22    In short, the *de minimis* doctrine continues to apply with full force to claims such

23    as Troester's.  Troester has cited no authority suggesting otherwise.

24                    b)    Troester Concedes That Any Alleged "Work" Time Following
25                          The Store Close Process Was *De Minimis.*

26    At deposition, Troester testified that, after completing the store close process on

27    closing shifts, he set the alarm, walked to the door, locked the door, walked co-workers

28    to their cars (UF Nos. 15, 23-27) and, on rare occasions, performed brief tasks outside

4

1  the store, such as bringing in patio furniture, letting co-workers inside, or waiting with
2  co-workers for their rides (UF Nos. 29-31).  Starbucks challenged Troester's claims
3  based on each of these tasks.

4         Thus, in its motion, Starbucks explained that *all* of this alleged work was *de
5  minimis*, even assuming that it otherwise was compensable.  First, Starbucks showed
6  that all of this time generally totaled less than two minutes, so the time at issue is not
7  significant.  Mot. at 7-8; UF Nos. 23-27.  Troester does not contend otherwise.  Second,
8  Starbucks showed that Troester needed to exit the store immediately after setting the
9  alarm to avoid triggering it, so all of these tasks necessarily occurred after clocking out
10 and thus were administratively difficult to record.  Mot. at 8-9.  Troester does not
11 dispute this point either, choosing instead to argue only that the time spent on the store
12 close procedure could have been captured.  Finally, Starbucks showed that, because
13 these two factors unquestionably favor the *de minimis* defense, the defense should be
14 applied regardless of how frequently these "other" tasks occurred.  *Id.* at 9.  Once again,
15 Troester offered no response.

16        In short, beyond arguing that the *de minimis* defense cannot apply at all—an
17 argument that clearly fails—Troester does not dispute that the defense precludes his
18 claims based on any alleged "work" performed after completing the store close process.
19 By failing to offer any argument in response to Starbucks showing, he conceded this
20 point.  *See Silva v. U.S. Bancorp*, No. 5:10-cv-01854-JHN-PJWx, 2011 WL 7096576, at
21 *3 (C.D. Cal. Oct. 6, 2011) (arguments not addressed in opposition are conceded).  At a
22 minimum, therefore, Starbucks is entitled to summary adjudication of Troester's claims
23 based on any allegedly unpaid work performed after completing the store close
24 procedure.  *See First Nat'l Ins. Co. v. F.D.I.C.*, 977 F. Supp. 1051, 1055 (S.D. Cal. 1997)
25 (court may grant summary adjudication as to parts of a claim or individual issues, even
26 if doing so will not resolve the entire cause of action).

27
28

1          c)      The Time Spent On The Store Close Process Was *De Minimis*.

2          With no argument against the *de minimis* doctrine as applied to any other tasks,

3    Troester focuses exclusively on the store close process and, more specifically, the

4    process before October 2010, when the computer system allegedly "required" him to

5    clock out first. *See* Opp. at 2-3, 13-18. But Starbucks showed that this time was *de*

6    *minimis* as well, and Troester offers no compelling response.

7          First, Starbucks showed that the time allegedly spent performing this task—the

8    time between clocking out and setting the alarm (UF No. 15)—lasted one minute on

9    average (UF Nos. 19-21), far less than the time courts routinely hold is *de minimis*.

10   Troester does not dispute these facts or address the cases Starbucks cited. Instead, he

11   offers his own, deeply-flawed analysis to argue that, in fact, the process lasted 2

12   minutes, 50 seconds on average.[2] This distinction is irrelevant, because 2 minutes, 50

13   seconds is not significant for purposes of the *de minimis* doctrine, even if performed

14   every day. *See Gillings*, 2012 WL 1656937, at *5 (six minutes per day spent logging

15   into computer programs before clocking in *de minimis*); *Busk*, 713 F.3d at 532-33 (five

16   to ten minutes per day *de minimis*). Troester cites no authority suggesting otherwise.

17         Troester next argues that this amount of time is significant in the aggregate,

18   because it amounts to more than 12 hours over a period of nearly two years. Opp. at 17.

19   While this estimate is grossly inflated, it is still only 8 minutes per week—well within

20   the *de minimis* range. *See Lindow*, 738 F.2d at 1062 (collecting cases finding 10 minute

21   per day *de minimis*); *accord Farris v. County of Riverside*, 667 F. Supp. 2d 1151, 1166

22   (C.D. Cal. 2009) (10 minutes per day); *Abbe v. City of San Diego*, No. 05cv1629 DMS

23   (JMA), 2007 WL 4146696, at *7 (S.D. Cal. Nov. 9, 2007) (same). The 1953 case

24   Troester cites, *Addison v. Huron Stevedoring Corp.*, is inapposite because a dollar per

25

26   _____
          [2] Troester's estimate is based on a number of glaring mistakes, including obvious data entry
27   errors. *See generally* Supp. Slowik Decl. ¶¶ 3-11. In the entry for November 21, 2009, for example,
     Troester claims two hours of off-the-clock work based on a clock out time of 10:38 p.m., and an alarm
28   time of 12:38 a.m. *See* Setareh Decl., Ex. AA. But 12:38 a.m. was the alarm time for the previous
     day—the correct time was 10:39 p.m., or one minute after Troester clocked out. *See* Long Decl., Ex. I.

1    week back then equaled more than an hour of work at the minimum wage. *See* 204 F.2d

2    88, 95 (2d Cir. 1953); 29 U.S.C. § 206(a)(1) (1952); U.S. Dep't of Labor, History of

3    Federal Minimum Wage Rates, *available at* http://www.dol.gov/whd/minwage/chart.htm.

4           In arguing that one minute per closing shift is not *de minimis*, Troester next tries

5    to bootstrap the claims of absent class members, speculating that Starbucks underpaid

6    its California employees by more than $500,000 per year. Opp. at 18 n.8. Even if this

7    figure were not an improper extrapolation from an already inflated estimate, it would

8    have no relevance. Thus, even in class actions, courts in this Circuit uniformly consider

9    only the named plaintiff's time in deciding whether the *de minimis* defense bars his or

10   her claim. *See Busk*, 713 F.3d at 532-33; *Gillings*, 2012 WL 1656937, at *4-5; *Waine-*

11   *Golston*, 2013 WL 1285535, at *6; *Cervantez*, 618 F. Supp. 2d at 1217; *Green*, 2013 WL

12   3907506, at *7; *see also Espinoza*, 490 F.R.D. at 507 (decertifying collective action

13   because *de minimis* defense raised individualized issues, where "different deputies spent

14   different amounts of time [maintaining] their uniforms"). This Court should do the

15   same.[3]

16          No matter how Troester tries to frame the alleged unpaid time still at issue, he

17   cannot (and does not) dispute that it amounts to a minute or two per closing shift.

18   Courts consistently hold that such fleeting moments are insignificant for purposes of the

19   *de minimis* doctrine.

20          Second, Starbucks showed that the time Troester allegedly spent off-the-clock

21   performing the store close process was administratively difficult to record because,

22   under his theory, the system *required* him to clock out first. Mot. at 8. In opposition,

23   Troester continues to allege that his store's "computer system *required* that Troester

24   clock out before initiating the close store procedure" until October 2010. Opp. at 2; *see*

25

26   _____

27          [3] Troester cites *Reich v. Monfort, Inc.*, 144 F.3d 1329 (10th Cir. 1998), an action by the
     Secretary of Labor, to suggest that the Court should aggregate the claims of the putative class in
     deciding his individual claim. To the extent that *Reich* suggests this approach, it is contrary to Ninth
28   Circuit law.

1 | *also id.* at 3 (arguing that, starting in October 2010, his store implemented a new system
2 | that "no longer *required* employees to clock out before initiating the store close
3 | procedure") (emphasis added); UF No. 16 (Troester contends that the computer system
4 | at his store required him to clock out before initiating the close store procedure).  Where
5 | an electronic timekeeping system cannot capture a few brief moments before clocking
6 | in or after clocking out, the *de minimis* doctrine is properly invoked.  *See Gillings*, 2012
7 | WL 1656937, at *5; *Waine-Golston*, 2013 WL 1285535, at *6.

8 | Unable to defend his original theory, Troester tries to adopt a new one.  Thus, he
9 | now argues that perhaps his store's system *could* record the time he spent on the close
10 | store procedure, but his managers simply trained him not to record it—apparently out of
11 | a sinister desire to avoid paying him for one additional minute.  *See* Opp. at 15 ("[O]ne
12 | may reasonably infer that Starbucks arbitrarily failed to count time as hours worked that
13 | it has always had the ability to record by training its employees not to capture it").  To
14 | support this new theory, Troester cites testimony from a Starbucks witness explaining
15 | that the STAR system was designed to allow employees to clock out *after* running the
16 | close store procedure.  *See* ASUF No. 24.  But this testimony sheds no light on whether
17 | the system *at Troester's store* functioned as designed, and Troester maintains that it did
18 | not.  *See* UF No. 16 (undisputed).  Because Troester's new theory contradicts his
19 | original theory, it should be ignored.  *See Matthews v. Xerox Corp.*, 319 F. Supp. 2d
20 | 1166, 1172 (S.D. Cal. 2004) (rejecting plaintiff's "attempt[] to change the fundamental
21 | theory upon which his . . . Complaint relies to avoid summary judgment").

22 | Troester next argues that Starbucks could have trained its employees to write the
23 | time spent on this task in the punch communication log, but instead, it trained them to
24 | use the log only for "missed punches." Opp. at 15; *see also* ASUF No. 8.  This
25 | argument is factually insupportable and irrelevant in any event.  The record evidence
26 | establishes that Troester understood he could use the log to record time spent working
27 | after clocking out, and that, in fact, he did so.  *See* UF No. 40.  Troester does not dispute
28 | this fact.  But regardless, his argument proves too much.  An employer always has the

8

DEFENDANT STARBUCKS CORPORATION'S REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

1  ability to ask an employee to write down time allegedly worked off the clock. If this

2  fact rendered it "administratively feasible" to record the allegedly unpaid time, the *de*

3  *minimis* defense would never apply. The Court may not construe the defense in a way

4  that would render it obsolete. *See Sundstrom v. McDonnell Douglas Corp.*, 816 F. Supp.

5  577, 584 (N.D. Cal. 1992) (court may not construe common law defense in a way that

6  "would entirely vitiate the . . . defense").

7       Troester is similarly mistaken in arguing that *Gillings* and *Waine-Golston*

8  incorrectly considered the "administrative difficulty" of recording the time at issue,

9  rather than whether the time was "ascertainable." The question is not whether it was

10  possible to ascertain the allegedly unpaid time, but rather whether the employer could

11  have recorded it without undue "administrative difficulty." *See Lindow*, 738 F.2d at

12  1062 ("The *de minimis* rule is concerned with the practical administrative difficulty of

13  recording small amounts of time for payroll purposes."). Troester's apparent suggestion

14  that Starbucks should have undertaken the burdensome task of obtaining alarm records

15  from its vendor and then manually comparing them to time records—as it did here, in a

16  litigation posture, for only one employee—cannot be squared with the law, which

17  recognizes the need for an "effective balance between the employer's dual concerns of

18  accurate pay and administrative efficiency." *Gillings*, 2012 WL 1656937, at *5.

19       Nor does *Sandifer v. U.S. Steel Corp.* suggest that "ascertainable" time must be

20  paid regardless of administrative difficulty. Opp. at 16. *Sandifer* simply did not disturb

21  the *Lindow* test, and in fact, is completely inapposite. The issue there was whether time

22  spent donning protective gear fell under the provision of the FLSA regarding "changing

23  clothes." *See Sandifer*, 134 S. Ct. 870, 876-79 (2014). The Court discussed the *de*

24  *minimis* doctrine only to opine that the doctrine probably should not be invoked in the

25  context of FLSA "donning and doffing," because those claims are separately addressed

26  by a different federal statute, 29 U.S.C. § 203(o). *Id.* at 880.

27       Third, Starbucks showed that courts routinely apply the *de minimis* doctrine

28  where, as here, the first two *Lindow* factors are satisfied, even if the alleged unpaid time

1   occurs every day. *See* Motion at 9 (collecting cases).  Troester ignores this authority in

2   noting that he "regularly" uploaded data to Starbucks headquarters after clocking out.

3   Opp. at 18.  He does not contend that this fact precludes application of the *de minimis*

4   defense where, as here, the time at issue is extremely brief and difficult to capture.

5          In short, Starbucks established that the *de minimis* doctrine bars Troester's claims

6   for unpaid wages, and Troester has no compelling argument to the contrary.  Therefore,

7   Starbucks is entitled to judgment on these claims.

8                    2.    <u>Most Of The Tasks Troester Allegedly Performed After Leaving The
               Store Are Not Compensable In Any Event.</u>

9

10         Starbucks demonstrated that, regardless of whether they were *de minimis*, most of

11  the tasks Troester allegedly performed after leaving the store are not compensable,

12  either because Troester performed them on his own time and of his own volition or

13  because Starbucks had no reason to know about them.  Troester does not meaningfully

14  dispute these points.  Rather, he contends that these defenses do not apply to his claims

15  based on running the store close program.  But Starbucks did not suggest otherwise.

16                    a)    <u>Letting Co-Workers Back In The Store And Waiting With Co-
               Workers For Rides Is Not Compensable "Work."</u>

17

18         Troester attempts to distract attention from Starbucks arguments about

19  compensable work by contending that the tasks of running the store close process and

20  walking co-workers to their cars are compensable.  Starbucks did not argue otherwise in

21  its motion.[4]  Rather, Starbucks argued that two *different* alleged tasks—letting co-

22  workers back in the store and waiting with co-workers for their rides—were not

23  compensable activities.  Troester did not respond to this argument at all.

24         Indeed, given his own testimony, he could not meaningfully dispute these points

25  if he had tried.  Troester concedes that nobody at Starbucks ever instructed him to let co-

26

27  _____

28  [4] Starbucks disputes that it required Troester to walk his co-workers to their cars, but it does not
    seek summary judgment on this basis.

1    workers back in the store after locking up or to wait with co-workers for their rides after
2    closing shifts.  *See* UF No. 33 ("Q: Did anybody at Starbucks ever instruct you to wait
3    with an employee who was being picked up?  A: I can't recall a specific time of
4    that[.]"); *see also* UF No. 34.  Because Troester chose to engage in these activities on
5    his own time, with no prompting from Starbucks at all, they are not compensable
6    "work."  *See, e.g., Overton v. Walt Disney Co.*, 136 Cal. App. 4th 263, 271 (2006); Mot.
7    at 10.

8           Troester's stray comment that Starbucks "written policies" required him to wait
9    with his co-workers cannot save his claim.  *See* Opp. at 7; UF Nos. 33, 34.  Troester
10   identifies no writing of any kind that mentions waiting with co-workers for rides.  The
11   training document he cites lists closing shift responsibilities, not one of which requires
12   him to "wait outside the store until everyone is picked up," or anything to that effect.
13   *See* Setareh Decl., Ex. T.  Troester may not avoid summary judgment by misstating the
14   record.

15                          b)      Troester Is Not Entitled To Pay For Tasks Unknown To
16                                  Starbucks.

17          Finally, as Starbucks established, it does not owe Troester any wages for time he
18   spent on activities entirely unknown to Starbucks and for which he chose not to seek
19   payment.  Troester again confuses Starbucks position by arguing that the Company had
20   knowledge that he was running the store close process after clocking out.  But again,
21   Starbucks did not contend otherwise.  Rather, it showed that it had no knowledge of
22   Troester performing *other* alleged tasks, namely, retrieving patio furniture, waiting with
23   co-workers for their rides, and letting co-workers back into the store.  Mot. at 11-13.
24   Troester does not dispute that Starbucks had no reason to know about *these* tasks.

25          Troester's attempt to distinguish *White v. Starbucks Corp.*, 497 F. Supp. 2d 1080
26   (N.D. Cal. 2007), and *Koike v. Starbucks Corp.*, No. 06-3215, 2008 WL 7796650 (N.D.
27   Cal. June 20, 2008), also rests on his misunderstanding of Starbucks argument.  He
28   notes that, in those cases, the plaintiffs "sought to recover wages for off-the-clock work

1    that was . . . unknown to everyone but the individual employee who was performing it."

2    Opp. at 8.  But the same is true here—Starbucks had no knowledge of the time Troester

3    spent retrieving patio furniture, waiting with co-workers for their rides, or letting co-

4    workers back into the store, because Troester ignored Starbucks procedures for

5    manually recording that time, and instead submitted time records that he apparently

6    believed to be inaccurate.  Like the plaintiffs in *White* and *Koike*, therefore, Troester is

7    not owed any wages for those activities.

8         For this reason as well, Starbucks is entitled to summary judgment on Troester's

9    claims to the extent that they are based on these particular alleged activities.

10        **B.    Troester's Wage Statement Claim Fails As A Matter Of Law.**

11        Troester confirms that his wage statement claim is derivative of his claims for

12   unpaid wages.  *See* Opp. at 20 ("Because of its alleged failures to pay for all time

13   worked, Starbucks failed to provide Plaintiff with accurate wage statements.").

14   Therefore, since those underlying claims fail, so too does the wage statement claim.

15        But to the extent this claim seeks statutory penalties, it is time-barred in any

16   event.  Troester does not dispute this point.  Mot. at 14.  Rather, he argues that the claim

17   survives because he seeks "actual damages," so a three-year limitations period applies.

18   Opp. at 19-20.  Starbucks disputes that Troester has suffered any loss that would entitle

19   him to "actual damages," but that issue is beyond the scope of this motion.  Since the

20   parties agree that Troester may not seek statutory penalties, his claim for penalties must

21   be dismissed.  *See First National*, 977 F. Supp. at 1055.

22        **C.    Troester's Late Final Pay Claim Fails As A Matter Of Law.**

23        Troester confirms that his final pay claim is derivative of his underlying wage

24   claims.  *See* Opp. at 23 ("[B]ecause Starbucks did not pay Plaintiff for the time at issue

25   before he was discharged, . . . Starbucks willfully failed to timely pay him earned wages

26   in violation of California Labor Code section 201").  If his wage claims fail, therefore,

27   so does his claim for final pay penalties.

28

1   But, as Starbucks demonstrated, this claim fails regardless. Troester could not

2   possibly prove that Starbucks "willfully" failed to pay his final wages, as he must,

3   because the Company has a "good faith defense" to his wage claims, at the very least.

4   *See* Cal. Code Regs., tit. 8, § 13520(a); *see also* Motion at 15-16 (collecting cases).

5   Troester acknowledges that such defenses preclude recovery of final pay penalties,

6   "even if unsuccessful." Opp. at 23. Starbucks defenses here clearly qualify. For

7   example, given the substantial authority applying the *de minimis* defense to California

8   law claims, including in cases involving much more allegedly unpaid time than is at

9   issue here, Starbucks *de minimis* defense is certainly not unreasonable. *See supra* at 3-

10  8. This fact, alone, is sufficient to defeat a claim for final pay penalties. *See Alonzo v.*

11  *Maximus, Inc.*, 832 F. Supp. 2d 1122, 1133 (C.D. Cal. 2011) (no section 203 penalties

12  because, "[t]hough Defendant's arguments did not ultimately carry the day under the

13  law as found by this Court," they "were not unreasonable[]"). Indeed, proof positive

14  that Starbucks has presented a reasonable defense is the fact that Troester's response

15  hinges on his strategy of backing away from his original theory—that the computer

16  system *required* him to clock out first.

17  Finally, Troester's speculation that Starbucks might be asserting its defenses in

18  "bad faith" is totally baseless and cannot defeat summary judgment. "Bad faith"

19  requires intentional misconduct. Even a "cavalier approach to fulfilling . . . statutory

20  obligations" that amounts to "gross negligence or recklessness" does not rise to the level

21  of "bad faith." *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1203 (2008).

22  Further, to survive summary judgment, the plaintiff must be able to present *evidence* of

23  bad faith. *See Worman v. MetLife Grp., Inc.* No. CIV. S-06-2870, 2008 WL 223721, at

24  *6 (E.D. Cal. Jan. 28, 2008). Such evidence will typically show that the employer's

25  legal obligation was obvious and known to it and that the employer simply ignored it.

26  *See Gonzalez v. Downtown LA Motors, LP*, 215 Cal. App. 4th 36, 55 (2013) (evidence

27  showed that employer was aware of obligation to pay piece-rate workers for

28  unproductive time but failed to do so in violation of its own policies).

13

DEFENDANT STARBUCKS CORPORATION'S REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

1    Troester has pointed to no evidence that even hints of "bad faith."  He offers no

2  explanation for why Starbucks would scheme to deprive him of one minute of pay on

3  closing shifts, or roughly 13 cents.  Citing declarations from five employees, he boldly

4  claims that "widespread evidence" shows that Starbucks trained its employees to clock

5  out before running the store close process.  *See* Opp. at 24; ASUF No. 19.  But the

6  statements of five employees are not "widespread evidence" of anything.  *See* ASUF

7  No. 10.  The record establishes that, in fact, Starbucks policy was that employees should

8  clock out *after* running the store close process.  *See* UF Nos. 53-54.  The fact that a few

9  individuals report an experience contrary to the Company's policies cannot support a

10  claim that Starbucks acted in bad faith with respect to Troester.  His claims of bad faith

11  are pure speculation and should not distract from the clear conclusion that Starbucks, at

12  a minimum, has presented a good faith defense to liability here.

13    In short, at the very least, Starbucks has presented good faith defenses to

14  Troester's claims for unpaid wages.  These defenses find ample support in both the law

15  and the factual record.  Therefore, regardless of whether Troester's underlying wage

16  claims survive this motion, his claim for final pay penalties must be dismissed.

17    **D.     Troester's Unfair Competition Claim Fails As A Matter Of Law.**

18    Troester does not dispute, and therefore concedes, that his unfair competition

19  claim is derivative of the underlying off-the-clock claims.  *See* Opp. at 24.  Therefore, if

20  the underlying wage claims fail, this claim must be dismissed as well.

21  **III.   CONCLUSION**

22    For all the foregoing reasons, Starbucks respectfully requests that its motion for

23  summary judgment be granted.

24  Dated:  February 24, 2014                    AKIN GUMP STRAUSS HAUER & FELD LLP

25

26                                           By_____/s/ *Gregory W. Knopp*_____
                                                       Gregory W. Knopp
27                                                    Attorneys for Defendant
                                                    Starbucks Corporation
28

14

DEFENDANT STARBUCKS CORPORATION'S REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION