1 | **AKIN GUMP STRAUSS HAUER & FELD LLP**
GREGORY W. KNOPP (SBN 237615)
2 | MARK R. CURIEL (SBN 222749)
JONATHAN P. SLOWIK (SBN 287635)
3 | gknopp@akingump.com
mcuriel@akingump.com
4 | jpslowik@akingump.com
2029 Century Park East, Suite 2400
5 | Los Angeles, CA 90067
Telephone:  310-229-1000
6 | Facsimile:   310-229-1001

7 | Attorneys for Defendant Starbucks Corporation

8

9

10 | UNITED STATES DISTRICT COURT

11 | CENTRAL DISTRICT OF CALIFORNIA

12

13 | DOUGLAS TROESTER, on behalf of himself, and all others similarly situated,

14

15 | Plaintiffs,

16 | v.

17 | STARBUCKS CORPORATION, a Washington corporation; and DOES 1-50, inclusive,

18

19 | Defendants.

Case No. 2:12-cv-07677-GAF-PJW

**DEFENDANT STARBUCKS CORPORATION'S REPLY SEPARATE STATEMENT OF UNDISPUTED FACTS, AND RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS, IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

[Reply Memorandum, Evidentiary Objections, Responses to Evidentiary Objections, and Supplemental Declaration of Jonathan P. Slowik filed concurrently]

Date:      March 10, 2014
Time:      9:30 a.m.
Crtrm:     740

Judge:      Hon. Gary A. Feess

Date Action Filed: August 6, 2012

20

21

22

23

24

25

26

27

28

---

DEFENDANT'S REPLY SEPARATE STATEMENT RE MOTION FOR SUMMARY JUDGMENT

105999598

# REPLY SEPARATE STATEMENT OF UNDISPUTED FACTS

| ¶ No. | MOVING PARTY'S UNDISPUTED FACT | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 1. | Plaintiff Douglas Troester worked in a Starbucks store on Hollywood Way in California from February 2008 until January 2011.<br><br>Declaration of Gregory W. Knopp ("Knopp. Decl.") ¶ 2, Ex. A (Deposition Transcript of Douglas Troester dated March 6, 2013 ("Troester Tr.") at 16:14-20, 52:5-24. | **Undisputed** |
| 2. | Troester initially worked as a "barista," an entry-level coffee-server, and became a "shift supervisor" in June 2008.<br><br>Knopp Decl. ¶ 2, Ex. A (Troester Tr. At 52:5-7, 52:25-53:4). | **Undisputed** |
| 3. | While employed by Starbucks, Troester understood that the Company's policy was "time worked equals time paid."<br><br>Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 100:16-101:2). | **Evidentiary Objections**<br><br>Prejudicial and confusing (FRE 403), improper evidence to prove the content of a writings(s), inadmissible hearsay (FRE 802), not based on personal knowledge (FRE 602), and improper lay opinion testimony (FRE 701).<br><br>**Disputed**<br><br>Declaration of Shaun Setareh in Support of Opposition to Defendant Starbucks Corporation's Motion for Summary Judgment by Plaintiff Douglas Troester ("Setareh Decl."), Ex. A (Troester Depo. 100:16–102:6). |

| ¶ No. | MOVING PARTY'S UNDISPUTED FACT | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | **Starbucks Response:** Troester testified that he was aware that the Partner Guide contained the policy "time worked equals time paid," which meant that "anything that you're doing for the company should be paid for[, a]nd you need to follow the procedures and routines to ensure that you're paid for that time." Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 100:16-101:2). Thus, Troester does not place this fact in dispute. *See also* Starbucks Resp. to Evid. Objs. |
| 4. | While employed by Starbucks, Troester understood that Starbucks strictly prohibited "off-the-clock" work. Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 100:3-15). | **Evidentiary Objections** Prejudicial and confusing (FRE 403), improper evidence to prove the content of a writings(s), inadmissible hearsay (FRE 802), not based on personal knowledge (FRE 602), and improper lay opinion testimony (FRE 701). **Disputed** Setareh Decl., Ex. A (Troester Depo. 101:12–14) ("Q.  Did you also understand that the company strictly prohibited off-the-clock work?  A.  No, I did not."). *See also id.* at 100:3–103:1. **Starbucks Response** In the testimony Troester cites, at most, he opines that Starbucks had policies that allegedly made it difficult not to work off the clock.  But he also confirms twice that he understood that the company prohibited off-the-clock work. *See* Setareh Decl., Ex. A (Troester Depo. at 100:13-15) ("Q: What is |

2

DEFENDANT'S REPLY SEPARATE STATEMENT RE MOTION FOR SUMMARY JUDGMENT

| ¶ No. | MOVING PARTY'S UNDISPUTED FACT | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | your understanding of the policy [regarding off-the-clock work]? A: As it says in the Partner Guide, there should no[t] be—not be any off-the-clock work."); *see also id.* at 101:21-102:2 ("Q: The second sentence states, 'It is against Starbucks' policy for any nonexempt partner [to] work off the clock or without having punched in or otherwise recording the time as timed worked.' Did you understand that that was the company's policy? A: That is one of the policies[.]"). Therefore, the testimony Troester cites does not place this fact in dispute. *See also* Starbucks Resp. to Evid. Objs. |
| 5. | While employed by Starbucks, Troester understood that one of his job responsibilities was to accurately record his work time using the point-of-sale ("POS") system so that Starbucks could pay him for all his time worked.<br><br>Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 86:9-19) | **Evidentiary Objections**<br><br>Prejudicial and confusing (FRE 403), improper evidence to prove the content of a writing(s), inadmissible hearsay (FRE 802), not based on personal knowledge (FRE 602), and improper lay opinion testimony (FRE 701).<br><br>**Disputed**<br><br>Setareh Decl., Ex. A, (Troester Depo. 86:9–22; 100:3–103:1; 168:11–169:7.)<br><br>**Starbucks Response:** Troester fails to put this fact in dispute. In the testimony cited by Starbucks, Troester unequivocally stated that he was required to accurately record his time to ensure proper payment. *See also* Starbucks Resp. to Evid. Objs. |

DEFENDANT'S REPLY SEPARATE STATEMENT RE MOTION FOR SUMMARY JUDGMENT

| ¶ No. | MOVING PARTY'S UNDISPUTED FACT | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 6. | Troester admits that Starbucks always paid him for all the time he recorded in the POS system.<br><br>Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 86:23-87:4). | **<u>Undisputed</u>** |
| 7. | Troester understood that, in the event that he performed any work while not "on-the-clock," he was responsible for recording his time in a book called the "punch communication log," so that Starbucks could ensure payment for that time.<br><br>Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 87:12-25). | **<u>Evidentiary Objections</u>**<br><br>Prejudicial and confusing (FRE 403), improper evidence to prove the content of a writings(s), inadmissible hearsay (FRE 802), not based on personal knowledge (FRE 602), and improper lay opinion testimony (FRE 701).<br><br>**<u>Disputed</u>**<br><br>Setareh Decl., Ex. A, (Troester Depo. 87:12–88:18; 96:4–97:4; 157:21–158:25)<br><br>**<u>Starbucks Response:</u>**  Troester fails to put this fact in dispute.  Troester's use of the punch communication log demonstrates that he understood to use the log for worked performed while not clocked in.  *See* UF Nos. 8, 40, 41; *see also* Starbucks Resp. to Evid. Objs. |

4

| ¶ No. | MOVING PARTY'S UNDISPUTED FACT | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 8. | Troester used the punch communication log to capture time he spent on tasks such as running errands for the store before clocking in, assisting a customer in the store lobby while not clocked in, and talking to the store manager about "official business" while not clocked in.<br><br>Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 89:9-95:12). *See also* Cerna Decl. ¶ 6, Ex. C; *id.* ¶ 8, Ex. E. | **Undisputed** |
| 9. | Troester admits that Starbucks always paid him for the time he recorded in the punch communication log.<br><br>Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 88:20-25). | **Undisputed** |
| 10. | Troester contends that he worked off-the-clock on certain shifts when he was a shift supervisor.<br><br>Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 121:11-122:4, 131:2-13, 153:24-154:3). | **Undisputed** |

DEFENDANT'S REPLY SEPARATE STATEMENT RE MOTION FOR SUMMARY JUDGMENT

| ¶ No. | MOVING PARTY'S UNDISPUTED FACT | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 11. | Troester claims that he performed unpaid work during shifts at the end of the business day—"closing" shifts—but not when he worked shifts in the morning or the afternoon.<br><br>Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 106:17-24, 108:25-109:3) ("Q: The claims you assert in this lawsuit are based on alleged unpaid time worked exclusively on closing shifts, correct? A: That's correct."). | **Undisputed** |
| 12. | Even on closing shifts, Troester acknowledges that Starbucks paid him for all the work he performed while the store was open to customers and right up until the very end of his shift.<br><br>Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 109:4-7, 141:8-11). | **Undisputed** |
| 13. | According to Troester, at the very end of a closing shift, he was responsible for using the store computer to transmit sales data to Starbucks headquarters, a process called the "close store procedure."<br><br>Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 131:2-13). | **Undisputed** |
| 14. | The close store procedure consisted of selecting "close | **Evidentiary Objections** |

| ¶ No. | MOVING PARTY'S UNDISPUTED FACT | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | store" with the computer's mouse or keyboard, entering a password, and then pressing the "Y" key.<br><br>Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 131:14-132:20). | Prejudicial and confusing (FRE 403), improper evidence to prove the content of a writing(s), inadmissible hearsay (FRE 802), and improper lay opinion testimony (FRE 701).<br><br>**Disputed**<br><br>Setareh Decl., Ex. A, (Troester Depo. 135:3–21) (Q.  Now, the store-close procedure is something that -- it's a procedure that the computer runs, right? A.  No.  If you talk to any Starbucks employee when they talk about store-closing procedures, it would be the whole litany that you saw in that one color-graphic book.)<br><br>Setareh Decl., Ex. Q (2006 Store Operations Manual, Close Store Procedure) at STAR_TROESTER_000418.<br><br>Setareh Decl., Ex. T (2009 Shift Supervisor Training, Opening and Closing Responsibilities) at STAR_TROESTER_000922–000923.<br><br>Setareh Decl., Ex. Z, Complaint ¶ 10 ("The phrase "**store closing procedure**" refers to the policy or practice of Defendants requiring employees who are responsible for closing a retail stores to do the following 1) clock out and cease earning any wages 2) go to the back of the store to upload certain data to servers located offsite 3) set the alarm and then exit the property and lock the door, and escort other employees from the premises after clocking out from work."). |

DEFENDANT'S REPLY SEPARATE STATEMENT RE MOTION FOR SUMMARY JUDGMENT

| ¶ No. | MOVING PARTY'S UNDISPUTED FACT | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | **Starbucks Response:**  The process of uploading data to Starbucks headquarters, known as the "Close Store Procedure," *see* Setareh Decl. Ex. Q, consisted of selecting "close store" with the computer's mouse or keyboard, entering a password, and then pressing the "Y" key.  Troester's response does not place this fact in dispute. *See also* Starbucks Resp. to Evid. Objs. |
| 15. | Immediately after running the close store procedure, Troester set the store alarm by typing a numeric code on the alarm panel located near the computer.  Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 122:5-19). | **Undisputed** |
| 16. | Troester contends that, starting around the summer of 2009, the computer system required that he clock out before initiating the close store procedure because the POS registers automatically rebooted.  Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 167:23-169:2, 172:18-22). | **Undisputed** |

DEFENDANT'S REPLY SEPARATE STATEMENT RE MOTION FOR SUMMARY JUDGMENT

| ¶ No. | MOVING PARTY'S UNDISPUTED FACT | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 17. | Troester claims that the store close procedure typically lasted "one minute to two minutes" before he activated the alarm.<br><br>Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 183:9-11) ("Q: So your testimony is that you activated the alarm one to two minutes after you clocked out? A: The majority of the time, yes."). | **Undisputed** |
| 18. | Troester was assigned "User #6" on the store's alarm system.<br><br>Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 124:7-9). | **Undisputed** |
| 19. | A comparison of the store's alarm records to Troester's time records confirms that, on average, Troester activated the alarm within one minute of clocking out.<br><br>Declaration of Jonathan Slowik ("Slowik Decl.") ¶ 4; Rutt Decl. ¶ 3, Ex. G; Declaration of Joshua Long ("Long Decl.") ¶ 4, Ex. I. | **Undisputed** |

DEFENDANT'S REPLY SEPARATE STATEMENT RE MOTION FOR SUMMARY JUDGMENT

| ¶ No. | MOVING PARTY'S UNDISPUTED FACT | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 20. | A comparison of the store's alarm records to Troester's time records shows that Troester activated the alarm within two minutes of clocking out on more than 90 percent of his shifts.<br><br>Slowik Decl. ¶ 4, Rutt Decl. ¶ 3, Ex. G; Long Decl. ¶ 4, Ex. I. | **Undisputed** |
| 21. | Troester testified that he has no reason to doubt the accuracy of his time punch records and the store's alarm records.<br><br>Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 177:18-182:22). | **Undisputed** |
| 22. | The store's alarm system required that the employees leave the store within 60 seconds of setting the alarm.<br><br>Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 123:3-5). | **Undisputed** |
| 23. | After activating the alarm, Troester exited and locked the front door.<br><br>Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 148:7-13, 151:19-152:6). | **Undisputed** |

DEFENDANT'S REPLY SEPARATE STATEMENT RE MOTION FOR SUMMARY JUDGMENT

| ¶ No. | MOVING PARTY'S UNDISPUTED FACT | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 24. | Troester estimates that it took 30 seconds to walk out of the store after activating the alarm.<br><br>Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 150:14-20). | **Undisputed** |
| 25. | Troester estimates that it took 15 seconds to "a couple minutes" to lock the door.<br><br>Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 152:7-19). | **Undisputed** |
| 26. | Troester claims that after locking the door, he walked his co-workers to their cars.<br><br>Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 148:7-13, 152:20-153:23). | **Undisputed** |
| 27. | Troester claims that walking his co-workers to their cars took 35-45 seconds.<br><br>Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 153:13-23). | **Undisputed** |
| 28. | Troester contends that he should be paid for all the time he spent running the close store procedure, setting the alarm, walking out of the store, locking the door, and walking co-workers to their cars.<br><br>Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 157:8-14). | **Undisputed** |

DEFENDANT'S REPLY SEPARATE STATEMENT RE MOTION FOR SUMMARY JUDGMENT

| ¶ No. | MOVING PARTY'S UNDISPUTED FACT | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 29. | Troester claims that every "couple of months," after clocking out and exiting the store, he brought the store's patio furniture inside the store after he and the other employees forgot to do so while still on-the-clock.<br><br>Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 157:8-14). | **Undisputed** |
| 30. | Troester claims that every "couple of months," after clocking out and exiting the store, he opened the door so that another employee could retrieve a coat that he or she had left behind.<br><br>Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 149:15-22, 159:1-7) ("Occasionally, the partner [coworker] would say, 'Oh, I forgot a coat or jacket or personal piece of property. Can we go back inside and – and retrieve that, please?'"). | **Undisputed** |
| 31. | Troester claims that two or three times a month, after clocking out and exiting the store, he stayed outside the store with a co-worker who was waiting for a ride.<br><br>Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 148:7-13, 148:14-149:2, 159:19-25). | **Undisputed** |

DEFENDANT'S REPLY SEPARATE STATEMENT RE MOTION FOR SUMMARY JUDGMENT

| ¶ No. | MOVING PARTY'S UNDISPUTED FACT | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 32. | Besides the time he spent running the store close procedure, setting the alarm, walking out of the store, locking the door, walking employees to their cars, bringing in patio furniture, letting employees inside to retrieve coats, and waiting with co-workers for rides, Troester does not claim that he ever performed any other unpaid work.<br><br>Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 177:4-9) ("Q: I want to make sure today's record is complete. So besides everything you've testified to already, do you claim that you performed any other work for which Starbucks didn't pay you on closing shifts? A: No."). | **Undisputed** |
| 33. | Troester cannot recall any Starbucks manager ever instructing or asking him to wait with co-workers outside the store for their rides.<br><br>Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 155:21-156:3). | **Evidentiary Objections**<br><br>Irrelevant (FRE 401-402), prejudicial and confusing (FRE 403), improper evidence to prove the content of a writings(s), and inadmissible hearsay (FRE 802).<br><br>**Disputed**<br><br>Setareh Decl., Ex. T (2009 Shift Supervisor Training, Opening and Closing Responsibilities) at STAR_TROESTER_000922–000923.<br><br>**Starbucks Response:** The document Troester cites says nothing about waiting |

| ¶ No. | MOVING PARTY'S UNDISPUTED FACT | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | with co-workers for rides, or about whether Troester remembers being instructed to do so. Therefore, Troester's response does not place this fact in dispute. *See also* Starbucks Resp. to Evid. Objs. |
| 34. | Troester's managers never asked him to wait with co-workers outside the store for their rides. Declaration of Cecelia Cerna ("Cerna Decl.") ¶ 4; Declaration of Michelle Westby ("Westby Decl.") ¶ 6. | **Evidentiary Objections** Irrelevant (FRE 401-402), prejudicial and confusing (FRE 403), improper evidence to prove the content of a writings(s), inadmissible hearsay (FRE 802), and not based on personal knowledge (FRE 602). **Disputed** Setareh Decl., Ex. T (2009 Shift Supervisor Training, Opening and Closing Responsibilities) at STAR_TROESTER_000922–000923. **Starbucks Response:** The document Troester cites says nothing about waiting with co-workers for rides, or about whether Troester remembers being instructed to do so. Therefore, Troester's response does not place this fact in dispute. *See also* Starbucks Resp. to Evid. Objs. |
| 35. | Troester believed that as "a large strong male," he should help his "young female" co-workers. Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 154:12-17). | **Evidentiary Objections** Irrelevant (FRE 401-402), prejudicial and confusing (FRE 403), improper evidence to prove the content of a writings(s), and inadmissible hearsay (FRE 802). **Starbucks Response:** Troester's response does not place this fact in dispute. *See also* Starbucks Resp. to Evid. Objs. |

| ¶ No. | MOVING PARTY'S UNDISPUTED FACT | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 36. | When Troester's co-workers walked home after the closing shift, Troester chose to walk them "to the end of the parking lot." Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 156:12-21). | **Undisputed** |
| 37. | While employed by Starbucks, Troester believed that he was entitled to be paid for the off-the-clock work he alleges. Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 36:14-37:5). | **Undisputed.** |
| 38. | Troester never made any effort to seek payment for the off-the-clock work he alleges while employed by Starbucks. Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 167:15-22, 175:3-7, 187:3-15). | **Undisputed.** |
| 39. | Troester never used the punch communication log to document any work he allegedly performed after clocking out at the end of a closing shift. Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 157:24-158:5, 167:15-22). | **Undisputed.** |

DEFENDANT'S REPLY SEPARATE STATEMENT RE MOTION FOR SUMMARY JUDGMENT

| ¶ No. | MOVING PARTY'S UNDISPUTED FACT | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 40. | Troester used the punch communication log multiple times to record time spent on tasks performed after clocking out, such as picking up product for the store.<br><br>Cerna Decl. ¶ 6, Ex. C; *id.* ¶ 8, Ex. E. | **Undisputed.** |
| 41. | Troester used the punch communication log multiple times to correct wrong time punches.<br><br>Cerna Decl. ¶ 5, Ex. B; *id.* ¶ 7, Ex. D; Westby Decl. ¶ 7, Ex. F. | **Undisputed.** |
| 42. | Troester did not raise any concerns with his supervisor (the store manager), the store manager's boss (the district manager), or Starbucks human resources department ("partner resources") about the off-the-clock work he alleges.<br><br>Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 83:9-84:9); Cerna Decl. ¶¶ 3-4; Westby Decl. ¶¶ 4-5. | **Undisputed.** |

16

DEFENDANT'S REPLY SEPARATE STATEMENT RE MOTION FOR SUMMARY JUDGMENT

| ¶ No. | MOVING PARTY'S UNDISPUTED FACT | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 43. | Troester never called Starbucks telephone "hotline," which he knew was available for "virtually any kind of HR function dealing with if you didn't get pay . . . or anything of that," to report the off-the-clock work he alleges.<br><br>Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 84:20-85:4). | **Undisputed.** |
| 44. | Troester called the helpline "many times" for reasons unrelated to the off-the-clock work he alleges.<br><br>Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 85:5-7). | **Undisputed.** |
| 45. | Troester called the helpline to complain about his pay when he worked in a Nevada store.<br><br>Declaration of Jana Rutt ("Rutt Decl.") ¶ 5, Ex. H. | **Undisputed.** |
| 46. | Every time Troester called the helpline, Starbucks addressed his concerns to his satisfaction.<br><br>Knopp Decl. ¶ 2, Ex. A (Troester Tr. at 85:8-10). | **Undisputed.** |

DEFENDANT'S REPLY SEPARATE STATEMENT RE MOTION FOR SUMMARY JUDGMENT

| ¶ No. | MOVING PARTY'S UNDISPUTED FACT | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 47. | Troester claims that his wage statements were inaccurate solely because they did not reflect the wages he seeks for his alleged off-the-clock work.<br><br>Complaint, Dkt. No. 1-1 ("Compl.") ¶ 47 (Starbucks "failed to provide Plaintiff with accurate written wage statements . . . as a result of not recording all of this hours worked and not paying him earned minimum and overtime wages."); Knopp Decl. ¶ 2, Ex. A (Troester Tr. 193:6-11) ("Q: My understanding of your claim is that the pay statements are inaccurate because they didn't reflect the pay you earned, but never received? A: I think that's a fair statement. Q: I got it right? A: Yes."). | **Evidentiary Objections**<br><br>Prejudicial and confusing (FRE 403), improper evidence to prove the content of a writings(s), inadmissible hearsay (FRE 802), and improper lay opinion testimony (FRE 701).<br><br>**Disputed**<br><br>Plaintiff's written wage statements also did not reflect the time he spent performing store close procedures after clocking out from work. *See* Setareh Decl., Ex. A (Troester Depo. 192:6-193:4).<br><br>**Starbucks Response:** Troester's response simply confirms that Troester claims that his wage statements were inaccurate solely because of the off-the-clock work he alleges. Thus, the response does not place this fact in dispute. *See also* Starbucks Resp. to Evid. Objs. |
| 48. | Troester received his final wage statement on January 6, 2011.<br><br>Knopp Decl. ¶ 2, Ex. A (Troester Tr. At 72:4-12). | **Undisputed** |
| 49. | Troester did not file his complaint until August 6, 2012.<br><br>Compl., Dkt. No. 1-1. | **Undisputed** |

DEFENDANT'S REPLY SEPARATE STATEMENT RE MOTION FOR SUMMARY JUDGMENT

| ¶ No. | MOVING PARTY'S UNDISPUTED FACT | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 50. | At the meeting during which Starbucks terminated Troester's employment, the Company gave him a check for all his final wages, except those allegedly owed for his off-the-clock work.<br><br>Knopp Decl. ¶ 2, Ex. A (Troester Tr. 71:21-72:12). | **Undisputed** |
| 51. | Troester's Unfair Competition Law claim is based on his claim that Starbucks violated the California Labor Code by failing to pay for work performed off-the-clock.<br><br>Compl. ¶ 65 ("Through their alleged violations of the Labor Code and the Wage Order, [Starbucks] ha[s] engaged in . . . unfair competition under Business and Professions Code §§ 17200, *et seq.*"). | **Undisputed** |
| 52. | A comparison of the store's alarm records to Troester's time records confirms that, on average, Troester activated the alarm within five minutes of clocking out on every shift.<br><br>Declaration of Jonathan Slowik ("Slowik Decl.") ¶ 4; Rutt Decl. ¶ 3, Ex. G; Long Decl. ¶ 4, Ex. I. | **Undisputed**<br><br>**Starbucks Response:** Starbucks clarifies that it erroneously inserted the phrase "on average" for this fact. Five minutes was the *longest* time differential, but the *average* time differential was only one minute as stated in UF No. 19. |

19

DEFENDANT'S REPLY SEPARATE STATEMENT RE MOTION FOR SUMMARY JUDGMENT

## STARBUCKS ADDITIONAL UNDISPUTED FACTS

| ¶ No. | Starbucks Additional Undisputed Fact | Supporting Evidence |
|---|---|---|
| 53. | Under the STAR system, Starbucks policy was that employees should clock out after running the store close process. | Setareh Decl. Ex. Q. |
| 54. | Starbucks trained its employees to clock out after running the store close process. | Supp. Slowik Decl. ¶ 12, Ex. A (O'Leary Tr. at 55:6-14 ("[W]e are trained specifically to run store close *and then* clock out[.]"); Setareh Decl. Ex. F (O'Leary Tr. at 46:18-22); Setareh Decl. Ex. Q. |

## TROESTER'S ADDITIONAL SEPARATE STATEMENT OF UNDISPUTED FACTS, AND STARBUCKS RESPONSE THERETO

| ¶ No. | OPPOSING PARTY'S UNDISPUTED FACT | MOVING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 1. | Plaintiff Douglas Troester worked as a shift supervisor for Starbucks from June of 2008 until the end of his employment in January of 2011.<br><br>Declaration of Shaun Setareh in Support of Opposition to Defendant Starbucks Corporation's Motion for Summary Judgment by Plaintiff Douglas Troester ("Setareh Decl."), Ex. A (Troester Depo. 52:25–53:7). | **Undisputed.** |
| 2. | Troester worked at multiple Starbucks locations during his employment, including Hollywood Way, Enterprise Landing, and the store at Lankershim and Magnolia.<br><br>Setareh Decl., Ex. A (Troester Depo. 52:14–24; 72:25–74:17). | **Undisputed** that Troester worked shifts at those stores. |
| 3. | Starbucks employees frequently work at other Starbucks locations.<br><br>Setareh Decl., Ex. BB (Declaration of Blake Barnett ("Barnett Decl."), ¶ 3 (worked at Starbucks locations in Corona Del Mar, Paso Robles, and Atascadero)).<br><br>Setareh Decl., Ex. CC | **Undisputed** that the five employee declarants have worked shifts at multiple Starbucks stores.<br><br>**Evidentiary Objections**<br><br>Irrelevant (Fed. R. Evid. 401, 402). |

| ¶ No. | OPPOSING PARTY'S UNDISPUTED FACT | MOVING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | (Declaration of Hythem Ali in Support of Plaintiff Douglas Troester's Opposition to Defendant Starbucks Corporation's Motion for Summary Judgment ("Ali Decl."), ¶ 3 (worked at Starbucks locations in Westminster, Fountain Valley, Tustin, Santa Ana, and Stanton)). | |
| | Setareh Decl., Ex. DD (Declaration of Amanda Barb in Support of Plaintiff Douglas Troester's Opposition to Defendant Starbucks Corporation's Motion for Summary Judgment ("Barb Decl."), ¶ 3 (worked at Starbucks locations in Placerville and Eldorado Hills)). | |
| | Setareh Decl., Ex. EE (Declaration of Shanelle Ashby in Support of Plaintiff Douglas Troester's Opposition to Defendant Starbucks Corporation's Motion for Summary Judgment ("Ashby Decl."), ¶ 3 (worked at Starbucks locations in Brea, Fullerton, and Santa Barbara)). | |
| | Setareh Decl., Ex. FF (Declaration of Elizabeth Armington ("Armington Decl."), ¶ 3 (worked at | |

| ¶ No. | OPPOSING PARTY'S UNDISPUTED FACT | MOVING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Starbucks locations in Costa Mesa and Newport Beach)). | |
| 4. | Starbucks pays its employees to the minute for all time worked.<br><br>Setareh Decl., Ex. E, (Rutt Depo. 36:4–22)<br><br>Setareh Decl., Ex. N (Troster Payroll Summary) at STAR_TROESTER_000176.<br><br>Setareh Decl., Ex. BB (Barnett Decl., ¶ 3).<br><br>Setareh Decl., Ex. CC (Ali Decl., ¶ 3).<br><br>Setareh Decl., Ex. DD (Barb Decl., ¶ 3).<br><br>Setareh Decl., Ex. EE (Ashby Decl., ¶ 3).<br><br>Setareh Decl., Ex. FF (Armington Decl., ¶ 3). | **Undisputed.** |

DEFENDANT'S REPLY SEPARATE STATEMENT RE MOTION FOR SUMMARY JUDGMENT

| ¶ No. | OPPOSING PARTY'S UNDISPUTED FACT | MOVING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 5. | Starbucks employees clock in and out through the Point of Sale ("POS") System.<br><br>Setareh Decl., Ex. A (Troester Depo. 86:9–22).<br>1.<br>Setareh Decl., Ex. BB (Barnett Decl., ¶ 6).<br><br>Setareh Decl., Ex. CC (Ali Decl., ¶ 6).<br><br>Setareh Decl., Ex. DD (Barb Decl., ¶ 6).<br><br>Setareh Decl., Ex. EE (Ashby Decl., ¶ 6).<br><br>Setareh Decl., Ex. FF (Armington Decl., ¶ 6). | Undisputed. |
| 6. | Starbucks trains its employees through both in person training and written materials.<br><br>Setareh Decl., Ex. A (Troester Depo. 33:15–19; 81:12–83:5; 171:19–173:7).<br> 2.<br>Setareh Decl., Ex. P (2008 Shift Supervisor 100 Level Training, Opening and Closing Responsibilities) at STAR_TROESTER_000351–370.<br><br>Setareh Decl., Ex. BB (Barnett Decl., ¶ 5). | Undisputed. |

| ¶ No. | OPPOSING PARTY'S UNDISPUTED FACT | MOVING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Setareh Decl., Ex. CC (Ali Decl., ¶ 5). | |
| | Setareh Decl., Ex. DD (Barb Decl., ¶ 5). | |
| | Setareh Decl., Ex. EE (Ashby Decl., ¶ 5). | |
| | Setareh Decl., Ex. FF (Armington Decl., ¶ 5). | |
| 7. | Starbucks policy is "Time Worked Equals Time Paid." Setareh Decl., Ex. A (Troester Depo. 100:16–101:2). Setareh Decl., Ex. E (Rutt Depo. 36:4–22) Setareh Decl., Exh. W (2006 U.S. Partner Resources Manual) at STAR_TROESTER_001874–1876. | Undisputed. |

DEFENDANT'S REPLY SEPARATE STATEMENT RE MOTION FOR SUMMARY JUDGMENT

| ¶ No. | OPPOSING PARTY'S UNDISPUTED FACT | MOVING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 8. | The Punch Communication Log is used to record missed punches.<br><br>3.      Setareh Decl., Ex. A (Troester Depo. 87:12–88:18; 157:24–158:25).<br><br>Setareh Decl., Ex. S (Punch Communication Log) at STAR_TROESTER_000512. ("Use this log to indicate missed punches that require management approval to ensure that all partners are paid accurately for all hours worked. Use of this log is not a substitute for punching in and out in accordance with the Starbucks Time and Attendance Policy (see Partner Resources Manual for more details)."). | **Undisputed** that the punch communication log is used for that purpose.  Starbucks disputes this fact to the extent it implies that it is not used for any other purpose.  It is also used to correct wrong punches, or to record work performed while not clocked in. *See* UF Nos. 7, 8, 40, 41. |
| 9. | Starbucks Safety and Security Guidelines require at least two employees to be in the store at all times.<br><br>Setareh Decl., Ex. A (Troester Depo. 110:24–111:25).<br><br>Setareh Decl., Ex.O (2007 Partner Guide) at STAR_TROESTER_000231.<br><br>Setareh Decl., Ex. BB (Barnett Decl., ¶ 7).<br><br>Setareh Decl., Ex. CC (Ali | **Undisputed.** |

| ¶ No. | OPPOSING PARTY'S UNDISPUTED FACT | MOVING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Decl., ¶ 7).<br><br>Setareh Decl., Ex. DD (Barb Decl., ¶ 7).<br><br>Setareh Decl., Ex. EE (Ashby Decl., ¶ 7).<br><br>Setareh Decl., Ex. FF (Armington Decl., ¶ 7). | |
| 10. | Between August of 2008 and March of 2013, Starbucks had approximately 1,913 stores open in California.<br><br>Setareh Decl., Ex. Y (Store List) at STAR_TROESTER_002521. | **Undisputed.** |
| 11. | Starbucks requires employees working closing shifts to perform a close store procedure.<br><br>Setareh Decl., Ex. A (Troester Depo. 110:24–111:25).<br><br>Setareh Decl., Ex. P (2008 Shift Supervisor 100 Level Training, Opening and Closing Responsibilities) at STAR_TROESTER_000351–370.<br><br>Setareh Decl., Ex. Q (2006 Store Operations Manual, Close Store Procedure) at STAR_TROESTER_000418.<br><br>Setareh Decl., Ex. BB (Barnett | **Undisputed** that Starbucks required closing shift employees to run a computer program called the close store procedure prior its conversion to the Simphony POS system, which was completed in November 2010. Starbucks disputes this fact to the extent it implies that the close store procedure was still required after the conversion to Simphony.<br><br>Setareh Decl., Ex. U (Simphony POS Implementation Resource Guide) at STAR_TROESTER_001107; *see also* Troester's Add'l UF No. 16. |

| ¶ No. | OPPOSING PARTY'S UNDISPUTED FACT | MOVING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
|  | Decl., ¶¶ 16–19).<br><br>Setareh Decl., Ex. CC (Ali Decl., ¶¶ 16–19).<br><br>Setareh Decl., Ex. DD (Barb Decl., ¶¶ 16–19).<br><br>Setareh Decl., Ex. EE (Ashby Decl., ¶¶ 16–19).<br><br>Setareh Decl., Ex. FF (Armington Decl., ¶¶ 16–19). |  |
| 12. | Prior to the implementation of the Simphony POS software, Starbucks utilized the System to Automate Retail ("STAR") software<br><br>Setareh Decl., Ex. F (O'Leary Depo 12:18-13:3).<br><br>Setareh Decl., Ex. R (2006 Store Operations Manual, System to Automate Retail (STAR) Overview) at STAR_TROESTER_000437. | **Undisputed.** |

DEFENDANT'S REPLY SEPARATE STATEMENT RE MOTION FOR SUMMARY JUDGMENT

| ¶ No. | OPPOSING PARTY'S UNDISPUTED FACT | MOVING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 13. | The STAR system "consists of Point of Sale (POS) registers in the front of the store, and a computer in the backroom, commonly referred to as the Manager's Workstation (MWS)."<br><br>Setareh Decl., Ex. F (O'Leary Depo 15:21-16:8).<br><br>Setareh Decl., Ex. R (2006 Store Operations Manual, System to Automate Retail (STAR) Overview) at STAR_TROESTER_000437. | **Undisputed.** |
| 14. | The close store process on the MWS uploaded information such as daily sales, profit and loss information, and store inventory to corporate headquarters, known as the Seattle Support Center ("SSC").<br><br>Setareh Decl., Ex. A (Troester Depo. 130:4–11; 135:10–21). 4.<br>Setareh Decl., Ex. E (Rutt Depo. 41:1–42:11) 5.<br>Setareh Decl., Ex. BB (Barnett Decl., ¶ 16).<br><br>Setareh Decl., Ex. CC (Ali Decl., ¶ 16).<br><br>Setareh Decl., Ex. DD (Barb Decl., ¶ 16). | **Undisputed.** |

DEFENDANT'S REPLY SEPARATE STATEMENT RE MOTION FOR SUMMARY JUDGMENT

| ¶ No. | OPPOSING PARTY'S UNDISPUTED FACT | MOVING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
|  | Setareh Decl., Ex. EE (Ashby Decl., ¶ 16).<br><br>Setareh Decl., Ex. FF (Armington Decl., ¶ 16). |  |
| 15. | The STAR system required that a closing shift employee initiate the close store process on the MWS.<br><br>Setareh Decl., Ex. F (O'Leary Depo 61:18-62:7).<br><br>Setareh Decl., Ex. R (2006 Store Operations Manual, System to Automate Retail (STAR) Overview) at STAR_TROESTER_000437. | **Undisputed.** |
| 16. | The implementation of the Simphony POS software eliminated the requirement that an employee initiate the close store process.<br><br>Setareh Decl., Ex. A (Troester Depo. 144:11–20; 145:1–21).<br><br>Setareh Decl., Ex. F (O'Leary Depo 61:18-62:7).<br><br>Setareh Decl., Ex. U (Simphony POS Implementation Resource Guide) at STAR_TROESTER_001107. | **Undisputed.** |

30

DEFENDANT'S REPLY SEPARATE STATEMENT RE MOTION FOR SUMMARY JUDGMENT

| ¶ No. | OPPOSING PARTY'S UNDISPUTED FACT | MOVING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 17. | The implementation of the Simphony POS software eliminated the connection between the POS system and MWS so that the two systems no longer relied on each other to function properly.<br><br>Setareh Decl., Ex. A (Troester Depo. 144:11–20; 145:1–21).<br><br>Setareh Decl., Ex. F (O'Leary Depo 61:18-62:7).<br><br>Setareh Decl., Ex. U (Simphony POS Implementation Resource Guide) at STAR_TROESTER_001107. | **Undisputed.** |
| 18. | Starbucks trained closing shift employees to clock out on the POS system before running the store close process on the MWS.<br><br>Setareh Decl., Ex. A (Troester Depo. 130:4–11; 135:10–21; 172:18–174:2).<br> 6.<br>Setareh Decl., Ex. BB (Barnett Decl., ¶¶ 16–18).<br><br>Setareh Decl., Ex. CC (Ali Decl., ¶¶ 16–18).<br><br>Setareh Decl., Ex. DD (Barb Decl., ¶¶ 16–18).<br><br>Setareh Decl., Ex. EE (Ashby Decl., ¶¶ 16–18). | **Disputed, but immaterial to Starbucks motion.** Even if Troester was "trained" in this way, the resulting approximately one minute of alleged off the clock work is *de minimis* in any case.<br><br>Supp. Slowik Decl. ¶ 12, Ex. A (O'Leary Tr. at 55:6-14) ("[W]e are trained specifically to run store close *and then* clock out[.]") (emphasis added); Setareh Decl., Ex. F (O'Leary Depo. 46:18-22); Setareh Decl., Ex. H (Westby Depo. 10:24-11:10).<br><br>**Evidentiary Objections**<br><br>Irrelevant as to the Barnett, Ali, Barb, Ashby, and Armington Declarations (Fed. R. Evid. 401, 402). |

| ¶ No. | OPPOSING PARTY'S UNDISPUTED FACT | MOVING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Setareh Decl., Ex. FF (Armington Decl., ¶¶ 16–18). | |
| 19. | Starbucks trained its employees to clock out before running the store close process, setting the alarm, performing a final walk through of the store, locking the door, and walking the other employee(s) to his/her car.<br><br>Setareh Decl., Ex. A (Troester Depo. 130:4–131:13; 135:10–21; 147:19–148:6; 150:7–153:3; 172:18–174:2).<br><br>Setareh Decl., Ex. BB (Barnett Decl., ¶ 19).<br><br>Setareh Decl., Ex. CC (Ali Decl., ¶ 19).<br><br>Setareh Decl., Ex. DD (Barb Decl., ¶ 19).<br><br>Setareh Decl., Ex. EE (Ashby Decl., ¶ 19).<br><br>Setareh Decl., Ex. FF (Armington Decl., ¶ 19). | **Disputed, but immaterial to Starbucks motion,** that Starbucks trained its employees to clock out before running the close store process. *See* Response to Troester's Add'l UF No. 18, above.  Otherwise, undisputed.<br><br>Supp. Slowik Decl. ¶ 12, Ex. A (O'Leary Tr. at 55:6-14) ("[W]e are trained specifically to run store close *and then* clock out[.]") (emphasis added); Setareh Decl., Ex. F (O'Leary Depo. 46:18-22); Setareh Decl., Ex. H (Westby Depo. 10:24-11:10).<br><br>**Evidentiary Objections**<br><br>Irrelevant as to the Barnett, Ali, Barb, Ashby, and Armington Declarations (Fed. R. Evid. 401, 402). |

| ¶ No. | OPPOSING PARTY'S UNDISPUTED FACT | MOVING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 20. | Time spent uploading data from the MWS is compensable work time.<br><br>Setareh Decl., Ex. E (Rutt Depo. 38:1–5; 55:4–56:7) | **Undisputed** that uploading data should be performed on the clock, because it is working time. However, Starbucks objects to this fact to the extent it presents legal conclusions; specifically, it simply restates Troester's arguments that the time spent is "compensable" or that the *de minimis* doctrine should not be applied. *See King County v. Rasmussen*, 299 F.3d 1077, 1082 (9th Cir. 2002) ("legal arguments" should not be made "outside of the briefs"). |
| 21. | Time worked is "work done to benefit our customers and in service of our customers and to prepare the store and/or close the store."<br><br>Setareh Decl., Ex. E (Rutt Depo. 34:24–35:23) | **Undisputed** that Starbucks considers "work done to benefit our customers and in service of our customers and to prepare the store and/or close the store" to be working time. |
| 22. | Starbucks has actual knowledge that Plaintiff and other employees performed the store close process on the MWS after clocking out from work and without being paid.<br><br>Setareh Decl., Ex. A (Troester Depo. 130:4–131:13; 135:10–21; 147:19–148:6; 150:7–153:3; 172:18–174:2).<br><br>Setareh Decl., Ex. BB (Barnett Decl., ¶ 19).<br><br>Setareh Decl., Ex. CC (Ali Decl., ¶ 19).<br><br>Setareh Decl., Ex. DD (Barb | **Disputed.** The cited testimony says nothing about whether anyone at Starbucks had knowledge of employees clocking out before running the store close process, and some of it has nothing to do with the store close process at all.<br><br>Supp. Slowik Decl. ¶ 12, Ex. A (O'Leary Tr. at 55:6-14); Setareh Decl., Ex. F (O'Leary Depo. 46:18-22); Setareh Decl., Ex. H (Westby Depo. 10:24-11:10).<br><br>**Evidentiary Objections**<br><br>Irrelevant and lack of personal knowledge as to the Barnett, Ali, Barb, Ashby, and Armington Declarations (Fed. R. Evid. 401, 402, 602). |

DEFENDANT'S REPLY SEPARATE STATEMENT RE MOTION FOR SUMMARY JUDGMENT

| ¶ No. | OPPOSING PARTY'S UNDISPUTED FACT | MOVING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Decl., ¶ 19).<br><br>Setareh Decl., Ex. EE (Ashby Decl., ¶ 19).<br><br>Setareh Decl., Ex. FF (Armington Decl., ¶ 19). | |
| 23. | Starbucks claims that it trained its employees to run the close store procedure on the MWS before clocking out from work.<br><br>Setareh Decl., Ex. F (O'Leary Depo. 46:18-22).<br><br>Setareh Decl., Ex. H (Westby Depo. 10:14-11:10). | **Undisputed.** |
| 24. | Starbucks had the ability to pay its employees for the time spent running the close store procedure on the MWS before it implemented the Simphony system.<br><br>Setareh Decl., Ex. F (O'Leary Depo. 24:1-20).<br><br>Setareh Decl., Ex. G (Cerna Depo. 28:14-29:2).<br><br>Setareh Decl., Ex. H (Westby Depo. 10:14-11:10). | **Undisputed** that Starbucks time punch system was designed to allow employees to clock out on the POS *after* running the close store process on the MWS, as stated in Starbucks written policy, such that employees would be paid for the time spent running the close store procedure. However, Starbucks objects to this fact to the extent it presents legal arguments; specifically, it simply restates Troester's argument regarding the "administratively feasible" element of the *de minimis* doctrine. *See King County*, 299 F.3d at 1082 ("legal arguments" should not be made "outside of the briefs").<br><br>Setareh Decl., Ex. Q ("Partners can punch out using the POS registers, but the MWS cannot be used."). |

DEFENDANT'S REPLY SEPARATE STATEMENT RE MOTION FOR SUMMARY JUDGMENT

| ¶ No. | OPPOSING PARTY'S UNDISPUTED FACT | MOVING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 25. | Starbucks has actual knowledge of shift supervisors and store managers escorting employees to their vehicles on closing shifts.<br><br>Setareh Decl., Ex. E (Rutt Depo. 61:2–24; 62:1–12) | **Undisputed** that Starbucks has knowledge of employees walking their co-workers to their vehicles as a courtesy.<br><br>Setareh Decl., Ex. E (Rutt Depo. 61:2-5) ("Q: But the company has knowledge that the shift supervisors, as a courtesy, are escorting the partners to their vehicle, correct?  A: As a courtesy, yes."). |
| 26. | Shift Supervisors are evaluated on their ability to "perform[] opening and closing duties as assigned. Follow[ing] operational procedures to ensure safety and security of partners. Us[ing] operational tools to achieve operational excellence."<br><br>Setareh Decl., Ex. K (Shift Supervisor Evaluation) at STAR_TROESTER_000005.<br><br>Setareh Decl., Ex. M (Performance Expectations and Results) at STAR_TROESTER_000035. | **Undisputed.** |

| ¶ No. | OPPOSING PARTY'S UNDISPUTED FACT | MOVING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 27. | Starbucks advises its employees that the failure to "uphold the policies and expectations set forth [by the company] may result in corrective action, up to and including termination of employment."<br><br>Setareh Decl., Ex. L (Partner Acknowledgement) at STAR_TROESTER_000032. | **Undisputed.** |
| 28. | Starbucks' store closing procedures specifically direct employees to "[w]alk partners to their vehicles."<br><br>Setareh Decl., Ex. T (Opening and Closing Responsibilities), at STAR_TROESTER_000923. | **Disputed, but immaterial to Starbucks motion.** "Walk partners to their vehicles" appears in a training document for shift supervisors, but it is not a required "closing procedure." Rather, it is simply a courtesy. For example, an employee would not be subject to discipline for not walking his co-workers to their vehicles.<br><br>Supp. Slowik. Decl. ¶ 13, Ex. B (Rutt Tr. at 50:20-52:18). |
| 29. | Starbucks may take corrective action, including termination of employment, against employees for failing to follow store closing procedures.<br><br>Setareh Decl., Ex. G (Cerna Depo. 70:25-72:16).<br><br>Setareh Decl., Ex. L (Partner Acknowledgement) at STAR_TROESTER_000032. | **Disputed, but immaterial to Starbucks motion**, to the extent it implies that Starbucks may take corrective action against an employee for not walking his co-workers to their vehicles. Otherwise, undisputed.<br><br>Supp. Slowik. Decl. ¶ 13, Ex. B (Rutt Tr. at 50:20-52:18). |

| ¶ No. | OPPOSING PARTY'S UNDISPUTED FACT | MOVING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 30. | Starbucks had the ability to pay Plaintiff for the time he spent performing the close store procedure on the MWS before it implemented the Simphony system.<br><br>Setareh Decl., Ex. F (O'Leary Depo. 24:1-20).<br><br>Setareh Decl., Ex. H (Westby Depo. 10:14-11:10). | **Undisputed** that Starbucks time punch system was designed to allow employees to clock out on the POS *after* running the close store process on the MWS, as stated in Starbucks written policy, such that employees would be paid for the time spent running the close store procedure.  However, Starbucks objects to this fact to the extent it presents legal arguments; specifically, it simply restates Troester's argument regarding the "administrative difficulty" element of the *de minimis* doctrine.  *See King County*, 299 F.3d at 1082 ("legal arguments" should not be made "outside of the briefs").<br><br>Setareh Decl., Ex. Q ("Partners can punch out using the POS registers, but the MWS cannot be used."). |
| 31. | Plaintiff's wage statements do not reflect all of time he spent performing the close store procedure on the MWS before it implemented the Simphony system.<br><br>Setareh Decl., Ex. A (Troester Depo. 130:4–131:13; 135:10–21; 147:19–148:6; 150:7–153:3; 172:18–174:2, 192:6-194:2). | **Disputed, but immaterial to Starbucks motion.**  To the extent Troester was not clocked in while he ran the store close process, he did not earn any wages for that time because it was *de minimis*.<br><br>UF Nos. 11, 16, 19-20, 22-27, 52. |

| ¶ No. | OPPOSING PARTY'S UNDISPUTED FACT | MOVING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 32. | Plaintiff's wage statements do not reflect the amounts of wages he earned for the time he spent performing the close store procedure on the MWS before it implemented the Simphony system.<br><br>Setareh Decl., Ex. A (Troester Depo. 130:4–131:13; 135:10–21; 147:19–148:6; 150:7–153:3; 172:18–174:2, 192:6-194:2). | **Disputed, but immaterial to Starbucks motion.** To the extent Troester was not clocked in while he ran the store close process, he did not earn any wages for that time because it was *de minimis*.<br><br>UF Nos. 11, 16, 19-20, 22-27, 52. |
| 33. | The amounts of wages Plaintiff earned for the time he spent performing the close store procedure on the MWS before Starbucks implemented the Simphony system cannot be calculated based on the information contained on Plaintiff's wage statements alone.<br><br>Setareh Decl., ¶¶ 29–31 & Ex. AA (Excel spreadsheet).<br><br>Declaration of Jonathan Slowik ("Slowik Decl."), ¶¶ 2-4. | **Disputed, but immaterial to Starbucks motion.** To the extent Troester was not clocked in while he ran the store close process, he did not earn any wages for that time because it was *de minimis*.<br><br>UF Nos. 11, 16, 19-20, 22-27, 52. |
| 34. | Plaintiff was not paid any wages for approximately 12 hours, 50 minutes of time spent between when he clocked out from work and when he set the alarm at work for the period from approximately December 2008 to approximately October 2010, when it implemented the Simphony system at the store | **Disputed, but immaterial to Starbucks motion.** Mr. Setareh's (Troester's counsel) analysis contains significant mathematical errors which inflate his measure of the time at issue several times over, including instances in which he examines the wrong entry on the alarm records, and others in which he makes typographical errors in entering the alarm times. The correct analysis demonstrates that collectively, between clocking out and setting |

DEFENDANT'S REPLY SEPARATE STATEMENT RE MOTION FOR SUMMARY JUDGMENT

| ¶ No. | OPPOSING PARTY'S UNDISPUTED FACT | MOVING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | where Plaintiff worked.<br><br>Setareh Decl., Ex. A (Troester Depo. 130:4–131:13; 135:10–21; 147:19–148:6; 150:7–153:3; 172:18–174:2).<br><br>Setareh Decl., Ex. F (O'Leary Depo. 38:22–39:15).<br><br>Setareh Decl., ¶¶ 29–31 & Ex. AA (Excel spreadsheet).<br><br>Setareh Decl., ¶ 38 & Ex. II. | the alarm, Troester spent 340 minutes over 312 shifts—an average of 1.09 minutes per shift, which is *de minimis*.<br><br>Supp. Slowik Decl. ¶¶ 3-11; Slowik Decl. (Dkt. No. 28-17) ¶¶ 2-4; UF No. 19. |
| 35. | At California's minimum wage of $8.00 per hour, 12 hours, 50 minutes of time equates to approximately $102.67 in unpaid wages, exclusive of any other remedies.<br><br>Setareh Decl., ¶ 30. | **Disputed** that any wages are owed for the time in question, because it is *de minimis*. Also, Troester's counsel's analysis in reaching "12 hours, 50 minutes" contains significant mathematical errors, as stated above in response to Troester's Add'l UF No. 34.<br><br>UF Nos. 11, 16, 19-20, 22-27, 52.<br><br>**Evidentiary Objections**<br><br>Irrelevant (Fed. R. Evid. 401, 402). |

DEFENDANT'S REPLY SEPARATE STATEMENT RE MOTION FOR SUMMARY JUDGMENT

| ¶ No. | OPPOSING PARTY'S UNDISPUTED FACT | MOVING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 36. | Approximately 2 minutes, 50 seconds per day of time at $8 per hour for two employees at each of Starbucks' approximately 1,913 retail stores over the course of a 365 day year results in approximately $527,562.89 in unpaid wages in a year.<br><br>Setareh Decl., ¶ 31. | **Disputed** that Starbucks employees spend 2 minutes, 50 seconds working off the clock on closing shifts, or that any of its employees are owed wages for off-the-clock work on closing shifts.<br><br>**Evidentiary Objections**<br><br>Lack of personal knowledge (Fed. R. Evid. 602); Irrelevant (Fed. R. Evid. 401, 402). |

Dated: February 24, 2014

AKIN GUMP STRAUSS HAUER & FELD LLP
Gregory W. Knopp
Mark R. Curiel
Jonathan P. Slowik


By_____/s/ Gregory W. Knopp_____
Gregory W. Knopp
Attorneys for Defendant
Starbucks Corporation

DEFENDANT'S REPLY SEPARATE STATEMENT RE MOTION FOR SUMMARY JUDGMENT