Shaun Setareh (SBN 204514)
    shaun@setarehlaw.com
Thomas Segal (SBN 222791)
    thomas@setarehlaw.com
William Pao (SBN 219846)
    william@setarehlaw.com
**SETAREH LAW GROUP**
315 S. Beverly Drive, Suite 315
Beverly Hills, California 90212
Tel: (310) 888-7771
Fax: (310) 888-0109
(Additional Counsel on Following Page)

Attorneys for Plaintiff
DOUGLAS TROESTER

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS TROESTER, on behalf of himself, and all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>STARBUCKS CORPORATION, a Washington corporation; and DOES 1-50, inclusive,<br><br>                    Defendants. | Case No. 2:12-cv-07677-CJC- (PJWx)<br><br>**REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Date:       January 27, 2020<br>Time:      1:30 p.m.<br>Crtrm:    7C<br><br>Judge:    Hon. Cormac J. Carney<br><br>Date Action Filed: August 6, 2012 |

Stanley Saltzman (SBN 90058)
Marlin & Saltzman LLP
29800 Agoura Road, Suite 310
Agoura Hills, CA 91301
Tel: (818) 991-8080
Fax: (818) 991-8081


David Spivak (SBN 179684)
david@spivaklaw.com
THE SPIVAK LAW FIRM
16530 Ventura Bl., Suite 203
Encino, CA 91436
Tel: (818) 582-3086
Fax: (818) 582-2561


Louis Benowitz (SBN262300)
LAW OFFICES OF LOUIS BENOWITZ
9454 Wilshire Boulevard, Penthouse
Beverly Hills, CA 90212
Tel: (310)844-5141
Fax: (310)492-4056

# TABLE OF CONTENTS

**I.** INTRODUCTION…………………………………………………………………..1

**II.** Except for Predominance, Starbucks Admits the Elements of Class Certification are Met…..…………………………………………………………………………………..2

**III.** Starbucks is Contrdicting the Representations Which Gained It Summary Judgment and the Later Grant of Summary Adjudication of the Waiting Time Penalties Claim...…………………………3

**IV.** Starbuck's Claim That Declarants "Recanted" Is Fals. In Fact, the Testimony of Declarants Supports Plaintiff's Theories………………………………………………………………6

**V.** Starbucks' Declarants Do Not Prove What They Claim………………………………8

**VI.** Common Issues Predominate Regarding The "Off-the-Clock" Claim………………………10

**VII.** Starbucks' Arguments Concerning the Claims for Penalties are Meritless…………………15

**VIII.** CONCLUSION………………………………………………………………..17

# TABLE OF AUTHORITIES

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124-1125 (9th Cir. 2017)…………………………..14

*Britton v. ServiceLink Field Services, LLC*, 2019 WL 3400683 (E.D. Wa. 2019)…………………..16

*Cicairos v. Summit Logistics, Inc.*, 133 Cal.App.4th 949, 962 (2005)……………………………………13

*Dilts v. Penske Logistics, LLC*, 2013 WL 12095057 *3 (S.D. Cal. 2016)……………………………14

*Dynabursky v. AlliedBarton Sec. Servs. LP*, No. 8:12-CV-2210-JLS, 2014 WL 1654030, at *4 (C.D. Cal. Apr. 24, 2014)………………………………………………………………………………………14

*Greer v. Dicks Sporting Goods, Inc.*, 2017 WL 1354568 *7 (E.D. Cal. 2017)………………………15

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1030 (9th Cir. 1998)……………………………………16

*Hernandez v. Mendoza*, 199 Cal.App.3d 721, 727 (1988)…………………………………………………13

*Keele v. Wexler*, F.3d 589, 595 (7th Cir. 1998)…………………………………………………………16

*Kilby v. CVS Pharmacy Inc.,* 63 Cal.4th 1, 11 (2016)……………………………………………………12

*Lindow v. United States,* 787 F.3d 1057, 1063 (9th Cir. 1984)……………………………………………3

*Maldonado v. Epsilon Plastics, Inc.*, 22 Cal.App.5th 1308, 1332-1333 (2018)………………………6

*Moore v. Ulta Salon Cosmetics  & Fragrance, Inc.,* 311 F.R.D. 590, 604 (C.D. Cal. 2015)…………15

*Moster v. Stonefield Josephson, Inc.*, 815 F.3d 1161, 1170 (9th Cir. 2015)…………………………10

*Nally v. Grace Community Church*, 47 Cal.3d 278, 301 (1988)…………………………………………15

*New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)………………………………………………………6

*Rai v. Santa Clara Valley Transportation Authority*, 308 F.R.D. 245, 259 (N.D. Cal. 2015)………..15

*Ridgeway v. Walmart Inc.*, 2020 WL 55073 *15 (9th Cir. January 6, 2020)…………………………12

*Rodriguez v. Gates,* 2002 WL 1162675 **7-8 (C.D. Cal. 2002)……………………………………16

*Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319, 334-335 (2005)………………………14

*Troester v. Starbucks Corp.*, 2014 WL 1004098 *4 (C.D. Cal. 2014)………………………………………4

*Troester v. Starbucks Corp.,* 5 Cal.5th 829, 848 (2018)……………………………………………………13

*Troester v. Starbucks Corp.*, 387 F.3d 1019, 1030 (C.D. Cal. 2019)………………………………………

ii.

*Vaquero v. Ashley Furniture Industries, Inc.*, 824 F.3d 1150, 1154-1155 (9th Cir. 2016)................12

*Wilson v. TE Connectivity Networks, Inc.*, No., 2017 WL 1758048, at *7 (N.D. Cal. Feb. 9, 2017)...13

## **<u>STATUTES</u>**

Labor Code § 203...................................................................................................5

Labor Code § 226..................................................................................................15

Labor Code § 1174(d)...........................................................................................13

Wage Order No. 5, § 7(A)(3).................................................................................13

# I.    Introduction.

It is undisputed that during the class period, Starbucks required shift supervisors to work off the clock at the end of closing shifts. Starbucks, without offering competent evidence, attempts now to dispute an aspect of the off the clock work that it previously had conceded. Previously, in this litigation Starbucks asserted that it could not record the time spent by class members running the "store close procedure" on the store computer. Starbucks made this assertion in order to show that one of the elements of the federal de minimis exception (that recording the time is not administratively feasible) was met.

Now to defeat certification, Starbucks attempt to change its position, arguing that in fact the time spent on the "store close procedure" occurred on the clock and was paid for. Starbucks' evidence in support of its change in position is highly questionable. Starbucks offers declarations from twenty current employees. Of these twenty, twelve state that they do not recall the store close procedure.  Three of the twenty declarants do not mention the store close procedure at all. Of the five who do recall the store close procedure, three state that they vaguely recall it, but cannot provide a time frame except to state that it was "many years" ago. One declarant recalls it (without the caveat "vaguely") but cannot provide the time frame except to state that it was "many years ago." The failure to state the time frame is significant because without testimony as to a time frame, we cannot be sure that the testimony applies to the class period. In fact, only one of Starbucks' declarants has a clear recollection of the store close procedure and provides a time frame for it.

By contrast, Plaintiffs' declarants all attest that during the class period, the store close procedure occurred off the clock. Starbucks asserts that two of the declarants "recanted." But this claim is misleading. Declarant Amanda Barb testified that she recalled doing the store close procedure on and off the clock. This is completely consistent with her declaration which states that in 2010 when the STAR system was

REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

introduced the process changed so that she had to run the procedure off the clock. That is not a recantation, instead Starbucks is cherry picking her testimony. The other declarant who supposedly recanted, testified that after being subpoenaed he read an online article about this lawsuit which made him "angry." He then reflected on his experiences at Starbucks, and concluded based on his experiences with subsequent employers that he may have been paid for the time that he believed was off-the-clock.

In any event, it is undisputed that shift supervisors had to perform work off-the-clock at the end of shifts. Starbucks manager Celia Cerna testified that this occurred, and Starbucks was aware of it. Starbucks tries to argue that the off-the-clock claim raises predominating individualized issues. However, these issues go to damages and as the Ninth Circuit has repeatedly held that individualized issues as to damages do not defeat certification. Further under California law, Starbucks was legally required to keep records of all hours worked. Starbucks is in effect trying to use its failure to keep legally required records as a defense to class certification. Unsurprisingly, numerous courts have rejected this tactic when tried by other defendant employers. The result should be no different here. The motion for class certification should be granted.

## II.      Except for Predominance, Starbucks *Admits* the Elements of Class Certification are Met.

Notably, while opposing class certification, there are a number of elements for class certification that Starbucks does *not* dispute are met. Starbucks does not argue that the class is not numerous. Starbucks does not argue that Plaintiff is not a typical or adequate class representative. Starbucks does not argue that Plaintiff's counsel are not adequate. Starbucks does not dispute that a class action is the superior method of adjudicating this dispute. Instead, Starbucks' sole basis for opposing class certification is its view that common issues do not predominate over individual ones. That argument is based on misapprehension of the facts and the law as set forth below. Class certification should be granted.

**III.    Starbucks is Contradicting the Representations Which Gained It Summary Judgment and the Later Grant of Summary Adjudication of the Waiting Time Penalties Claim.**

In opposing class certification, Starbucks asserts that during the class period, shift supervisors would upload store data on closing shifts and then clock out. In other words, Starbucks asserts that it could and did pay shift supervisors for this time. But Starbucks' motion for summary judgment based on the *de minimis* defense was based on the proposition that it could *not* pay shift supervisors for this time. As Starbucks explained to the Ninth Circuit:

> In considering the first factor, the court held that the 'administrative difficulty of recording the additional time' favors applying the de minimis defense. (citation) **The court agreed with Starbucks that its timekeeping system 'could not feasibly capture the time at issue in this case.'** (citation) This was because the software Starbucks used allegedly required Troester to clock out before initiating the store closing procedure – a task which lasted one minute on average.

Starbucks Appellee's Opening Brief at 6 (emphasis added).

Similarly, Starbucks told the Ninth Circuit that: "The close store procedure which lasted one minute on average – necessarily occurred after clocking out." *Id.* at 16.

Starbucks made these representations because a critical factor in the *de minimis* test is the "administrative difficulty of recording the additional time." *Lindow v. United States,* 787 F.3d 1057, 1063 (9th Cir. 1984) (*de minimis* factors are "(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work.")

Judge Feess' grant of summary judgment was based on the assertion that Starbucks could not feasibly pay for this time:

> Here, Starbucks could not feasibly capture the time at issue in this case.
> According to Plaintiff, the STAR software required him to clock out on the POS

registers before initiating the close store procedure on the MWS. Thus in order for the software to function, the close store procedure, which lasted one minute on average – had to occur after Plaintiff clocked out.

*Troester v. Starbucks Corp*., 2014 WL 1004098 *4 (C.D. Cal. 2014).

As Starbucks described Judge Feess's decision to the California Supreme Court:

In considering the first factor, the court held that the "administrative difficulty of recording the additional time' also favors applying the de minimis defense. The court held that Starbucks timekeeping system 'could not feasibly capture the time at issue in this case.'  This was in part because the software Starbucks used allegedly required Troester to clock out before initiating the store closing procedure.

Respondent's Answer Brief on the Merits in *Troester v. Starbucks Corporation*, California Supreme Court Case No. S234969 at 14.

Of course, if Plaintiff was wrong about how the STAR software operated, and it in fact allowed employees to clock out after running the store closing procedure, it would have been an easy matter for Starbucks to present evidence of this, including a declarant familiar with the software, screenshots, and possibly other evidence. However, Starbucks chose not to present such evidence with its motion for summary judgment and to date has never presented such evidence.

This issue was in fact critical to Judge Feess' decision to grant summary judgment. The federal de minimis factors are: "(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." *Lindow supra* at 1063. As Judge Fees explained: "Where, as here, the first two factors under *Lindow* are satisfied, courts routinely apply the de minimis defense even when a plaintiff alleges uncompensated time every day. . . . Thus, although Plaintiff claims that he performed off-the-clock work during every closing shift to which he was assigned . . . these facts are consistent with a finding that

the time spent closing the store was de minimis." *Troester*, 2014 WL 1004098 *5. In other words, while the third *Lindow* factor – the regularity of the work – favored Plaintiff, Judge Feess believed that this did not matter if the first two factors were met.

Starbucks now has done a reversal, and suggests based on vague declarations from current employees (most of whom testify that they do not recall the close store procedure) that it could and did pay for this time.

Notably, Starbucks' prior position, that it was not administratively feasible to pay for the time was also critical to Starbucks' obtaining summary adjudication on the claim for waiting time penalties.

Starbucks argued that its conduct was not willful so as to permit an award of waiting time penalties under Labor Code section 203. Starbucks stated to this Court that:

> Starbucks has presented reasonable defenses to Troester's wage claims. The *de minimis* defense clearly qualified, given that the Court previously granted summary judgment, agreeing with Starbucks that the federal de minimis doctrine barred Troester's claims.

ECF No. 59 at 19:22-25.

While the Ninth Circuit reversed Judge Feess' grant of summary judgment, this Court granted summary adjudication on the claim for section 203 penalties because: "it was reasonable for Starbucks to assert that it did not owe any wages under the *de minimis* doctrine." *Troester v. Starbucks Corp.*, 387 F.3d 1019, 1030 (C.D. Cal. 2019).

However, if it were to be the case as Starbucks now claims, that it always had the ability to pay for the time at issue, and in fact did so in many cases, then its failure to pay Troester and other class members who were not paid was not in good faith. As sets forth herein, the evidence in fact shows that during the class period, class members were required to work off-the-clock during the store closing procedure. And Starbucks

REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

presents no evidence that its STAR system in fact permitted clocking out after the store close procedure had been done.[1]

In fact, in order for Starbucks to even use the de minimis defense as a good faith dispute which precludes liability for section 203 penalties, Starbucks has to have *at the time of nonpayment* conducted a reasonable inquiry to support its determination that the time was de minimis and therefore non-compensable. *See Maldonado v. Epsilon Plastics, Inc.*, 22 Cal.App.5th 1308, 1332-1333 (2018) (affirming award of section 203 penalties where employer had subjective belief that it had paid all wages but had done no investigation into the underlying facts). If Starbucks is now asserting that the facts its de minimis defense was based on were not in fact accurate, this warrants the Court *sua sponte* requesting briefing on reconsideration of the grant of summary adjudication.

## IV.   Starbucks' Claim That Declarants "Recanted" Is False. In Fact, the Testimony of Declarants Supports Plaintiff's Theories.

Starbucks in opposing class certification complains that Plaintiff only submitted five putative class member declarations and that two of those putative class members have "recanted".

The claim that two putative class members "recanted" is false. It appears to be based on the deposition testimony of Blake Barnett and Amanda Barb. When that deposition testimony is examined, it becomes clear that neither "recanted".

As to Mr. Barnett, he stated that after being subpoenaed a coworker searched for information about the lawsuit on Google and sent him an article about the case. Barnett Tr. 49:18-24. Segal Decl. Exh. 1. After reading the article, he became angry about the lawsuit: "From what I recall, you had two types of employees, the ones that you knew

---

[1] While it is not necessary for this Court to decide the issue in ruling on class certification, the doctrine of judicial estoppel bars Starbucks from contradicting its prior position. *E.g., New Hampshire v. Maine*, 532 U.S. 742, 749 (2001): "This rule, known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument, and then relying on a contradictory argument to prevail in another phase."

loved what they were doing and the ones that just wanted to get out of the store. And when I read that article, that picture, to me, was someone that just wanted to get out of the store." Barnett Tr. 50:19-25. Mr. Barnett then testified, which Starbucks seizes upon, that he was paid for al time he worked at Starbucks. However, his later testimony makes clear that this was not based on his actual present recollection of what occurred but instead his subsequent experiences at other employers:

> "Understanding of how the – how managers work in corporate businesses. Starbucks – you know, I worked at In-N-Out Burger right after. The procedures were almost identical. My own manager now at Microsoft, the procedures are identical. You always want to keep track of time, and maybe during that time, I wasn't paying attention to our manager's writing in our logbooks, so I just assumed it never happened. But now that I look back at it, they were always writing, always having me sign something."

Barnett Tr. 68:5-17.

In fact, Mr. Barnett stated that he was not sure whether he was paid for the time at issue. "Q. Do you know if your managers actually entered the off-the-clock time that you worked? A. No, I don't know for sure. I don't recall. Q. And do you know if you were actually compensated for the time you worked off the clock while a Starbucks employee? A. I don't recall to be honest, no." Barnett Tr. 69: 5-19.

As to Amanda Barb, she initially testified at her deposition that she would perform the store close process after clocking out. "Q. And then you also mentioned the close store procedure which was done on the computer? A. Yes. Q. Where was that in – in that order? A. I would do that after the money section, and no. I had to do that right after we logged out. Q. After clocking out? A. Yes." Barb Tr. 22:13-22. Segal Decl. Exh. 2. Ms. Barb offered contradictory testimony in response to defense counsel showing her a 2006 Starbucks document purportedly stating that employees should clock out after doing the store close procedure. Barb. Tr. 25:8-15.  She later testified

that "I can remember doing it both ways." Barb Tr. 60:23-24. This is completely consistent with the testimony of Douglas Troester who testified that it was after the introduction of new software that shift supervisors had to clock out before performing the store closing procedures. Troester Tr. 130:18-131:1. Segal Decl. Exh. 3. Therefore, there was a time period when the store close process occurred on the clock, and a time period when it occurred off the clock.

And the third declarant deposed by Starbucks also confirmed that the store close procedure occurred off the clock. Declarant Shanelle Ashby testified that: "We would have to close down – before we closed down the store on the portal, we would have to sign out." Ashby Tr. 39:17-19. Segal Decl. Exh. 4. "Q. So when you were shift supervisor – I just want to make sure I got that. So everyone would clock out. Then you went to the computer? A. Yes. Q. And you closed the store down on the portal. A. Yes. Q. And then you would set the alarm? A. Yes." Ashby Tr. 40:3-11. "Q. And it was your understanding that you had to clock out before you ran that process on the computer, right? A. Yes. Q. How did you learn that? A. I learned it in training." Ashby Tr. 40:14-20.

## V.     Starbucks' Declarants Do Not Prove What They Claim.

Starbucks attempts to support its assertion that it could and did pay for the time spent on the store closing procedure with declarations from twenty current Starbucks employees.

Notably, 12 of the current employee declarants state that they have no recollection of doing the store closing procedure. Arias Decl. ¶ 8; Batey-Ulbade Decl. ¶ 8; Ceja Decl. ¶ 9; DeLeon Decl. ¶ 9; Figueroa Decl. ¶ 8; Gomez Decl. ¶ 8; Lyons Decl. ¶ 9; Ramirez Decl. ¶ 8; E. Rodriguez Decl. ¶ 10; L. Rodriguez Decl. ¶ 8; Villagomez Decl. ¶ 9; Legaspie Decl. ¶ 7.  Two of the current employee declarants, Nubia Villeda, and Victor Viramontes do not testify about the store close procedure at all. Declarant

Clara Luna (who is apparently an exempt manager and not a putative class member) also does not mention the store close procedure.

Five Starbucks declarants testify that they remember the store close procedure and it occurred on the clock, but their testimony is vague as to what time period they are referring to. Declarant Christopher Coye states that he remembers the store close procedure from "many years ago" and it occurred on the clock. Coye Decl. ¶ 5. Notably, it appears that during the time period of this case, Mr. Coye may have been a manager and not an hourly employee putative class member. Coye Decl. ¶ 2 (stating that he began work at Starbucks in 1998, then worked for two years in Orange County, then for two years in Los Angeles, then worked as a manager at the Santa Monica and Fairfax store for 10 years.) Therefore, it appears Mr. Coye was a manager from approximately 2002 to 2012 meaning he never worked a closing shift as an hourly employee during the class period of this case.

Declarant Don Jenkins also states that he "vaguely" recalls the procedure from "many years ago" and that it was done on the clock. Jenkins Decl. ¶ 5. However, it appears that he may have worked outside California on the East Coast for the time period of this case. Jenkins Decl. ¶ 2. It is unclear that he ever worked a closing shift in California during the class period.

Declarant Eddie Necochea similarly testifies that he "vaguely" recalls the procedure from "many years ago" and that it occurred on the clock. Necochea Decl. ¶ 5. 8.

Declarant Roy Dominguez similarly testifies that he "vaguely" recalls that "many years ago" he had to do work on a computer as part of the closing tasks, and this occurred on the clock. Dominguez Decl. ¶ 5.

Declarant Oscar Cardona recalls doing the close store procedure from around 2004 until around 2009 to 2010 and his recollection he did it before clocking out.

REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Cardona Decl. ¶ 8. Cardona is the only one of Starbucks' declarants who has a clear recollection of doing the close store procedure during the time period of this case.

In summary then, of twenty (20) current employee putative class member declarants, twelve (12) fail to remember the store close procedure at all. (Importantly, Starbucks admits that there was such a procedure.)  Three (3) do not mention the store close procedure in their declaration. Three (3) state that they vaguely recall the store close procedure but do not estimate the time period when it occurred except to state that it was "many years ago". One (1) declarant recalls the store close procedure but does not estimate the time period when it occurs except to state that it was "many years ago." Only one (1) of Starbucks' declarants can recall doing the close store procedure during the class period.

This evidence is hardly convincing in support of Starbucks' new position that class members could clock out after running the store close process. Were that really true Starbucks could and would have provided much better evidence of it. As the Ninth Circuit has said: "Where stronger evidence of a fact is available, weaker evidence becomes even more so." *Moster v. Stonefield Josephson, Inc*., 815 F.3d 1161, 1170 (9th Cir. 2015).

**VI.   Common Issues Predominate Regarding The "Off-the-Clock" Claim.**

Starbucks' argues that individualized issues predominate over common ones because of the need to identify the frequency and duration of the off the clock work. It is undisputed that off-the-clock work occurred on closing shifts. For example, Starbucks manager Cecilia Cerna testified that she was not paid for closing tasks, and that Starbucks was aware of it:

Q. You were not paid for the closing tasks to take – from the time you clock out until you alarm the system correct?

A. Yes.

1

2      Q. You were not paid for the closing tasks of arming the system and leaving the

3      store with all partners correct?

4      A. Correct.

5      Q. You were not paid for the closing task to double-check that all doors are locked

6      when leaving the store, correct?

7      A. Correct.

8      Q. You were not paid for the closing task of walking the partners to their vehicles,

9      correct?

10     A. Correct.

11     Cerna Tr. 38:24-39:13. Setareh Decl. Exh. 3.

12     Cerna also testified that Starbucks was aware of this unpaid closing work:

13     Q. And you were not paid for all of these steps that you're required to do after

14     you clock out correct?

15     A. Correct.

16     Q. And the company is aware that you're doing all of these steps after you clock

17     out, correct?

18     A. Yes.

19     Q. And the company has never offered to pay you for any of this time?

20     A. No.

21     Cerna Tr. 41:8-19. Setareh Decl. Exh. 3.

22          Since it is undisputed that during the class period, shift supervisors pursuant to

23     Starbucks' practices worked uncompensated time on closing shifts, Starbucks'

24     arguments about individualized issues go to damages not to liability.

25          It is of course, well settled that differences in damages do not defeat certification.

26     As the Ninth Circuit has said:

27

28

REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

In a wage and hour case, unlike in an antitrust class action, the employer-defendant's actions necessarily caused the class members' injury. Defendants either paid or did not pay their sales associates for work performed. No other factor could have contributed to the alleged injury. Therefore, even if the measure of damages proposed here is imperfect, it cannot be disputed that the damages (if any are proved) stemmed from Defendants' actions. . . .

> Our precedent is well settled on this point. In *Yokoyama,* we held that 'damage calculations alone cannot defeat certification. 594 F.3d at 1094. That is, the 'amount of damages is invariably an individual question and does not defeat class action treatment.' *Id.* (quoting Blackie v. Barrack, 524 F.2d 891, 905 (9th Cir. 1975)). We have repeatedly confirmed the Yokoyama holding that the need for individualized findings as to the amount of damages does not defeat class certification.

*Vaquero v. Ashley Furniture Industries, Inc*., 824 F.3d 1150, 1154-1155 (9th Cir. 2016).

As the Ninth Circuit recently said in affirming a class-wide award of damages for off-the-clock work: "Once the jury found that Wal-Mart owed minimum wages to drivers for layovers, rest breaks, and inspections, the varying amount of time truckers spent doing these tasks went to the question of damages." *Ridgeway v. Walmart Inc*., 2020 WL 55073 *15 (9th Cir. January 6, 2020). "Despite variations, which are common in class action damage calculations, introduction of the representative sample and representative testimony was proper because plaintiffs had no other practicable way to prove how much Wal-Mart owed them." *Id.* at *18.

Any issue regarding identification of who is entitled to damages for off-the-clock work and how much they are owed is a result of Starbucks' failure to keep legally required records. California employers are regulated by wage orders issued by the Industrial Welfare Commission that have "equal dignity" with statutes. *Kilby v. CVS*

12.

*Pharmacy Inc.,* 63 Cal.4th 1, 11 (2016). Wage Order No. 5 for the Public Housekeeping Industry provides that: "Every employer shall keep accurate information with respect to each employee including the following: . . . Time records showing when the employee begins and ends each work period . . . [T]otal daily hours worked shall also be recorded." Wage Order No. 5, § 7(A)(3). Further, California Labor Code § 1174(d) provides that: "Every person employing labor in this state shall: . . . Keep . . . payroll records showing the hours worked daily by . . . employees . . .."

In this very case, the California Supreme Court recognized that the employer may not shift this record-keeping obligation to employees:

> We recognize that one of the main impetuses behind the de minimis doctrine in wage cases is the practical administrative difficulty of recording small amounts of time for payroll purposes . . But employers are in a better position than employees to devise alternatives that would permit the tracking of small amounts of regularly occurring work time. One such alternative . . . [is] to restructure the work so that employees would not have to work before or after clocking out. . . . And even when neither a restructuring of work nor a technological fix is practical, it may be possible to reasonably estimate work time. . . . Under the circumstances of this case, we decline to adopt a rule that would require the employee to bear the entire burden of any difficulty in recording regularly occurring work time."
>
> *Troester v. Starbucks Corp.,* 5 Cal.5th 829, 848 (2018).

Importantly, as many courts have recognized a defendant employer such as Starbucks cannot be allowed to evade liability to a class of employees on the basis that it failed to record off-the-clock work. *Hernandez v. Mendoza*, 199 Cal.App.3d 721, 727 (1988): "Where the employer has failed to keep records required by statute, the consequence for such failure should fall on the employer, not the employee."; see also *Cicairos v. Summit Logistics, Inc*., 133 Cal.App.4th 949, 962 (2005)

District courts in California have certified cases based on the inadequacy of records. *E.g*, *Wilson v. TE Connectivity Networks, Inc*., No., 2017 WL 1758048, at *7 (N.D. Cal. Feb. 9, 2017) (class certified where "Plaintiff contends that Defendants' policy of automatically deducting thirty minutes from certain employees' paychecks violates their obligation to provide and keep records of meal breaks and is susceptible to common proof.") Understandably silent about its record-keeping violations, Starbucks is, in essence, using *its* violation to avoid consequences, including certification and liability. *Dynabursky v. AlliedBarton Sec. Servs. LP*, No. 8:12-CV-2210-JLS, 2014 WL 1654030, at *4 (C.D. Cal. Apr. 24, 2014) ("Decertifying the class simply because Defendant failed to keep accurate records would frustrate the purpose of the Wage Order and related wage and hour laws."). *Dilts v. Penske Logistics, LLC*, 2013 WL 12095057 *3 (S.D. Cal. 2016) ("Plaintiffs contend, and the Court agrees, that they should not be penalized because Penske failed to maintain records of meal periods, despite the requirement to do so under the applicable Wage Order . . . .").

The result should be no different here. Starbucks failed to record regularly occurring off-the-clock work and should not be able to avoid liability.

Nor is it a barrier to class certification if class members ultimately must make some kind of individualized showing of entitlement to damages. As the California Supreme Court has said: "Predominance is a comparative concept, and the necessity for class members to individually establish eligibility and damages does not mean individual fact questions predominate." *Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319, 334-335 (2005). As the Ninth Circuit has held, there is no requirement for class certification that "class proponents must also demonstrate that there is an administratively feasible way to determine who is in the class." *Briseno v. ConAgra Foods, Inc*., 844 F.3d 1121, 1124-1125 (9th Cir. 2017). "Rule 23 specifically contemplates the need for such individualized claim determinations after a finding of liability. *Id.* at 1131.

Starbucks stubbornly maintains that a de minimis defense of some kind still exists under California law and that the possible existence of a such a defense precludes certification. This flies in the face of what the California Supreme Court held: "We further conclude that although California has a de minimis rule that is a background principle of state law, the rule is not applicable to the regularly reoccurring activities that are principally at issue here." *Troester supra* at 848. Under the law of the case doctrine, Starbucks cannot now relitigate that determination. "The decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case." *Nally v. Grace Community Church*, 47 Cal.3d 278, 301 (1988).

Whether a *de minimis* defense is nonetheless available under California law is a common question. Further, as courts have repeatedly recognized the applicability of any such defense is inherently a common issue. *Moore v. Ulta Salon Cosmetics  & Fragrance, Inc.,* 311 F.R.D. 590, 604 (C.D. Cal. 2015): "Even assuming that defendant has not waived the de minimis defense, evaluating it will require answering a number of common questions."; *Rai v. Santa Clara Valley Transportation Authority*, 308 F.R.D. 245, 259 (N.D. Cal. 2015): "VTA's defense that Plaintiff's engage in only *de minimis* activities for which they are not entitled to compensation does not preclude class treatment because analysis of this defense requires resolution of a common issue of law not an individualized inquiry into each operator's activities."; *Greer v. Dicks Sporting Goods, Inc*., 2017 WL 1354568 *7 (E.D. Cal. 2017): "Even if DSG is right that the de minimis doctrine applies, there would be common questions regarding whether the class has satisfied the requirements of the de minimis doctrine."

**VII.   Starbucks Arguments Concerning the Claims for Penalties are Meritless.**

Starbucks argues that because Plaintiff Troester's claim for penalties under Labor Code section 226 is time-barred, he is not typical for purposes of a wage statement

penalties claim and cannot seek such penalties for the class. Importantly, if Troester proves that unpaid wages are owed, Troester will have proved that the hours stated on the wage statements are inaccurate. There is no argument that his wage statements were accurate, but class members had inaccurate wage statements. He suffered the same injury as the class. His interests are aligned with the class. His claim arises from the same course of conduct. "A plaintiff's claim is typical if it raises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele v. Wexler*, F.3d 589, 595 (7th Cir. 1998). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1030 (9th Cir. 1998): "Representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need to be substantially identical."

The authorities relied on by Starbucks are not to the contrary. For example, in *Britton v. ServiceLink Field Services, LLC*, 2019 WL 3400683 (E.D. Wa. 2019)  was a wrongful foreclosure case on behalf of borrowers who were unlawfully locked out of their homes. The named plaintiffs, however, had not actually been locked out of their homes. Therefore, they had not suffered the same injury as the majority of class members (the loss of occupancy and therefore the rental value of the home) and were not typical. *Rodriguez v. Gates,* 2002 WL 1162675 **7-8 (C.D. Cal. 2002) was a civil rights class action where the plaintiff sought to represent "all persons whose rights under the United States Constitution were violated by the Rampart Division CRASH Unit Officers from 1990 through the present." *Id.* at *7. The district court unsurprisingly held that Plaintiff who claimed malicious prosecution and falsification of evidence would not be typical of class members who had a claim under, for example, the First Amendment.

Starbucks also attempts to resurrect its de minimis defense by arguing that no penalties should be awarded if the inaccuracies in the wage statements are minor. Starbucks cites to no case holding that this is a defense to an inaccurate wage statement

claim. Starbuck cites to *Maldonado supra* at 1337. However, the holding of *Maldonado* is inapplicable to this case. Maldonado hold that there is no injury to support a claim for section 226 penalties, where the hours worked are accurate: "Only the absence of the *hours worked* will give rise to an inference of injury; the absence of accurate *wages earned* will be remedied by the violated wage and hour law itself, as is the case here." *Id.* at 1336-1337. Here, the issue is that the hours worked were not accurately recorded. It is exactly the situation where injury is presumed under *Maldonado,* because the wage statements prevented class members from seeing if they were paid for all hours worked. And, in making this argument to defeat certification, Starbucks is again attempting to use its own failure to keep legally required records as a defense.

**VIII. Conclusion.**

     All elements for class certification are met. The motion should be granted.

SETAREH LAW GROUP

BY  /s/ Shaun Setareh

Dated: January 13, 2020

SHAUN SETAREH
Attorneys for Plaintiff
DOUGLAS TROESTER

REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 13th of January 2020 a true and correct copy of the foregoing document was filed via the court's CM/ECF filing system and a copy was delivered via the same on all attorneys of record.


                                        /s/ Shaun Setareh
                                        SHAUN SETAREH
                                        Attorneys for Plaintiff
                                        DOUGLAS TROESTER