**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DOUGLAS TROESTER, on behalf of
himself, and all others similarly situated,

               Plaintiff,

     v.

STARBUCKS CORPORATION, and
Does 1-50,

              Defendants.

Case No.: CV 12-07677-CJC(PJWx)

ORDER GRANTING DEFENDANT'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT [Dkt. 85] AND DENYING
PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION [Dkt. 88]

## I. INTRODUCTION

Plaintiff Douglas Troester brings this putative class action against Defendant Starbucks Corporation ("Starbucks"), alleging claims for (1) failure to pay minimum and overtime wages, (2) failure to provide accurate written wage statements, (3) failure to timely pay all final wages, and (4) unfair competition. (Dkt. 1-1 [Complaint, hereinafter "Compl."].) Plaintiff's claims, theories, and available relief have been narrowed after appeal to the Ninth Circuit of a previous summary judgment order, related certification to

-1-

the California Supreme Court, and additional summary judgment motions.  The relevant allegations now are that Starbucks required employees to perform four tasks after clocking out—uploading data to Starbucks' computer system, programming the alarm, locking doors, and walking coworkers to their cars—but did not compensate employees for these tasks.  Before the Court are Starbucks' Motion for Partial Summary Judgment (Dkt. 85 [hereinafter "MSJ"]) on Plaintiff's wage statement claim and his unpaid wages claim to the extent it seeks liquidated damages, and Plaintiff's Motion for Class Certification (Dkt. 88 [hereinafter "MCC"]).  For the following reasons, Starbucks' Motion for Partial Summary Judgment is **GRANTED** and Plaintiff's Motion for Class Certification is **DENIED**.

## II.  BACKGROUND

In February 2008, Starbucks hired Plaintiff to work as a barista in one of its coffee shops.  (Dkt. 92-1 [Defendant's Reply Separate Statement of Undisputed Facts, hereinafter "UF"] ¶¶ 1–2.)  Starbucks promoted him to shift supervisor in June 2008.  (*Id.* ¶ 2.)  In January 2011, Plaintiff stopped working for Starbucks.  (UF ¶ 1.)

Plaintiff recorded his work time for Starbucks and clocked in and out using Starbucks's point-of-sale ("POS") system.  (Dkt. 64-4 ¶ 5.)  Plaintiff admits Starbucks always paid him for all the time he recorded in the POS system.  (*Id.* ¶ 6.)  Instead, at issue in this case is time Plaintiff allegedly worked off the clock while he was a shift supervisor on shifts at the end of the business day ("closing" shifts).  (UF ¶ 3.)  Based on the software Starbucks used, Plaintiff alleges he had to clock out before using the store computer to send sales data to Starbucks headquarters.  (*Id.* ¶¶ 4, 6.)  Plaintiff then set the store alarm, exited, locked the front door, and walked coworkers to their cars.  (*Id.* ¶¶ 8–10.)  In total, Plaintiff contends he spent about four to ten minutes performing these tasks every shift, and that he was not compensated for this time.

## III.  STARBUCKS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Three claims remain in this case:  unpaid wages, failure to provide accurate wage statements, and violation of California's Unfair Competition Law.  Starbucks seeks summary judgment on Plaintiff's wage statement claim, and on his unpaid wages claim to the extent it seeks liquidated damages.  For the following reasons, Starbucks' motion is **GRANTED**.

### A.     Legal Standard

The Court may grant summary judgment on "each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  Summary judgment is proper where the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 325.  A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the nonmovant's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" when its resolution might affect the outcome of the suit under the governing law, and is determined by looking to the substantive law.  *Id.*  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.* at 249.

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the nonmoving party, and draw all justifiable inferences in its favor.  *Id.*; *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987).

The court does not make credibility determinations, nor does it weigh conflicting evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). But conclusory and speculative testimony in affidavits and moving papers is insufficient to raise triable issues of fact and defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

### B.    Wage Statement Claim

Plaintiff alleges that Starbucks failed to provide accurate written wage statements by giving him pay statements that did not reflect his actual hours worked—that is, statements that did not include the time Plaintiff spent working after he clocked out. California Labor Code Section 226 requires employers to give employees "accurate itemized statement[s]" every pay period showing, among other things, the employee's total hours worked and gross wages.  "An employee suffering injury as a result of a knowing and intentional failure by an employer" to provide such statements is entitled to the greater of (1) actual damages, or (2) penalties of $50 for the initial pay period in which a violation occurs and $100 per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of $4,000.  Cal. Lab. Code § 226(e)(1).  An employee may also bring an action for injunctive relief to ensure compliance with California wage statement law.  *Id.* § 226(h).

In his complaint, Plaintiff sought both an injunction and the greater of actual damages or statutory penalties.  The Court has previously granted summary judgment in Starbucks' favor on the wage statement claim as to injunctive relief, finding that Plaintiff lacks standing to seek injunctive relief because he no longer works at Starbucks.  (Dkt. 65 at 17–18.)  In another summary judgment order, the Court found that Plaintiff also cannot seek penalties on his wage statement claim because he failed to bring the claim within the one-year statute of limitations.  (Dkt. 76 at 4–5.)

Starbucks now argues the Court should grant summary judgment in its favor on the last remaining category of damages, actual damages, because Plaintiff cannot show he suffered actual damages from the fact that his wage statements did not accurately list his hours.  (MSJ at 5.)  In support, Starbucks points to Plaintiff's deposition testimony.  (*Id.*; UF 11.)  At his deposition, Plaintiff was asked, "Do you contend that you've been injured in any way as a result of inaccuracies in the pay statements?"  (Dkt. 85-3 at 193.)  Plaintiff's counsel objected that this question called for a legal conclusion.[1]  (*Id.*)  Plaintiff answered that he had been injured because he did not get paid for time he spent working.  (*Id.*)  He could not think of any other way he had been harmed by the allegedly inaccurate wage statements.  (*Id.* at 193–94.)  Based on this testimony, Starbucks argues that Plaintiff does not have any evidence that he suffered actual damages based on any wage statement violations.  The Court agrees.

As explained, an employee suffering "injury" as a result wage statement violation may recover, among other types of damages, actual damages.  Cal. Lab. Code § 226(e)(1).  To prove such "injury," Plaintiff must submit evidence showing that he suffered some sort of "concrete" or "tangible loss as a result of the allegedly deficient information on [his] wage statements."  *Hoffman v. Constr. Protective Servs., Inc.*, 2006 WL 6105636, at *2 (C.D. Cal. Feb. 27, 2006).  Such loss may include "the possibility of not being paid overtime, employee confusion over whether they received all wages owed them, difficulty and expense involved in reconstructing pay records, [] forcing employees

---

[1] Plaintiff reiterates this objection on summary judgment.  (See UF ¶ 11 [responding to Starbucks' statement that it is undisputed that Plaintiff was not harmed as a result of any wage statement violations, Plaintiff responds that it is "[u]ndisputed that this is how a lay witness testified in response to a legal contention question"].)  This objection is **OVERRULED**.  Asking a witness how he has been harmed from an alleged legal violation is a proper question for a lay witness.  *See* Fed. R. Evid. 704 Adv. Comm. Note (explaining that "opinions phrased in terms of inadequately explored legal criteria" are not permissible, and "[t]hus the question, 'Did T have capacity to make a will?' would be excluded, while the question, 'Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?' would be allowed").

to make mathematical computations to analyze whether the wages paid in fact compensated them for all hours worked," "lost time from other employment, [or being] denied a loan." *Id.*; *Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122, 1135 (C.D. Cal. 2011) (granting summary judgment for lack of injury where the plaintiffs' only alleged injury was "mathematical injury" because the "missing information on their wage statements [did not require] them to do any more than 'simple math' to determine whether they were compensated at the proper hourly rate").

However, a claim that Plaintiff was not paid the amount he was owed is not sufficiently "linked to a knowing and intentional failure on the part of Defendant to provide an accurate wage statement" to constitute actual damages on a wage statement claim. *See Hoffman*, 2006 WL 6105636, at *2 (granting judgment as a matter of law in the defendant's favor because evidence that the plaintiff's bank returned a check for insufficient funds and penalized him for a late payment on an automobile loan, and that plaintiff once lacked [the] funds to fulfill a promise to his daughter" was insufficient evidence of injury); *see also Pytelewski v. Costco*, 2010 WL 11442902, at *9 (S.D. Cal. Nov. 3, 2010) (granting summary judgment for failure to present evidence of injury).

Plaintiff's only response to Starbucks' argument is that, according to Plaintiff, the Court has already ruled that Plaintiff "had a claim for actual damages." (Opp. at 3 [citing Dkt. 76 at 5].) But the Court has not so ruled. In a motion for clarification regarding a previous summary judgment order, Starbucks asked the Court to decide that Plaintiff did not have evidence of actual damages. (*See* Dkt. 76.) The Court explicitly stated that it was not deciding whether Plaintiff had proof of actual damages because the issue "was not properly raised in Starbucks' motion." (*Id.* at 3.) Rather, the Court only ruled that Plaintiff filed his complaint for actual damages within the applicable limitations period. (Dkt. 76 at 5.)

Plaintiff has failed to identify evidence of injury sufficient to raise a genuine dispute of material fact on his wage statement claim.  Accordingly, Starbucks' motion is **GRANTED** on Plaintiff's wage statement claim.

## C.     Claim for Liquidated Damages for Unpaid Wage Violations

One of the categories of damages that Plaintiff seeks on his unpaid wages claim is liquidated damages.  (Dkt. 1-1 ¶¶ 23, 43.)  Under California Labor Code § 1194.2, employees may recover liquidated damages "in an amount equal to the wages unlawfully unpaid and interest thereon."  Starbucks argues that summary judgment should be granted on this claim because it is barred by (1) the statute of limitations and (2) the Court's previous finding that Starbucks acted reasonably in asserting that it did not owe Plaintiff any wages.  The Court agrees.

### 1.     Statute of Limitations

In 2014, the California legislature added the following language to California Labor Code § 1194.2:  "A suit may be filed for liquidated damages at any time before the expiration of the statute of limitations on an action for wages from which the liquidated damages arise."  The statute of limitations on a liquidated damages claim is therefore now three years.  However, this case was filed in 2012, before the amendment.  The parties disagree over what statute of limitations applied to liquidated damages claims before the 2014 amendment.  Starbucks argues that before 2014, the statute of limitations was one year, because liquidated damages were considered a penalty, and the amendment changed the law.  Plaintiff argues that the amendment was only a "*clarification* of the law," and that a three-year statute of limitations was in effect all along.  The distinction is important because Plaintiff filed this case after the one-year statute of limitations passed, but before the three-year statute of limitations passed.  (*See* Dkt. No. 76 at 4–5.)

### a.  Whether Liquidated Damages are a Penalty or Compensation

Determining whether liquidated damages are a penalty requires the Court to construe California Labor Code Section 1194.2.  In interpreting California statutes, federal courts follow California's principles of statutory construction.  *See In re First T.D. & Inv., Inc.*, 253 F.3d 520, 527 (9th Cir. 2001).  Courts first turn to the plain language of the statute, "giv[ing] the language of the statute 'its usual, ordinary import.'"  *Id.*  If the statute's language is ambiguous, courts "may consider extrinsic evidence of the legislature's intent," including the statute's scheme and history, background, and purpose.  *Id.*

The plain language of Section 1194.2 shows that liquidated damages are a penalty.  The statute states that "an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon."  Cal. Lab. Code § 1194.2.  This means that an employee may recover the wages the employer failed to pay, *plus* that same amount in liquidated damages.  *Djukich v. AutoNation, Inc.*, 2014 WL 12845830, at *6 (C.D. Cal. Nov. 12, 2014) (explaining that liquidated damages "essentially double[] the award" for unpaid wages).  "The settled rule in California is that statutes which provide for recovery of damages additional to actual losses incurred, such as double or treble damages, are considered penal in nature, and thus governed by the one-year period of limitations stated in section 340, subdivision (1) [of the Code of Civil Procedure]."  *Prudential Home Mortg. Co. v. Superior Court*, 66 Cal. App. 4th 1236, 1242 (1998) (citation omitted).  California case law from before 2014 is in accord.  *See Martinez v. Combs*, 49 Cal. 4th 35, 48 n.8 (2010), *as modified* (June 9, 2010) (explaining in dictum that liquidated damages under Section 1194.2 "are in effect a penalty equal to the amount of unpaid minimum wages"); *Bain v. Tax Reducers, Inc.*, 219 Cal. App. 4th 110, 550–51 (Cal. Ct. App. 2013) (depublished), *reh'g denied,* (Sept. 26, 2013), *review denied and ordered depublished,* (Dec. 11, 2013) (holding that liquidated damages

under Section 1194.2 are penalties and therefore subject to a one-year statute of limitations).  Apparently conceding this point, Plaintiff does not analyze the plain language of the statute, referring only to the statute's legislative history to determine its meaning.  (*See* Opp. at 4–6.)

Even if Section 1194.2's plain language were ambiguous, and reasonably susceptible to interpreting liquidated damages as either compensation or a penalty, both the legislative history and purpose of Section 1194.2 show that the legislature intended liquidated damages to operate as a penalty used to punish and deter employers from unlawfully failing to pay wages.  *See Djukich*, 2014 WL 12845830, at \*\*5–7.  The bill report for SB 955, which the legislature later enacted as Section 1194.2, stated that SB 955's proponents "believe that the provision for liquidated damages should serve as a deterrent to those employers who fail to pay minimum wages."  *Id.* at \*5.  The deterrence purpose clearly indicates that liquidated damages operate as a penalty.  *See id.* at \*\*5–6.

The statute of limitations for actions seeking statutory penalties is one year, unless the statute imposing liability gives a different time period.  Cal. Civ. Proc. Code § 340(a).  Because Section 1194.2 as it existed in 2012 did not state a different statute of limitations, the statute of limitations was one year at that time.  *Djukich*, 2014 WL 12845830, at \*6.

### b.  Whether the 2014 Amendment Was a Clarification or Change in the Law

However, the inquiry does not end there because now, Section 1194.2 *does* give a different statute of limitations.  As stated, in 2014 the California Legislature amended Section 1194.2 to state that a three-year statute of limitations applies to liquidated damages claims.  The Court now considers whether the amendment clarified the law, as

Plaintiff contends, or changed the law, as Starbucks contends.  If the amendment clarified the law, then Plaintiff's claim is timely, because the three-year statute of limitations was in effect all along.  *Djukich*, 2014 WL 12845830, at *6.  If the amendment changed the law, the Court would need to consider whether the change operates retroactively.

As another court in this district has thoroughly explained, the 2014 amendment changed the statute of limitations for liquidated damages claims, rather than clarified it. *Djukich*, 2014 WL 12845830, at *6–8.  The legislature added the relevant language to Section 1194.2 "to respond to the disparity between claims for unpaid minimum wages, to which a three-year statute of limitations applies, and claims for liquidated damages, to which a one-year limitations period generally applies," which "dilute[d] the deterrent effect of liquidated damages for minimum wage violations," thereby "send[ing] a statement that there is no real penalty for such worker exploitation beyond one year." *Id.* at *8 (citing legislative history documents).  Accordingly, through the amendment "the legislature appears to have recognized that liquidated damages under the statute are a penalty, but that a three-year limitations period should apply to ensure the statute has a deterrent effect." *Id.*  This was a change in the law. *Id.*

Plaintiff points to language in the legislative history that speaks of "clarif[ying]" the statute of limitations.  (Opp. at 5–6.)  But the court in *Djukich* addressed this isolated language from the legislative history and persuasively explained that it is not dispositive and does not negate the overall thrust of the legislative history discussed in the preceding paragraph, which weighs strongly in favor of showing a change.  2014 WL 12845830, at *8; (*see also* Reply at 6 [citing places in the legislative history where the legislature suggests or even expressly uses the word "change[]" with reference to the amendment]).

//

//

### c.  Whether the Change Applies Retroactively

The Court next turns to whether the change applies retroactively.  Unless the legislature clearly states otherwise, new statutes operate only prospectively.  *See Quarry v. Doe I*, 53 Cal. 4th 945, 955 (2012).  "[T]he presumption against retroactive legislation is deeply rooted in [California's] jurisprudence."  *McClung v. Emp. Dev. Dep't*, 34 Cal. 4th 467, 475 (2004).  Where an amendment extends the limitations period, "revival of [a] claim is seen as a retroactive application of the law under an enlarged statute of limitations," and the expanded limitations period will not be applied retroactively "without express language of revival" in order to protect "the defendant's interest in repose."  *Quarry*, 53 Cal. 4th at 947.  There is no evidence that the legislature intended to revive liquidated damages claims that had lapsed under the previous one-year statute of limitations when it amended Section 1194.2.  Accordingly, the change does not apply retroactively to save Plaintiff's claim, which was filed within the three-year statute of limitations, but not the one-year statute claims that had lapsed under the old one-year statute of limitations.  *See Djukich*, 2014 WL 12845830, at *9; (Dkt. No. 76 at 4–5).

Concluding that liquidated damages under Section 1194.2 constituted a penalty under California law at the time Plaintiff filed his complaint, that a subsequent amendment to Section 1194.2 constituted a change and not a clarification in the law, and that the change does not apply retroactively, the Court finds that Plaintiff's claim for liquidated damages is time-barred because he filed his complaint more than one year after he received his last wage statement.

### 2.    Good Faith

Starbucks also argues that summary judgment should be granted on Plaintiff's claim for liquidated damages based on Section 1194.2(b), which states that even where

liquidated damages are awardable, the court "may, as a matter of discretion, refuse to award liquidated damages . . . if the employer demonstrates to the satisfaction of the court . . . that the act or omission giving rise to the action was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of any provision of the Labor Code relating to minimum wage."  Cal. Lab. Code § 1194.2(b).  The Court agrees.

The Court previously held that Starbucks met a similar standard in finding that it did not "willfully" fail to pay wages due at termination because there was "a good faith dispute that any wages [were] due."  (Dkt. 65 at 16–17.)  In so holding, the Court explained that "[u]ntil the California Supreme Court's decision in this case, it was reasonable for Starbucks to assert that it did not owe any wages under the de minimis doctrine."  (*Id.*)  A similar logic bars Plaintiff's claim for liquidated damages.

Plaintiff urges the Court to wait to exercise its discretion until "after a trial, on a fully developed record, including but not limited to evidence of the actual amount of unpaid wages."  (Opp. at 4.)  But Plaintiff offers no explanation on how trial evidence could alter the clear history described above.

Accordingly, the Court **GRANTS** summary judgment in favor of Starbucks on Plaintiff's claim for liquidated damages on his unpaid wages claim because the claim is barred by the statute of limitations or, in the alternative, because Starbucks acted in good faith and had reasonable grounds for believing that the alleged act or omission was not a violation of law.

//
//
//

## IV.  PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

After this order on Starbucks' motion for summary judgment, the following claims remain: (1) unpaid wages, by which Plaintiff may seek those wages but not liquidated damages, and (2) violation of the UCL, by which Plaintiff seeks restitution of unpaid wages, reasonable costs, and attorney fees.  Plaintiff moves for class certification of the following class:

> All Starbucks employees in California from August 6, 2008 through December 31, 2012 who worked a closing shift in a Starbucks store and performed work after clocking out.

Starbucks opposes, arguing that individual issues predominate.  For the following reasons, Plaintiff's motion is **DENIED**.

### A.     Legal Standard

Under Federal Rule of Civil Procedure 23, district courts have broad discretion to determine whether a class should be certified.  *Armstrong v. Davis*, 275 F.3d 849, 871 n.28 (9th Cir. 2001).  Rule 23 is not merely a pleading standard—a party seeking class certification must affirmatively demonstrate compliance with the Rule by proving the requirements in fact.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  A class may be certified if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).

To be certified, a class must also meet the standards of one of the subsections of Rule 23(b). In this case, Plaintiff seeks certification pursuant to Rule 23(b)(3). Rule 23(b)(3) permits certification if the court "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members." Plaintiff bears the burden of satisfying the elements of Rules 23(a) and 23(b)(3). *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

### B.   Predominance

Starbucks does not contend that Plaintiff fails to meet any of the Rule 23(a) requirements. Rather, the certification dispute concerns whether "questions of law or fact common to class members predominate over any questions affecting only individual members" under Rule 23(b)(3). The Court finds that they do not, and therefore denies Plaintiff's motion.

"The predominance inquiry focuses on 'the relationship between the common and individual issues' and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 927 (9th Cir. 2019) (quoting *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009)). In determining whether the predominance requirement is met, courts have a "duty to take a close look at whether common questions predominate over individual ones" to ensure that individual questions do not "overwhelm questions common to the class." *Id.* (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)). Under Rule 23(b)(3) one factor "pertinent" to predominance is "the likely difficulties in managing a class action."

Starbucks' policy is that time worked should equal time paid—that is, employees should not work off the clock. (*See* Dkt. 91-1, Ex. G [hereinafter "Pl. Depo."] at 100;

Dkt. 91-1, Ex. F.)  Plaintiff alleges, then, that Starbucks had a custom or practice where employees performed off-the-clock work.  He argues that class certification is appropriate because the putative class was "subjected to the same practices in terms of uncompensated closing shift work," and that any individualized issues go to damages alone and thus do not defeat predominance.  (MCC at 15–16.)  The Court disagrees.  Indeed, as the Court now explains, the evidence shows employee practices were not uniform, instead varying based on the store where they worked, the manager they worked for, and the time period, among other factors.

*Store Close Procedure.*  Plaintiff alleges that he was forced to perform the store close procedure off the clock.  However, many Starbucks employees testified that they ran the store close procedure on the clock.  (*See, e.g.*, Dkt. 91-1, Ex. B [Amanda Barb initially testifying she always did this on the clock and then saying she could remember doing it both ways]; Ex. C [Blake Barnett testifying he performed the close store procedure on the clock]; Ex. D [Cecelia Cerna testifying that if you looked at the store's surveillance videos, "it would show, on the computer, closing store, and then . . . clocking out"]; Ex. 5 [Christopher Coye stating store close procedure was "always done on the clock"]; Ex. 7 [Roy Dominguez stating same]; Ex. 10 [Don Jenkins stating same]; Ex. 14 [Eddie Necochea stating same]; Ex. 3 [Oscar Cardona testifying he was trained to do the close store procedure before clocking out, and that is what he did].)  This is consistent with Starbucks' policy and training that the store close procedure should be performed on the clock.  (*See, e.g.*, *id.* Ex. E [Paul O'Leary explaining that Starbucks' "training materials are to run end of day and then clock out," and that he did not know of any managers who trained employees to clock out before running it].)

The differing experiences may be explained by the fact that Starbucks changed its computer system sometime between August and November 2010.  (Dkt. 91-1 at 113 [Declaration of Connie Lange, hereinafter "Lange Decl."].)  It appears that with the old

system, employees performed the store close procedure off the clock, and with the new system, employees performed the store close procedure on the clock. *See Troester v. Starbucks Corp.*, 2014 WL 1004098, at *1 (C.D. Cal. Mar. 7, 2014), *rev'd and remanded,* 738 F. App'x 562 (9th Cir. 2018); (*see* Lange Decl. ¶ 5 ["After November 2010, because the [old] system was no longer in use in California, partners no longer ran the close store procedure."]; Dkt. 91-1, Ex. H [Celia Westby testifying that under the new system, the close store procedure "doesn't exist anymore"].)

Regardless, Plaintiff's proposed class is simply not cohesive on this issue. The evidence shows that "Starbucks employees in California from August 6, 2008 through December 31, 2012 who worked a closing shift in a Starbucks store and performed work after clocking out"—the proposed class definition—have experienced the close store procedure in different ways. Nor is this a matter of creating subclasses, because some employees testified that they performed even the old store close procedure on the clock. (*See, e.g.*, Dkt. 91-1, Ex. H [Celia Westby explaining that with the old system, she did the close store procedure before she clocked out].) There may be additional individualized issues regarding individual managers' practices, given Plaintiff's testimony that his manager told him, "you now have to clock out first before you [do] the store-closing procedures." (Pl. Depo at 130.)

***Setting the Alarm and Locking the Door.*** Similarly, as to setting the alarm and locking the door, Plaintiff does not point to any policy or uniform custom or practice such that common issues predominate. Some employees performed these functions on the clock. (*E.g.*, Dkt. 91-1, Ex. C [Blake Barnett testifying he always set the alarm on the clock]; *id.* Ex. 3 [Oscar Cardona testifying that in some stores, the door locked from the inside, so he could lock the door on the clock].) Other employees did them off the clock. (*E.g.*, *id.*, Exs. 4–6 [employees explaining they set the alarm and locked the door off the clock].) Other employees testified whether they did these activities on or off the clock

depended on the store they were working in.  (*E.g.*, *id.*, Exs. 3, 7 [employees testifying that in some stores, the door locked by itself from the inside so they did not have to lock the door after clocking out, but in others, a physical key was required so they locked the door off the clock].)  Still other employees performed these functions on the clock sometimes, and off the clock other times.  (*E.g.*, *id.*, Ex. 6 [Stephanie Deleon explaining that she sometimes set the alarm on the clock, and other times off the clock].)

*Walking Baristas to Cars.*  Analyzing Plaintiff's claim regarding time spent walking baristas to their cars is also replete with individualized issues.  Although there is at least one training document stating that a shift supervisor must complete all closing tasks including walking employees to their vehicles, (*see* Dkt. 65 at 14), there is evidence showing that this was not always the policy, (*see* Lange Decl. ¶ 4), and regardless, custom and practice varied.  For example, many people testified that they walked baristas to their cars not because of a Starbucks policy, but rather that they did so voluntarily, without expectation of payment.  (*E.g.* Dkt. 91-1, Exs. A–C, E–H, 1–9); *see Cornn*, 2005 WL 2072091, at *2 (finding common issues did not predominate and pointing to fact that some class members "ha[d] agreed that time spent changing into uniforms is not compensable").  Additionally, many employees testified that they did not walk others to their cars because the employees in their store did not drive to work, but rather took public transportation, Uber or Lyft, walked, or biked.  (Opp. at 14 [collecting testimony]; *e.g.*, Dkt. 91-1 Exs. 2–3.)

The individualized experiences of class members make managing a single trial extremely difficult if not impossible.  *See* Fed. R. Civ. P 23(3)(D).  Individualized issues regarding which employees performed the relevant functions on or off the clock, and why they performed those functions, predominate over common questions.  And those individualized issues go not just to damages, but also to liability.  *See Gibbs v. TWC Admin., LLC*, 2020 WL 42770, at *4 (S.D. Cal. Jan. 3, 2020) (declining to certify off-the-

clock work class where the employer had a policy prohibiting such work and the plaintiffs failed to show a company-wide policy or practice because claims depended on individual supervisors' behavior and individualized differences did not go only to damages).

Indeed, Plaintiff points to no records or other evidence that would create common proof on whether employees performed these functions on or off the clock, or that would otherwise allow these claims to be proven for all class members collectively one way or another.  *See Stiller v. Costco Wholesale Corp.*, 298 F.R.D. 611, 628 (S.D. Cal. 2014), *aff'd, 673 F. App'x 783 (9th Cir. 2017), abrogated on other grounds by Campbell v. City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018) (finding "no class-wide method of determining whether, how often, and for how long class members actually experienced unpaid [off the clock, 'OTC'] time").  This is important because without such common evidence, "liability cannot be proved on a classwide basis without thwarting [Starbucks'] ability to demonstrate that some class members, due to a variety of circumstances, did not actually experience unpaid OTC time."  *Id.*  Starbucks has the right to present at trial its evidence that some class members did not work off the clock.  *See id.*  Doing so in a single trial applicable to all class members would be simply unworkable.

For these reasons, among others, where courts have granted certification of classes alleging off-the-clock work claims, those claims generally revolve around company-wide policies—for example requirements that employees undergo security or bag checks, or wear special gear that they must put on and take off before and after shifts.  *See Negrete v. ConAgra Foods*, 2019 WL 1960276 at *4 (C.D. Cal. 2019) (granting class certification for off-the-clock claims where Defendant did not compensate Plaintiffs for "time spent donning and doffing protective gear at the beginning and end of their shifts"); *Lao v. H&M Hennes & Mauritz, L.P.*, 2018 WL 3753708 at *1–2 (N.D. Cal. 2018) (granting class certification for off-the-clock claims where plaintiffs challenged a company-wide

policy requiring employees to undergo security checks before leaving the store for rest breaks and at the end of their shifts); *Moore v. Ulta Salon Cosmetics & Fragrance Inc.*, 311 F.R.D. 590, 604, 612 (C.D. Cal. 2015) (granting class certification in bag checks case where Ulta had a "written exit inspection policy" and "company-wide practice" and individualized issues went to time spent in line for the bag check); *Scott-George v. PVH Corporation*, 2015 WL 7353928 *9 (E.D. Cal. 2015) (bag checks); *Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 448 (N.D. Cal. 2008) (loss-prevention inspections); *Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 572 (C.D. Cal. 2008) (bag checks).

In contrast, where, as here, there is no uniform practice regarding off-the-clock work, courts deny certification. *See, e.g.*, *Koike v. Starbucks Corp.*, 378 Fed.Appx. 659, 661 (9th Cir. 2010) (finding district court did not abuse its discretion in finding that "individualized factual determinations were required to determine whether class members did in fact engage in OTC work and whether Starbucks had actual or constructive knowledge of the OTC work performed"); *In re AutoZone, Inc., Wage & Hour Emp't Practices Litig.*, 289 F.R.D. 526, 539 (N.D. Cal. 2012), *aff'd,* 2019 WL 4898684 (9th Cir. Oct. 4, 2019) (finding common issues did not predominate where there was no common answer to the question of why off-the-clock work occurred, and pointing to putative class member declarations attesting to never having performed or reported any off-the-clock work); *Stiller*, 298 F.R.D. at 628 ("[T]here is no common answer as to whether each class member actually performed uncompensated OTC work."); *Cornn v. United Parcel Serv., Inc.*, 2005 WL 2072091, at *2 (N.D. Cal. Aug. 26, 2005) (finding common issues did not predominate given individualized inquiries including whether each class member actually performed compensable work before the recorded start time).

In sum, individualized issues regarding whether employees worked off the clock and why they did so predominate over common questions regarding whether such work is compensable. Accordingly, class certification is not appropriate.

**V.  CONCLUSION**

     For the foregoing reasons, Starbucks' Motion for Partial Summary Judgment is **GRANTED** and Plaintiff's Motion for Class Certification is **DENIED**.

     DATED:     January 27, 2020

                         CORMAC J. CARNEY

                   UNITED STATES DISTRICT JUDGE